**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                 :

AURELIUS CAPITAL MASTER, LTD.; ACP
MASTER, LTD.; AURELIUS OPPORTUNITIES
FUND, LLC; 683 CAPITAL PARTNERS, LP;
ADONA LLC; EGOZ I LLC; EGOZ II LLC;
MASTERGEN, LLC; ERYTHRINA, LLC; AP
2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC;
WASO HOLDING CORPORATION; TWO SEAS
GLOBAL (MASTER) FUND LP; VIRTUAL
EMERALD INTERNATIONAL LTD. and THE
BANK OF NEW YORK MELLON, solely in its
capacity as Trustee,

                       Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.:  1:23-CV-10838 (LAP)

The Honorable Loretta A. Preska

**ORAL ARGUMENT
REQUESTED**

---

## DEFENDANT THE REPUBLIC OF ARGENTINA'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588

*Counsel for the Republic of Argentina*

July 2, 2024

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .....................................................................................................................3

    A.    The GDP-Linked Securities ..........................................................................3

    B.    INDEC Rebases Argentina's GDP at the IMF's Urging ...........................5

    C.    This Court's Decisions Narrowing and Ultimately Dismissing the 2013 Actions .......................................................................................................6

    D.    INDEC Calculates and Publishes Real GDP in the 1993 Base Year ......................8

    E.    The Follow-On Litigation .............................................................................8

ARGUMENT ...........................................................................................................................9

I.    THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT THE REPUBLIC WAS REQUIRED TO MAKE PAYMENT UNDER THE SECURITIES FOR ANY REFERENCE YEAR ..........................................9

    A.    INDEC's Newly Published GDP Figures Confirm That the Republic Was Not Required To Make a Payment for Any Reference Year ...................9

    B.    The Complaint Fails To Plausibly Allege That the Republic Was Required To Make a Payment Under the Securities for Any Specific Reference Year ........11

        1.    Plaintiffs Again Rest Their Claims on "Alternate Statistics Not Contemplated by the Global Security's Plain Terms." ..............................11

        2.    The Complaint's Conclusory and Speculative Allegations Do Not Plausibly Plead That the Republic Owed a Payment for Specific Reference Years .........................................................................................13

II.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS..............................................................................................................14

    A.    The Individual Plaintiffs Do Not Plead Compliance with the Global Security's No-Action Clause .......................................................................14

    B.    The Individual Plaintiffs Do Not Plead That They Possess the Litigation Rights to Bring These Claims .....................................................................16

    C.    Plaintiffs' Claims for Reference Years 2014 to 2016 Are Time-Barred ...............17

**III.**   **THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THE REPUBLIC'S BAD FAITH OR "PREVENTION."** ...............................................................18

    A.   The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ..............................................................19

    B.   The Complaint Does Not Plead Facts Supporting Application of the Narrow "Prevention" Doctrine ...........................................................................20

**CONCLUSION** ........................................................................................................20

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ape Group SPA* v. *Republic of Argentina*,
2022 WL 463309 (S.D.N.Y. Feb. 15, 2022)....................................................17, 18

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)...........................................................................................2, 13

*Aurelius Capital Master, Ltd.* v. *Republic of Argentina*,
2020 WL 70348 (S.D.N.Y. Jan. 7, 2020) ("*Aurelius I*") ................................. *passim*

*Aurelius Capital Master, Ltd.* v. *Republic of Argentina*,
2021 WL 1177465 (S.D.N.Y. Mar. 29, 2021) ("*Aurelius II*").......................... *passim*

*Aurelius Capital Master, Ltd.* v. *Republic of Argentina*,
2024 WL 1367960 (S.D.N.Y. Mar. 31, 2024) ("*Aurelius III*") ....................... *passim*

*Bell Atl.* v. *Twombly*,
550 U.S. 544 (2007)...........................................................................................2, 13

*Berardi* v. *Berardi*,
2024 WL 1269902 (2d Cir. Mar. 26, 2024) ............................................................10

*BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*,
2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ....................................................16, 17

*Breitman* v. *Xerox Educ. Servs., LLC*,
2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013) ........................................................16

*CCM Rochester, Inc.* v. *Federated Inv'rs, Inc.*,
234 F. Supp. 3d 501 (S.D.N.Y. 2017)....................................................................19

*Chatham Cap. Holdings, Inc.* v. *Conru*,
2023 WL 22622 (S.D.N.Y. Jan. 3, 2023) ........................................................15, 16

*Cruden* v. *Bank of New York*,
957 F.2d 961 (2d Cir. 1992)..............................................................................14, 15

*Hinds Cnty., Miss.* v. *Wachovia Bank N.A.*,
708 F. Supp. 2d 348 (S.D.N.Y. 2010)....................................................................14

*Mandala* v. *NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020).................................................................................14

*MCI LLC* v. *Rutgers Cas. Ins. Co.*,
  2007 WL 4258190 (S.D.N.Y. Dec. 4, 2007) .......................................................................20

*Milan Music, Inc.* v. *Emmel Commc'ns Booking, Inc.*,
  829 N.Y.S.2d 485 (1st Dep't 2007) ...................................................................................10

*OKL Holdings, Inc.* v. *Abercrombie & Fitch Stores Inc.*,
  203 N.Y.S.3d 52 (1st Dep't 2024) .....................................................................................20

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*,
  585 F. Supp. 3d 540 (S.D.N.Y. 2022) ...............................................................................16

*Quadrant Structured Prods. Co.* v. *Vertin*,
  23 N.Y.3d 549 (2014) ........................................................................................................15

*Racepoint Partners LLC* v. *JPMorgan Chase Bank*,
  2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ....................................................................17

*Reiss* v. *Fin. Performance Corp.*,
  97 N.Y.2d 195 (2001) ........................................................................................................12

*Richman* v. *Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012).................................................................................5

*Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*,
  2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ...................................................................3, 16

*Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*,
  2018 WL 679495 (S.D.N.Y. Feb. 1, 2018)........................................................................17

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007).................................................................................6

*Texas* v. *United States*,
  523 U.S. 296 (1998) ...........................................................................................................10

*Thompson* v. *Advanced Armament Corp., LLC*,
  614 F. App'x 523 (2d Cir. 2015) .......................................................................................19

*Toledo Fund, LLC* v. *HSBC Bank USA, Nat'l Ass'n*,
  2012 WL 2850997 (S.D.N.Y. July 9, 2012) ......................................................................10

*Vermont Teddy Bear Co.* v. *538 Madison Realty Co.*,
  1 N.Y.3d 470 (2004) ..........................................................................................................12

*Wagner* v. *JP Morgan Chase Bank*,
  2011 WL 856262 (S.D.N.Y. Mar. 9, 2011) .......................................................................19

*Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015)..................................................................................5, 10

**Other Authorities**

N.Y. C.P.L.R. § 213 ...............................................................................................................17

## PRELIMINARY STATEMENT

Nearly five years ago, Plaintiffs and other sophisticated investors sued the Republic of Argentina for payments for calendar year 2013 under the Republic's dollar-denominated GDP-linked Securities (the "Securities").  In this copycat action, Plaintiffs have brought a new lawsuit to obtain payments under the Securities for years "after 2013 (including but not limited to 2015, 2017, 2018, 2021 and 2022)."  (Compl. ¶ 7.)  Thus, Plaintiffs repeat the same theories and recycle the same allegations that they advanced in the prior actions (the "2013 Actions"), except that their claims for these later years are even more speculative.  In fact, Plaintiffs' latest claims fail even on their own (incorrect) interpretation of the Securities.

This Court should dismiss the Complaint because Plaintiffs' claims suffer from the same defects as the claims in the 2013 Actions and for new, independent reasons.

*First*, the Complaint does not plausibly allege that the Republic was required to make a payment for any of the years at issue in this case.  In the 2013 Actions, Plaintiffs and the Republic disagreed about the proper interpretation of the adjustment provision in the Global Security, specifically, whether the payment conditions are tied permanently to GDP in the 1993 base year, or whether those metrics should be updated when the Republic's national statistical agency ("INDEC") rebased the Republic's real GDP.  Until July 1, 2024, INDEC did not publish the Republic's GDP in the 1993 base year for 2014 to 2022.  On July 1, as ordered by the High Court of Justice in London, INDEC published GDP figures, using a 1993 base year, for 2014 to 2022.  This data confirms that even under Plaintiffs' interpretation of the Global Security—which is not correct—the Republic owed no payment for any of the at-issue years.  This incontrovertible fact, which the Court can take notice of on this motion, dooms Plaintiffs' latest claims.

Beyond the INDEC-published GDP data in the 1993 base year, the Complaint does not adequately allege that the Republic owed any payment under the Securities.  The Complaint

speculates, based on undisclosed "statistical techniques, including regression analyses," that the Republic owed holders a payment under the Securities for up to nine years. (Compl. ¶ 104.) But this Court has already dismissed claims in the 2013 Actions based on "alternate statistics not contemplated by the Global Security's plain terms." *Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 2020 WL 70348, at *7 (S.D.N.Y. Jan. 7, 2020) ("*Aurelius I*").

Plaintiffs cannot escape that their claims rest on "alternate statistics" by saying that the Republic breached "an implied obligation to continue the publication of Actual Real GDP measured in constant 1993 prices." (Compl. ¶ 16.) This Court has already rejected Plaintiffs' theory that any such implied obligation exists. *See Aurelius Capital Master, Ltd.* v. *Republic of Argentina*, 2021 WL 1177465, at *10 (S.D.N.Y. Mar. 29, 2021) ("*Aurelius II*") ("[T]he Global Securities do not include such a term. The Court will not impose such a substantive obligation.").

The Complaint also does not plausibly allege that the Republic owed a payment for *any specific year* at issue. The Complaint makes allegations in conclusory fashion about "[y]ears 2014-2022" (Compl. ¶ 98) and asserts that payment was due for at least five years at issue in this case (*id.* ¶ 105). But the Complaint does not plead any facts to support Plaintiffs' speculation or their "black box" calculations (if any). Plaintiffs thus fail to allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

*Second*, Plaintiffs' claims suffer from the same threshold defects as the 2013 Actions. They do not plead that the non-Trustee Plaintiffs (the "Individual Plaintiffs") satisfied the five preconditions to bring suit under the Securities' "No-Action Clause." As this Court held in granting summary judgment for the Republic in the 2013 Actions, "the No-Action Clause applies, and Plaintiffs were required to comply therewith before commencing this litigation."

*Aurelius Cap. Master, Ltd.* v. *Republic of Argentina*, 2024 WL 1367960, at *7 (S.D.N.Y. Mar. 31, 2024) ("*Aurelius III*").  The Individual Plaintiffs also do not allege that they even have the right to bring these claims—either because they owned the Securities when any payment was allegedly due or acquired litigation rights thereafter.  *Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*, 2018 WL 739580, at *14 (S.D.N.Y. Jan. 10, 2018).  At a minimum, all Plaintiffs' claims related to years 2014 to 2016 are time-barred under New York's six-year statute of limitations and/or Section 14 of the Global Security, which specifies a five-year prescription period for Plaintiffs to assert their claims.

*Third*, in the alternative, the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing or under the "prevention" doctrine.  Plaintiffs' claims, which turn on the Republic's allegedly "failing to ensure (and discouraging) continued publication of Actual Real GDP measured in constant 1993 prices" and "adopting an extra-contractual constant adjustment fraction" (Compl. ¶ 121), are moot following INDEC's publication of GDP data in the 1993 base year, which confirms that no payment was due for any year at issue here.  Plaintiffs' claims also fail because the Complaint does not plausibly allege that the Republic acted in bad faith to prevent payment for any of the at-issue years, particularly when the Complaint's only purported allegations of bad faith conduct relate to the Republic's supposed efforts to prevent payment *for 2013*.  (Compl. ¶¶ 11, 68–93, 124.)

## BACKGROUND

Given the Court's familiarity with the issues, the Republic briefly summarizes the allegations, procedural history, and developments leading to this new lawsuit.

### A.    The GDP-Linked Securities

By late 2001, Argentina had entered into a severe economic crisis.  *See Aurelius I*, 2020 WL 70348, at *2.  As a result, the Republic became insolvent and "announced a moratorium

on its debt service payments in December 2001." *Id.*  To resolve the "seemingly endless rounds of litigation" and to restructure its debt, "the Republic launched voluntary debt exchanges" in 2005 and 2010 "whereby owners of the country's defaulted debt could exchange their non-performing bonds for new securities." *Id.*  As part of those exchanges, the Republic issued three new types of bonds and a sweetener bonus—the Securities, which gave participants in the exchanges an opportunity to "'b[uy] in' to the Argentinian economy." *Id.*

The Securities are governed by (i) the Trust Indenture, dated June 2, 2005 (as amended in April 2010, the "Indenture"), which covers all securities issued as part of the exchanges; and (ii) the Global Security, which defines the specific terms and conditions of the Securities.[1] *Aurelius III*, 2024 WL 1367960, at *2–*3.  Under the Global Security, the Republic must make a "Payment Amount" for a given calendar year (or "Reference Year") if: (i) "Actual Real GDP" exceeds "Base Case GDP" for the relevant Reference Year (the "Level Condition"); (ii) "Actual Real GDP Growth" exceeds "Base Case GDP Growth" for the Reference Year (the "Growth Condition"); and (iii) any Payment Amount would not exceed a contractually defined "Payment Cap" (together, the "Payment Conditions").  (Compl. Ex. B (2005 Global Security) § 2(b) at R-5–R-6.)  The Payment Conditions require the Republic to make payments under the Securities only if Argentina is wealthy enough and its economy has grown at a healthy rate.  Payment is thus "contingent upon and determined on the basis of the performance of the Gross Domestic Product of the Republic of Argentina."  (*Id.* at 1.)

The Global Security mandates that the Republic's Ministry of Economy make "all" calculations under the Securities, and that those calculations be based on the "gross domestic

---

[1]    There are separate Global Securities for the Securities issued in 2005 and 2010, but "the terms of both the 2005 and 2010 Global Securities are materially identical." *Aurelius III*, 2024 WL 1367960, at *3.  All references to the Global Security are to the 2005 Global Security.

product of Argentina . . . as published by INDEC." (*Id.* § 1(e) at R-2–R-4.)[2]  As reflected in the Global Security, INDEC calculates real GDP using a "Year of Base Prices."  (*Id.* at R-5.) Accordingly, the Global Security defines "Year of Base Prices" by stating that "if the calendar year employed by INDEC for purposes of determining Actual Real GDP shall at any time be a calendar year other than the year 1993, then the Year of Base Prices shall mean such other calendar year." (*Id.* at R-5.)  The Global Security contemplates that INDEC may, "in its discretion, . . . elect to change the base year through a process known as 'rebasing' the GDP calculations." *Aurelius III*, 2024 WL 1367960, at *4.

If the Republic must make a payment for a given Reference Year, that payment must be made on the "15th of December of the calendar year following such Reference Year" (the "Payment Date").  (Compl. Ex. B (Global Security) § 1(e) at R-4.)

**B.    INDEC Rebases Argentina's GDP at the IMF's Urging**

In March 2014, "after an extensive" multi-year "study," INDEC announced that it was rebasing Argentina's real GDP to a 2004 base year (from a 1993 base year), effective for calendar year 2013.  *Aurelius I*, 2020 WL 70348, at *4.  The IMF had been urging INDEC to update the base year for Argentina's real GDP to better reflect the country's economic conditions. (*See, e.g.*, Ex. 1 (IMF Feb. 2012 Press Release); Ex. 2 (IMF Feb. 2013 Press Release); Ex. 3 (IMF Dec. 2013 Press Release).)[3]  In keeping with international practice not to publish two different

---

[2]    *See also Aurelius III*, 2024 WL 1367960, at *4 ("Notably, the Global Security only permits for INDEC to calculate and publish 'Actual Real GDP' figures.").

[3]    References to "Ex." are to exhibits accompanying the Declaration of Robert J. Giuffra, Jr. This Court "can take judicial notice of SEC filings," the Republic's public statements and other governmental publications, as well as IMF publications, on this Rule 12(b)(6) motion.  *Richman* v. *Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 273 n.3 (S.D.N.Y. 2012); *see also Wells Fargo Bank, N.A.* v. *Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of . . . governmental records" "from official government websites.");

base year series in parallel (*see, e.g.*, Ex. 4 (UN, *Analysis - Rebasing GDP of Kenya*) at 2, 17), INDEC discontinued calculation of real GDP in the 1993 base year once it rebased to 2004. *Aurelius III*, 2024 WL 1367960, at *5. On December 15, 2014, Argentina's Ministry of Economy announced that no payment was due under the Securities for Reference Year 2013 because the Growth Condition was not satisfied. *Id.*; Ex. 5 (Ministry of Economy Press Release).

### C. This Court's Decisions Narrowing and Ultimately Dismissing the 2013 Actions

In January 2019, Aurelius filed suit claiming that the Republic breached the Global Security by failing to make a payment for Reference Year 2013. *See Aurelius Capital Master, Ltd.* v. *The Republic of Argentina*, 19-cv-0351, ECF 1. Other investors filed copycat complaints.[4] Plaintiffs in the 2013 Actions claimed that the Payment Conditions were met—in particular, the Growth Condition—pointing to the "EMAE Index" as a purported substitute for Actual Real GDP in the 1993 base year as published by INDEC. On January 7, 2020, the Court dismissed the *Aurelius* complaint, holding that the Global Security does not provide for the use of "substitute statistics," and "the Republic was under no explicit contractual obligation to continue to calculate Actual Real GDP using constant 1993 prices." *Aurelius I*, 2020 WL 70348, at *6–8.

Aurelius and the other plaintiffs filed amended complaints alleging that the Republic: (i) breached an implied obligation of the Global Security, or in the alternative, violated its duty of good faith and fair dealing, "by inappropriately using rebasing as an excuse to stop

---

*In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 376 n.22 (S.D.N.Y. 2007) (taking judicial notice of IMF "Coordinated Portfolio Investment Survey Guide").

[4]      *ACP Master, Ltd.* v. *The Republic of Argentina*, 19-cv-10109, ECF 1; *Novoriver S.A.* v. *The Argentine Republic*, 19-cv-09786, ECF 1; *683 Capital Partners, LP* v. *The Republic of Argentina*, 19-cv-10131, ECF 1; *Adona LLC, et al.* v. *The Republic of Argentina*, 19-cv-11338, ECF 1; *Ape Group SPA, et al.* v. *The Republic of Argentina*, 20-cv-10409, ECF 1. Four of the six plaintiff families in that suite of lawsuits are plaintiffs here, along with four new plaintiffs.

publishing Actual Real GDP in 1993 prices" in order to "hide the fact that the Argentine economy would meet the conditions for a payment for Reference Year 2013"; and (ii) breached the Global Security's Modifications Provision "by failing to apply the Adjustment Fraction to Base Case GDP when calculating Base Case GDP Growth and calculating the Payment Amount using unadjusted figures instead." *Aurelius II*, 2021 WL 1177465, at *4.

On March 29, 2021, this Court reiterated that the Global Security contained no obligation—*express or implied*—for the Republic to "compel INDEC to publish data," including Actual Real GDP in the 1993 base year. *Id.* at *9–*10. But the Court held that allegations that the Republic "was aware" that a payment would be due for Reference Year 2013 absent a rebasing were "sufficient to state a claim that the Republic sought to deprive [p]laintiffs of payment for the 2013 Reference Year by causing INDEC not to publish the data necessary to make such a calculation" for that particular year. *Id.* at *11. The Court also held that plaintiffs had plausibly alleged that the Republic "modified" the Securities when calculating payment for 2013 by "eschewing the Adjustment Fraction calculation" altogether. *Id.* at *9.

On March 31, 2024, the Court granted summary judgment to the Republic based on a threshold defect: Aurelius's and the other plaintiffs' failure to prove that they complied with the Securities' No-Action Clause, set forth in Section 4.8 of the Indenture and Section 11 of the Global Security. The Court rejected Aurelius's and the other plaintiffs' theory that they could avoid the No-Action Clause by suing directly under Section 4.9 of the Indenture, holding that "the No-Action Clause applies, and Plaintiffs were required to comply therewith before commencing this litigation." *Aurelius III*, 2024 WL 1367960, at *7. The Court explained that "Section 4.9 creates an individual right of action as applied to payments for principal of and interest on a stated maturity date" and the Securities did not pay principal or interest. *Id.* at *11–*12.

### D.    INDEC Calculates and Publishes Real GDP in the 1993 Base Year

On July 1, 2024, INDEC published real GDP in the 1993 base year for 2014 through 2022.  (Ex. 6 (INDEC Press Release) at 29–30.)  This action was taken to comply with an order from the High Court of Justice in London requiring publication of:

> GDP in 1993 Year of Base Prices for such Reference Year, using a methodology as close as possible to that used by INDEC for Reference Years 2006 to 2012, together with a description of the methodology applied, in a level of detail approximating the detail made available by INDEC for its quarterly GDP publications prior to 2014.

(Ex. 7 (*Palladian* Final Order) ¶ 18(b)(i).)  The London court ordered publication of GDP data in the 1993 Year of Base Prices for each Reference Year from 2014 through 2022 by June 30, 2024 (which the parties agreed to move to July 1), and for subsequent Reference Years by November 1 in the calendar year following the Reference Year in question.  (*Id.* ¶ 18.)

### E.    The Follow-On Litigation

On December 13, 2023, Plaintiffs, including Aurelius, commenced this lawsuit seeking payment "for Reference Years after 2013."  (Compl. ¶ 7.)  The Trustee brings these claims "on behalf of all Holders of" the Securities (*id.* ¶ 20), while the other Plaintiffs sue "solely on [their] own behalf and for [their] own benefit, and not for the benefit of any Holder of, or other beneficial owner of an interest in, the Global Securities" (*id.* ¶ 19).  Plaintiffs repeat the same flawed allegations and theories used in the 2013 Actions, asserting that the Republic:  (i) breached the Modifications Provision by "jettisoning the Adjustment Fraction set forth in the Global Securities for its extra-contractual constant adjustment fraction"; (ii) breached "its implied obligation to ensure that INDEC published Actual Real GDP measured in constant 1993 prices after a rebasing"; and (iii) breached "the covenant of good faith and fair dealing" and violated "the prevention doctrine" by "failing to ensure (and discouraging) continued publication of Actual Real

GDP measured in constant 1993 prices" and "adopting an extra-contractual constant adjustment fraction." (*Id.* ¶¶ 110–28.)

## ARGUMENT

**I.   THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT THE REPUBLIC WAS REQUIRED TO MAKE PAYMENT UNDER THE SECURITIES FOR ANY REFERENCE YEAR.**

Plaintiffs' claims should all be dismissed for failure to plausibly allege that the Republic was required to make a payment under the Securities for any at-issue Reference Year.

**A.   INDEC's Newly Published GDP Figures Confirm That the Republic Was Not Required To Make a Payment for Any Reference Year.**

The Complaint asserts that "[i]f the Republic had published Actual Real GDP measured in constant 1993 prices for Reference Years 2014-2022" and "applied the Adjustment Fraction . . . it would have been apparent for several of those years" that a payment would have been due. (Compl. ¶ 98.) Plaintiffs' claims rest on the same flawed theory, advanced in the 2013 Actions, that the Global Security supposedly requires the annual calculation of a unique, variable adjustment fraction to be applied to each Reference Year following a rebasing of Argentina's GDP. (*See id.* ¶¶ 10, 60.) This Court did not decide the proper interpretation of the adjustment fraction in the 2013 Actions because it dismissed plaintiffs' claims for failure to comply with the No-Action Clause. *See Aurelius III*, 2024 WL 1367960, at *12. But even under Plaintiffs' interpretation of the adjustment fraction, their claims still fail because INDEC's recently published GDP data in the 1993 base year confirms that the Payment Conditions were not met for any at-issue Reference Year.

On July 1, 2024, as described *supra* at 8, INDEC published real GDP data in the 1993 base year, and INDEC statistics are "unquestionably th[e] figure[s] that must be employed in calculating the Adjustment Fraction." *Aurelius I*, 2020 WL 70348, at *7. These INDEC-

published GDP figures—which are judicially noticeable, *see Wells Fargo*, 127 F. Supp. 3d at 166 ("it is clearly proper to take judicial notice" of "documents retrieved from official government websites")—make clear that, even under Plaintiffs' proposed interpretation of the Securities, the Payment Conditions were not met for any Reference Year from 2014 to 2022.[5] Specifically, using INDEC's published 1993 base year GDP data (and assuming Plaintiffs' interpretation), the Growth Condition is not met for any of the at-issue Reference Years, except for Reference Years 2021 and 2022, and for those years the Level Condition is not met.[6] (*See* Appendix A (Payment Conditions Calculations).) The proper interpretation of the adjustment fraction is therefore irrelevant because Plaintiffs are not entitled to payment under their own theory. Because the Complaint does not and cannot establish that any payment was due, the Court should dismiss it. *See Milan Music, Inc.* v. *Emmel Commc'ns Booking, Inc.*, 829 N.Y.S.2d 485, 486 (1st Dep't 2007) ("Without a clear demonstration of damages, there can be no claim for breach of contract.").[7]

---

[5]    To the extent Plaintiffs purport to seek "[a]dditional Payment Amounts . . . for Reference Years not yet completed" (Compl. ¶¶ 7, 106), such claims are "not ripe" since they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas* v. *United States*, 523 U.S. 296, 300 (1998); *see also Berardi* v. *Berardi*, 2024 WL 1269902, at *2 (2d Cir. Mar. 26, 2024) (no jurisdiction "when the events alleged . . . have not yet occurred").

[6]    The Global Security states that holders receive no payment for a Reference Year if "Actual Real GDP for such Reference Year" does not exceed "Base Case GDP for such Reference Year" or "Actual Real GDP Growth for such Reference Year" does not exceed "Base Case GDP Growth for such Reference Year." (Compl. Ex. B (2005 Global Security) § 2(b) at R-5–R-6.)

[7]    In any event, the Ministry of Economy's calculations "shall be binding on . . . all Holders of this Security, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy." (Compl. Ex. B (2005 Global Security), § 1(e) at R-4.) The Ministry's determinations (applying its interpretation of the Adjustment Provision) that no payment was due for the at-issue Reference Years is thus entitled to deference, as Plaintiffs fail to adequately allege "bad faith" or "willful misconduct or manifest error." *See Toledo Fund, LLC* v. *HSBC Bank USA, Nat'l Ass'n*, 2012 WL 2850997, at *7 (S.D.N.Y. July 9, 2012) (no breach where defendant with "sole discretion" to make "critical determinations" under contract "did not act arbitrarily or irrationally in exercising that discretion and control").

**B.**     **The Complaint Fails To Plausibly Allege That the Republic Was Required To Make a Payment Under the Securities for Any Specific Reference Year.**

Beyond INDEC's recently published GDP figures in the 1993 base year, Plaintiffs' claims still fail because the Complaint does not plausibly allege that a payment was due under the Securities for any year at issue because the Complaint (1) impermissibly relies on "alternate statistics" (Section I.B.1), and (2) does not plead facts showing that the Republic was required to make a payment for *any specific* Reference Year at issue here (Section I.B.2).

**1.**     **Plaintiffs Again Rest Their Claims on "Alternate Statistics Not Contemplated by the Global Security's Plain Terms."**

The Complaint concedes that its purported calculations are missing an input that Plaintiffs say is contractually required—Actual Real GDP in constant 1993 prices.  (Compl. ¶¶ 9, 10.)  To try to end-run that missing input, Plaintiffs say that they can rely on "established and accepted statistical techniques, including regression analyses, . . . to *estimate* what Actual Real GDP and Actual Real GDP Growth measured in constant 1993 prices *would have been* for Reference Years after 2013."  (*Id.* ¶ 104 (emphasis added).)  But in *Aurelius I*, this Court held that "the Global Security unequivocally states that the defined term Actual Real GDP refers to a version of the Republic's gross domestic product that is published by INDEC," and "[i]t is unquestionably that figure that must be employed in calculating the Adjustment Fraction."  2020 WL 70348, at *7.  The Court's holding rightly prevents any holder from running to court with their own "estimates" of Argentina's GDP, even though the parties expressly agreed to use GDP as published by INDEC.  Just as this Court dismissed plaintiff's claims in *Aurelius I* because those claims were based on "alternate" statistics rather than the contractually mandated inputs, the Court should dismiss Plaintiffs' claims here for the same reason:  the Complaint relies on unspecified and opaque "statistical techniques" to "estimate" Actual Real GDP in constant 1993 prices (Compl. ¶

104), rather than using the figures "calculated and published by [INDEC]." *Aurelius I*, 2020 WL 70348, at \*3.  Simply put, the Complaint's estimates cannot "stand in the place of the real thing under the plain terms of the contract."  *Id.* at \*7.

Plaintiffs try to evade this Court's decision in *Aurelius I* by claiming that the Republic breached "an implied obligation to continue the publication of Actual Real GDP measured in constant 1993 prices."  (Compl. ¶ 16.)  But as explained above (*supra* § I.A), INDEC has published real GDP data in the 1993 base year, which confirms that a payment was not due for any at-issue Reference Year.

In any event, the Court has already rejected Plaintiffs' implied obligation theory, holding that "Plaintiffs . . . could have bargained for a provision requiring INDEC to calculate and publish that data [in constant 1993 prices] in all circumstances.  Yet, the Global Securities do not include such a term.  The Court will not impose such a substantive obligation on the Republic." *Aurelius II*, 2021 WL 1177465, at \*10.  This holding was clearly correct.  Under settled New York law, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Vermont Teddy Bear Co.* v. *538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (quoting *Reiss* v. *Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001)).

The Complaint's invocation of the decision of the English court in *Palladian* (Compl. ¶ 16) does not save Plaintiffs' implied obligation theory in this Court.  That decision applied *English* law, and, contrary to New York law and this Court's ruling in *Aurelius II*, that decision held that there *was* an implied term requiring publication of Actual Real GDP in the 1993 base year.  (Ex. 8 (*Palladian* Judgment) ¶¶ 266–71.)  In *Aurelius III*, this Court rejected the invitation to follow the English court in implying terms into the Securities, stating that "[t]he Court

is unwilling to go beyond the plain text of the Indenture and the Global Security to read into the provision what Plaintiffs propose 'ought to be.'" 2024 WL 1367960, at *12. For all the same reasons, the Court should reject Plaintiffs' latest attempt to rewrite the Securities and dismiss the implied obligation claim.

> **2.     The Complaint's Conclusory and Speculative Allegations Do Not Plausibly Plead That the Republic Owed a Payment for Specific Reference Years.**

Plaintiffs' claims also fail because the Complaint does not plead any factual allegations showing that the Republic owed a payment for *any specific* Reference Year at issue here. *First*, the Complaint does not even identify the years for which Plaintiffs claim they were due a payment, instead grouping years together or referring generally to all years "after 2013." (*See, e.g.,* Compl.¶ 125.) As a matter of law, such vague and conclusory allegations are not sufficient to state a claim that the Global Security was breached for any *particular* Reference Year. *See Iqbal*, 556 U.S. at 678 ("'naked assertions' devoid of 'further factual enhancement'" not sufficient to survive motion to dismiss) (quoting *Twombly*, 550 U.S. at 557).

*Second*, for the handful of years for which Plaintiffs assert that the Payment Conditions were supposedly satisfied (*see* Compl. ¶ 105), the Complaint does not plead any facts to substantiate these conclusory and speculative assertions. The Complaint alleges only that (i) the Growth Condition was "obviously satisfied for at least four years at issue in this case" (*id.* ¶ 102), (ii) that the Level Condition "would have been satisfied" for five Reference Years (*id.* ¶ 103), and (iii) that payment would have been due for "several Reference Years after 2013, including 2015, 2017, 2018, 2021, and 2022" (*id.* ¶ 105). But Plaintiffs plead no support for their claims, except for their purported reliance on unidentified "established and accepted statistical techniques." (*E.g., id.* ¶¶ 104–06.) "Black box" calculations based on opaque "statistical

techniques" are no substitute for factual allegations.  *See Hinds Cnty., Miss.* v. *Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 361 (S.D.N.Y. 2010) (dismissing plaintiffs' claims based on statistical analyses that were conclusory rather than factual and therefore "insufficient to state a plausible . . . claim").  Because the Second Circuit will not accept allegations based on *defective* methodologies, *see Mandala* v. *NTT Data, Inc.*, 975 F.3d 202, 212 (2d Cir. 2020) (holding that plaintiffs' may not "rely on conclusory statistical inferences to force their way into discovery"), this Court should dismiss Plaintiffs' claims based on *no identified methodology at all*.

## II.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED COMPLIANCE WITH THRESHOLD REQUIREMENTS FOR BRINGING THEIR CLAIMS.

The Complaint also suffers from several, independent threshold deficiencies requiring dismissal:  (1) the Individual Plaintiffs have not pled that they complied with the Global Security's No-Action Clause (Section II.A) or have standing (Section II.B), and (2) all Plaintiffs' claims for Reference Years 2014 to 2016 are time-barred (Section II.C).

### A.   The Individual Plaintiffs Do Not Plead Compliance with the Global Security's No-Action Clause.

As in *Aurelius III*, the Court should dismiss the claims of the Individual Plaintiffs because they have not alleged that they satisfied the preconditions for bringing suit set out in Section 11 of the Global Security.[8]  In particular, Section 11 specifies that "no Holder of a Security *shall have any right . . . to institute any suit, action or proceeding*" unless they have first satisfied the five preconditions for bringing suit.  (Compl. Ex. B (2005 Global Security) § 11 (emphasis added).)[9]  Section 11 thus operates as a "no-action clause," and such "clauses are strictly

---

[8]    Section 4.8 of the Indenture is materially identical to Section 11 of the Global Security. (*Compare* Compl. Ex. B (2005 Global Security) § 11, *with* Compl. Ex. A (Indenture) § 4.8.)

[9]    To bring suit under the No-Action Clause, holders must have: (a) "given to the Trustee written notice of default and of the continuance thereof with respect to the Securities"; (b) "made

construed." *Cruden* v. *Bank of New York*, 957 F.2d 961, 967–968 (2d Cir. 1992); *see also Quadrant Structured Prods. Co.* v. *Vertin*, 23 N.Y.3d 549, 560 (2014) (same).  As this Court held in *Aurelius III*, "[g]iven the sweeping reach of the No-Action Clause to encompass any suit regarding any claim arising under the Indenture or [the] Securities, . . . actions seeking to enforce Contingent Payments under the [] Securities clearly fall within the ambit of the No-Action Clause," and holders "[a]re required to comply therewith before commencing [] litigation."  2024 WL 1367960, at *7, *10.

   The Individual Plaintiffs do not even attempt to plead compliance with the No-Action Clause.  Those Plaintiffs instead claim that they have the "'absolute and unconditional' right to bring suit to enforce payment of any Payment Amount" under Section 4.9 of the Indenture. (Compl. ¶ 36.)  But this Court already rejected that argument in *Aurelius III*, holding that Section 4.9 applies only to "suit[s] to receive payment for principal [] and interest" and that "the Contingent Payments provided for under the Global Security are distinct from principal and interest."  2024 WL 1367960, at *10, *11; *see id*. at *12 ("[T]he Court finds that Section 4.9 means exactly what it says—that Section 4.9 creates an individual right of action as applied to payments for principal of and interest on a stated maturity date.").

   Each Individual Plaintiff's failure to allege that they "t[ook] the contractually required steps precludes them from bringing suit now, and accordingly, their claims are not properly before the Court."  *Id.* at *12; *see also Chatham Cap. Holdings, Inc.* v. *Conru*, 2023 WL

---

written request," along with "the Holders of not less than 25% in aggregate notional amount of the Outstanding Securities," to the Trustee "to institute such action, suit or proceeding in its own name as Trustee under the Indenture"; (c) "provided to the Trustee such reasonable indemnity and/or security as it may require" to bring such action; and (d) given the Trustee "60 days after its receipt of such notice . . . to institute any such action."  *Id.*  The fifth precondition is that (e) "no direction inconsistent with such written request [by at least 25% of the holders] shall have been given to the Trustee" by a majority of the holders.  *Id.*

22622, at *3 (S.D.N.Y. Jan. 3, 2023) ("The complaint does not plead that the Plaintiffs complied with these preconditions to suit or that the no-action clause is otherwise inapplicable to this action. Accordingly, this action is barred under the no-action clause."), *aff'd sub nom. Chatham Cap. Holdings, Inc.* v. *Conru as Tr. for Andrew B. Conru Tr.*, 92 F.4th 107 (2d Cir. 2024).

**B.    The Individual Plaintiffs Do Not Plead That They Possess the Litigation Rights to Bring These Claims.**

In addition, the Individual Plaintiffs also fail to adequately allege that they own the claims they seek to pursue in this case.  Under New York law, "[i]t is the Plaintiffs' burden to demonstrate their standing to sue for claims related to each [security]." *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co*., 585 F. Supp. 3d 540, 565 (S.D.N.Y. 2022).  Breach of contract claims accrue "at the time of the breach." *Breitman* v. *Xerox Educ. Servs., LLC*, 2013 WL 5420532, at *5 (S.D.N.Y. Sept. 27, 2013).  Here, the alleged breach occurred, and the right to litigate that alleged breach accrued, on the Payment Date for each Reference Year.  (*See* Compl. ¶ 45.) Litigation rights stay with the holder of a security at the time of an alleged breach unless they were transferred through either (i) an express assignment of the right to sue, or (ii) when a transaction occurs under the law of a jurisdiction where such transfer would be automatic. *See Royal Park*, 2018 WL 739580, at *14.  "If a current or former holder of a [security] does not possess [litigation] rights, it does not have Article III standing because it has no claim upon which it can recover." *Id.*

To plead the right to bring these claims, the Individual Plaintiffs must allege that (i) they owned the Securities as of the Payment Date for each Reference Year, or (ii) the right to sue was expressly assigned or automatically transferred under the contract of sale from each previous holder of the Securities, dating back to the Payment Date for each Reference Year. *See BlackRock Balanced Cap. Portfolio (FI)* v. *Deutsche Bank Nat'l Tr. Co.*, 2018 WL 5619957, at *11–12 (S.D.N.Y. Aug. 7, 2018) ("[T]he Court must [] engage in an individualized inquiry to learn

who retained the litigation rights for each security.").  The Individual Plaintiffs do not do so.  The Complaint makes no allegations about when the Individual Plaintiffs purchased their Securities or the contracts by which they purchased them.  Instead, the Complaint lists only their *current* beneficial holdings.  (*See* Compl. ¶¶ 21–35.)  "[T]he fact that [p]laintiffs currently hold the [securities] does not establish their standing as to losses incurred by previous []holders."  *Royal Park Invs. SA/NV* v. *HSBC Bank USA, N.A.*, 2018 WL 679495, at *3 (S.D.N.Y. Feb. 1, 2018).  Because the Individual Plaintiffs have not pled any facts to show that they own the litigation rights for the claims on which they purport to sue, their claims should be dismissed.  *See Racepoint Partners LLC* v. *JPMorgan Chase Bank*, 2006 WL 3044416, at *5 (S.D.N.Y. Oct. 26, 2006) (dismissing case where plaintiffs failed to "allege facts to show that  . . . transferrers [sic] would have automatically acquired the claims of all the previous noteholders").

### C.   Plaintiffs' Claims for Reference Years 2014 to 2016 Are Time-Barred.

All Plaintiffs' claims corresponding to Reference Years 2014 through 2016 are time-barred under New York's six-year statute of limitations (for 2014 and 2015) and the Securities' five-year prescription period (for 2016).

New York law provides a six-year statute of limitations for "an action upon a contractual obligation or liability, express or implied."  N.Y. C.P.L.R. § 213(2); *see Ape Group SPA* v. *Republic of Argentina*, 2022 WL 463309, at *1 (S.D.N.Y. Feb. 15, 2022) (applying this statute of limitations to contract claims on the Securities).  The Payment Date for Reference Year 2014 was December 15, 2015, and therefore the six-year limitations period expired on December 15, 2021.  Likewise, the Payment Date for Reference Year 2015 was December 15, 2016, and therefore the six-year limitations period expired on December 15, 2022.  Plaintiffs did not file their Complaint until December 13, 2023 (nearly eight and seven years after the Payment

Dates for Reference Years 2014 and 2015, respectively), and, as a result, all claims in connection with Reference Years 2014 and 2015 fall outside the six-year statute of limitations period.

Plaintiffs' claims premised on Reference Year 2016 are also untimely.  Section 14 of the Global Security (entitled "Prescription") states:  "All claims against the Republic for any amounts due hereunder . . . shall be prescribed unless made within five years from the date on which such payment first became due, or a shorter period if provided by law."  (Compl. Ex. B (2005 Global Security) § 14.)  The Prescription Clause "prescribes the Republic's obligation to pay where the security holder fails to assert a right to payment within the five-year period."  *Ape Group*, 2022 WL 463309, at *3.  The Payment Date for Reference Year 2016 was December 15, 2017, meaning the five-year prescription period expired on December 15, 2022—nearly a year before Plaintiffs filed this action.  All claims based on that year should be dismissed.

## III.   THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE THE REPUBLIC'S BAD FAITH OR "PREVENTION."

In the alternative, the Complaint fails to plausibly allege that the Republic breached the implied covenant of good faith and fair dealing or violated the prevention doctrine by "failing to ensure (and discouraging) continued publication of Actual Real GDP measured in constant 1993 prices" and "adopting an extra-contractual constant adjustment fraction."  (Compl. ¶¶ 118, 121.)  Both theories are now moot in light of INDEC's publication of GDP data in the 1993 base year, which confirms that a payment was not due for any at-issue Reference Year under any theory.  Regardless, the Complaint fails to adequately allege bad faith conduct in connection with Reference Years after 2013 or any facts to establish that the prevention doctrine applies.

A.   **The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Fatally, the Complaint does not contain a single non-conclusory allegation that the Republic acted in bad faith in connection with the at-issue Reference Years.  The implied covenant requires a wrongful act committed with an improper motive.  *See Thompson* v. *Advanced Armament Corp., LLC*, 614 F. App'x 523, 525 (2d Cir. 2015) (requiring "purposeful[] sabotage[]"); *Wagner* v. *JP Morgan Chase Bank*, 2011 WL 856262 at *4 (S.D.N.Y. Mar. 9, 2011) (requiring an "act[] with some *improper motive*") (emphasis added).

Plaintiffs' allegations fall far short.  The Complaint alleges repeatedly that *in late 2013* "Argentina knew that economic growth was on track to trigger a multi-billion dollar Payment Amount . . . **for Reference Year 2013**," and therefore the Republic:  (i) "stopped publishing Actual Real GDP measured in constant 1993 prices"; and (ii) "ditched the adjustment fraction set forth in the Global Securities."  (Compl. ¶¶ 11–13 (emphasis added); *see also id.* ¶¶ 11, 68–70, 74–75, 78, 88–93, 124 (alleging, in substance, that the Republic sought to hide the fact that "a payment was . . . due for 2013").)

These rote allegations borrowed from Plaintiffs' prior lawsuit are pure speculation and do not plead bad faith by the Republic.  *See CCM Rochester, Inc.* v. *Federated Inv'rs, Inc.*, 234 F. Supp. 3d 501, 508–09 (S.D.N.Y. 2017) (finding "speculative" "evidence of bad faith" to be "fatal to [plaintiff's] claim").  In addition, these allegations have nothing to do with years *after* Reference Year 2013.  Thus, unlike in *Aurelius II*, where this Court found plausible the allegations that the Republic "was aware that it would owe a payment to [Securities] holders" for Reference Year 2013 based on "the EMAE Index for 2013, and Actual Real GDP in 1993 prices for the first three quarters of 2013," *Aurelius II*, 2021 WL 1177465, at *11, the Complaint lacks any similar

allegation for any Reference Year *after* 2013.  Plaintiffs' implied covenant of good faith and fair dealing claim should therefore be dismissed.

> **B.      The Complaint Does Not Plead Facts Supporting Application of the Narrow "Prevention" Doctrine.**

Under the prevention doctrine, a party to a contract may not "prevent[] any other person from performing" under the contract.  *OKL Holdings, Inc.* v. *Abercrombie & Fitch Stores Inc.*, 203 N.Y.S.3d 52, 54 (1st Dep't 2024).  As this Court observed in *Aurelius II*, the prevention doctrine typically applies: (i) "where the party invoking the doctrine argued its contract counterparty had prevented the invoking party's performance"; or (ii) "where a party prevented the occurrence of a condition precedent to formation of a binding contract."  2021 WL 1177465, at *10.  Just like in *Aurelius II*, "Plaintiffs do not allege" either of these scenarios.  *Id.* at *11.  This claim should be dismissed.

Plaintiffs' prevention doctrine claim should also be dismissed for failure, as shown above, to adequately allege bad faith or wrongful conduct by the Republic.  *See id.* at *10 ("The [prevention] doctrine applies 'when a party wrongfully prevents [a] condition from occurring.'"); *see MCI LLC* v. *Rutgers Cas. Ins. Co.*, 2007 WL 4258190, at *10 (S.D.N.Y. Dec. 4, 2007) ("cornerstone" of the prevention doctrine is that "a party must prevent the occurrence of the condition in bad faith or wrongfully").

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated:  July 2, 2024
        New York, New York

Respectfully submitted,

/s/ *Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Telephone:      (212) 558-4000
Facsimile:      (212) 558-3588

*Counsel for the Republic of Argentina*