```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD.; ACP MASTER, LTD.; AURELIUS OPPORTUNITIES FUND, LLC; 683 CAPITAL PARTNERS, LP; ADONA LLC; EGOZ I LLC; EGOZ II LLC; MASTERGEN, LLC; ERYTHRINA, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO HOLDING CORPORATION; TWO SEAS GLOBAL (MASTER) FUND LP; VIRTUAL EMERALD INTERNATIONAL LTD. and THE BANK OF NEW YORK MELLON, solely in its capacity as Trustee, | No. 23 Civ. 10838 (LAP)  <u>MEMORANDUM & ORDER</u> |
| Plaintiffs, | |
| -against- | |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant the Republic of Argentina's ("Defendant" or "the Republic" or "Argentina") motion to dismiss

Plaintiffs'[1] Amended Complaint, (the "Motion").[2] Plaintiffs bring claims against the Republic for breach of contract, including for breach of the covenant of good faith and fair dealing and the prevention doctrine. (See Am. Compl., dated Oct. 22, 2024 [dkt. no. 34] ¶¶ 138-60.) Plaintiffs jointly oppose the Republic's Motion.[3]

For the reasons set forth below, as to Plaintiffs Individual Holders' claims, Defendant's Motion is GRANTED. As to Plaintiff Trustee's claim, Defendant's Motion is GRANTED in part and DENIED in part.

---

[1] Plaintiffs include: (1) financial institutions who are Individual Holders of the GDP-linked debt securities issued by the Republic and include Aurelius Capital Master, Ltd. ("Aurelius"); ACP Master, Ltd. ("ACP"); Aurelius Opportunities Fund, LLC; 683 Capital Partners, LP; Adona LLC; Egoz I LLC; Egoz II LLC; Mastergen, LLC; Erythrina, LLC; AP 2016 I, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO Holding Corporation; Two Seas Global (Master) Fund LP; Virtual Emerald International Ltd. (collectively, "Plaintiffs Individual Holders"); and, (2) The Bank of New York Mellon ("Plaintiff Trustee"), a New York banking corporation seeking judgment on behalf of all Holders of the Global Securities, (together "Plaintiffs"). The Trustee, The Bank of New York Mellon ("BNYM"), which serves as the Trustee for securities issued by the Republic pursuant to the Indenture. (Am. Compl. ¶¶ 23-37, 43.)

[2] (See Def. Mot. to Dismiss ("Def. Mot."), dated Dec. 23, 2024 [dkt. no. 37]; Decl. of Robert J. Giuffra, Jr. ("Giuffra Decl."), dated Dec. 23, 2024 [dkt. no. 38]; Def.'s Mem. of Law in Support of its Motion to Dismiss the Amended Complaint ("Def. Mem."), dated Dec. 23, 2024 [dkt. no. 39]; Def. Letter, dated Dec. 23, 2024 [dkt. no. 40]; Def. Reply in Support of its Motion to Dismiss the Amended Complaint ("Reply"), dated Apr. 29, 2025 [dkt. no. 48].)

[3] (See Decl. of Edward A. Friedman ("Friedman Decl."), dated Mar. 17, 2025 [dkt. no. 41]; Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Am. Compl. ("Pl. Opp'n"), dated Mar. 17, 2025 [dkt. no. 42]; Pls. Letter, dated Mar. 17, 2025 [dkt. no. 43].)

I.    **Factual Background**[4]

    a. **The Global Securities**

The Republic launched a voluntary debt exchange where owners of the Republic's defaulted debt could exchange their non-performing bonds for new securities issued by the Republic. (Am. Compl. ¶ 4.)

The securities relevant to this action are the 2005-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: US040114GM64), ("2005 GDP Securities") and the 2010-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: XS0501197262), ("2010 GDP Securities"), (together the "GDP Securities"). (Id. ¶ 1.) The GDP Securities are governed by (1) the Indenture;[5] (2) the 2005 Form of Registered Global Security, applicable to the 2005 GDP Securities only;[6] (3) the First Supplemental Indenture, dated as of April 30, 2010, applicable to the 2010 GDP Securities only;[7] and, (4) the 2010 Form of Registered

_____

[4] The facts in this decision are derived primarily from the Amended Complaint. (Am. Compl.) Additionally, the facts include information incorporated by reference in the Amended Complaint and documents that are integral to Plaintiffs' allegations even if not explicitly incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Vtech Holdings Ltd. v. Lucent Techs. Inc., 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) ("In deciding the motion [to dismiss], the court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit.") (citations omitted).

[5] (See Am. Compl. Ex. A (the "Indenture").)

[6] (See Am. Compl. Ex. B (the "2005 Global Security").)

[7] (See Am. Compl. Ex. C [the "Supplemental Indenture"].)

Global Security, applicable to the 2010 GDP Securities only.[8]  (Id. ¶ 2.)   The 2005 and 2010 Global Securities are substantially the same and are referred to herein collectively as the "Global Securities."  (Id.)

### b. The Payment Conditions and Rebasing

For each calendar year (what the Global Securities refer to as a Reference Year) through the earlier of 2035 or when the Payment Cap is reached, the GDP Securities obligated Argentina to make a payment if Argentina's Real GDP and Real GDP Growth reach contractually specified levels.  (Id. ¶ 4.)   If such a payment is due on account of a given Reference Year, the amount thereof is contractually dictated and is referred to as the Payment Amount. (Id.)   More specifically, the Global Securities require the Republic to disburse the Payment Amount if three conditions are met: (1) "Actual Real GDP" exceeds "Base Case GDP" for the relevant Reference Year (the "Level Condition"); (2) "Actual Real GDP Growth" exceeds "Base Case GDP Growth" for the Reference Year (the "Growth Condition"); and, (3) any Payment Amount does not exceed a contractually defined "Payment Cap," (the "Payment Cap Condition"), (together, the "Payment Conditions").  (Am. Compl. Ex. D at ECF 10; see also Am. Compl. ¶ 8.)

---

[8] (See Am. Compl. Ex. D [the "2010 Global Security"].)

The current dispute hinges on the first two conditions. Accordingly, the crux of this litigation concerns the Global Securities' definitions and calculation of the Republic's Actual Real GDP and Base Case GDP.

The Global Securities define Actual Real GDP as "for any Reference Year, the gross domestic product of Argentina for such Reference Year measured in constant prices for the Year of Base Prices, as published by INDEC [Instituto Nacional de Estadistica y Censos ("INDEC"), which is part of the Ministry of Economy]." (Am. Compl. Ex. D at ECF 7). The Global Securities define "Year of Base Prices" as "the year 1993." (Id. at ECF 9). However, this may be modified "provided that if the calendar year employed by INDEC for purposes of determining Actual Real GDP shall at any time be a calendar year other than the year 1993, then the Year of Base Prices shall mean such other calendar year." (Id.) Accordingly, the Global Securities permit INDEC to "rebase" or change the Year of Base prices from 1993 to any other year at its discretion. (Id.) See also Aurelius Cap. Master, Ltd. v. Republic of Argentina ("Aurelius I"), 2020 WL 70348, at *3 (S.D.N.Y. Jan. 7, 2020).

If such rebasing occurs, Base Case GDP must be multiplied by an "adjustment fraction" calculated specifically for each Reference Year. (Am. Compl. ¶ 10.) The numerator of the adjustment fraction is Actual Real GDP for the Reference Year in

question measured in constant prices of the new Year of Base
Prices, and the denominator is Actual Real GDP for the Reference
Year in question measured in constant 1993 prices. (Id.; see also
Am. Compl. Ex. D at ECF 7.) Additionally, if such rebasing occurs,
Base Case GDP Growth is also affected. The Global Securities
define Base Case GDP Growth to mean "for any Reference Year, the
percentage change in Base Case GDP for such Reference Year, as
compared to Base Case GDP for the immediately preceding Reference
Year." (Id. at ECF 8.) Unlike the definition of Actual Real GDP
Growth, the Global Security's definition of Base Case GDP Growth
does not provide any specific instructions for adjusting the figure
to reflect a change in the Year of Base Prices. Notably, however,
the definition of Base Case GDP Growth employs the defined term
Base Case GDP, which itself provides for the use of the adjustment
fraction in the wake of such a change. (Id. at ECF 7.) The Court
previously observed that "the Republic was under no explicit
contractual obligation to continue to calculate Actual Real GDP
using constant 1993 prices, [and] maintained significant
discretion under the terms of the Global Security to rebase its
GDP." Aurelius Cap. Master, Ltd. v. Republic of Argentina
("Aurelius II"), 2021 WL 1177465, at *3 (S.D.N.Y. Mar. 29, 2021)
(quoting Aurelius I, 2020 WL 70348, at *7 n.7).

Under the Global Securities, "[a]ll calculations made by the
Ministry of Economy hereunder shall be binding . . . absent bad

6

faith, willful misconduct or manifest error on the part of the Ministry of Economy." (Am. Compl. Ex. D at ECF 9; see also id. at ECF 8.)

### c. The Decision to Rebase

On March 27, 2014, around the same time when INDEC would have been expected to publish full year 2013 Actual Real GDP measured in constant 1993 prices, Minister of Economy Axel Kicillof announced that (1) the Republic was rebasing from 1993 to 2004 for the Year of Base Prices and (2) going forward, INDEC would only publish Actual Real GDP measured in constant 2004 prices and would cease publishing Actual Real GDP measured in constant 1993 prices. (Am. Compl. ¶ 80.) That same day, INDEC reported 2013 Actual Real GDP and 2013 Actual Real GDP Growth measured in constant 2004 prices. (Id. ¶ 81.)

In April 2014, senior officials organized and had knowledge of an unprecedented meeting with INDEC, the effect of which was to ensure that INDEC did not publish Actual Real GDP measured in constant 1993 prices. (Id. ¶¶ 94-99; see also ¶¶ 83-85 (detailing that high ranked officials discussed Guillermo Nielsen's, former Secretary of Finance, article where Nielsen stated that payment would be due for Reference Year 2013).

Full year 2013 Actual Real GDP measured in constant 1993 prices for the denominator of the adjustment fraction was not published, and thus, the calculations required by the Global

7

Securities were never performed.  (Id. ¶ 81.)  "The Republic has not disclosed any of the calculations it has made with respect to Reference Year 2013 or thereafter."  (Id. ¶ 92.)  Additionally, Plaintiffs allege that had the President directed INDEC to continue publication of Base Case GDP in constant 1993 prices, it would have done so.  (Id. ¶ 82.)

Later, the Republic disclosed that it decided that it would calculate an adjustment fraction for just one Reference Year—what it calls the "overlap year"—which the Republic contends it can select in its sole discretion.  (Id. ¶ 86.)  The numerator of the Republic's fraction would be Actual Real GDP measured in the new Year of Base Prices for the "overlap year," and the denominator would be Actual Real GDP measured in constant 1993 prices for the "overlap year."  (Id.)  That single adjustment fraction would be applied to all Reference Years—in effect, a constant adjustment fraction, instead of calculating an adjustment fraction for each Reference Year.  (Id.)

### d. Prior United States Litigation[9]

In January 2019, several Individual Holders of the GDP Securities sued the Republic seeking their shares of the Payment Amount due for Reference Year 2013.  (Id. ¶ 5.)  In January of 2020, the Court granted without prejudice the Republic's motion to dismiss Plaintiffs' complaint due to failure to state a claim. See Aurelius I, 2020 WL 70348, at *1.

With leave of the Court, Plaintiffs filed an amended complaint, and the Republic moved to dismiss the amended complaint. (See Aurelius Cap. Master, Ltd. v. Republic of Argentina, No. 19 Civ. 351, dkt. nos. 28, 32.)  On March 29, 2021, the Court denied the Republic's motion to dismiss the amended complaint finding that Plaintiffs pled sufficient facts plausibly to state a claim that the Republic breached (1) the Global Securities' Modification Provision and (2) the implied covenant of good faith and fair dealing.  Aurelius II, 2021 WL 1177465, at *9, *12.

---

[9] The prior litigation includes the following cases: (i) Aurelius Cap. Master, Ltd. v. The Republic of Argentina, No. 19 Civ. 351 (LAP) (S.D.N.Y.); (ii) Novoriver S.A. v. Argentine Republic, No. 19 Civ. 9786 (LAP) (S.D.N.Y.); (iii) ACP Master, Ltd. v. The Republic of Argentina, No. 19 Civ. 10109 (LAP) (S.D.N.Y.); (iv) 683 Cap. Partners, LP v. The Republic of Argentina, No. 19 Civ. 10131 (LAP) (S.D.N.Y.); (v) Adona LLC, Egoz I LLC, Egoz II LLC, Mastergen, LLC, Erythrina, LLC, AP 2016 1, LLC, AP 2014 3A, LLC, AP 2014 2, LLC, and WASO Holding Corp. v. The Republic of Argentina, No. 19 Civ. 11338 (LAP) (S.D.N.Y.); and, (vi) Ape Group SPA, Romano Consulting SPA, Icaro SRL, and Elazar Romano v. The Republic of Argentina, No. 20 Civ. 10409 (LAP) (S.D.N.Y.).

The parties proceeded to discovery and filed cross-motions for summary judgment. Aurelius Cap. Master, Ltd. v. Republic of Argentina, No. 19 Civ. 351 (LAP), dkt. nos. 132, 142. The Republic argued that Plaintiffs did not comply with the no-action clause set out in Section 4.8 of the Indenture, which restricts the ability of an individual bondholder to bring suit unless the bondholder either satisfies the five preconditions set out therein or qualifies for an exception set forth in Section 4.9 of the Indenture. (Id. dkt. no. 136 at 25-26.) In response, Plaintiffs asserted that they are excused from compliance with Section 4.8. (See id. dkt. no. 147.)

In the Court's March 31, 2024 order, the Court granted the Republic's motion for summary judgment, holding that the individual holders' claims seeking to enforce the "Contingent Payments" under the GDP-Linked Securities "clearly fall within the ambit of the No-Action Clause." Aurelius Cap. Master, Ltd. v. Republic of Argentina ("Aurelius III"), 728 F. Supp.3d 274, 287 (S.D.N.Y. 2024). Accordingly, the Court found that Section 4.9 of the Indenture provides no excuse for the plaintiffs' noncompliance with the no-action clause. (Id. at 289-90.) Plaintiffs filed a notice of appeal. (See Aurelius Cap. Master, Ltd. v. Republic of Argentina, No. 19 Civ. 351 (LAP), dkt. no. 165.) Recently, the Court of Appeals affirmed this Court's decision, holding that the no-action clause of the Global Securities bars the plaintiffs'

10

suit.    <u>Aurelius Cap. Master, Ltd. v. Republic of Argentina</u>

("<u>Aurelius IV</u>"), 2025 WL 1949968, at *4 (2d Cir. July 16, 2025).

### e. Prior English Litigation

Also in 2019, certain beneficial owners of GDP Securities

with substantially identical terms, but denominated in Euros and

governed by English law, commenced litigation (the "English

Litigation") before the High Court of Justice, Business and

Property Courts of England and Wales (the "English Court").  (Am.

Compl. ¶ 6.)

The English Litigation sought the Payment Amount due on these

Euro-denominated GDP Securities for Reference Year 2013 (using the

identical data and methodology asserted in the prior United States

litigation, (<u>see</u> <u>supra</u> Section I.d)), as well as subsequent years

where the payment conditions had been met.  (<u>Id.</u>)

In 2023, the English Court entered judgment in favor of the

beneficial owners, awarding the full Payment Amount sought for

Reference Year 2013, and ordering, <u>inter alia</u>, the Republic to

"make payment for subsequent years where the payment conditions

had been met."  (<u>Id.</u>)  In 2024, the English Court of Appeal

unanimously affirmed that judgment.  (<u>Id.</u>)  As of the date of the

Amended Complaint at issue here, the Republic was seeking

discretionary review by the United Kingdom's Supreme Court.  (<u>Id.</u>)

In July 2024, in response to a June 9, 2023 order of the

English Court, the Republic published figures that it now asserts

are the missing contractually required data, (the "Manufactured Information"). (Id. ¶¶ 19, 116.)

### f. Procedural History

On December 13, 2023, Plaintiffs filed the Complaint. (Compl., dated Dec. 13, 2023 [dkt. no. 1].) The Republic subsequently moved to dismiss the Complaint. (Dkt. no. 24.) Before the Court ruled on the Republic's motion, the parties filed a stipulation providing Plaintiffs an opportunity to amend the Complaint. (See generally dkt. no. 33.)

On October 22, 2024, Plaintiffs filed the Amended Complaint. (See generally Am. Compl.; see also dkt. no. 32 Ex. B.[10]) First, Plaintiffs allege that the Republic breached the "Modifications Provision" of the Global Securities which requires "modifications to certain 'Reserved Matters,' such as a 'change [to] the method of calculation of the Payment Amounts,' [to] receive the consent of 75% of Holders." (Am. Compl. ¶¶ 141-45.) Second, Plaintiffs allege that the Republic breached its obligations to publish Actual Real GDP measured in constant 1993 prices by the "Calculation Date" and to perform the contractually specified calculations. (Id. ¶¶ 146-48.) Third, Plaintiffs allege that the Republic breached the covenant of good faith and fair dealing implied under New York

---

[10] In accordance with the parties' stipulation, Plaintiffs provided a redline to illustrate the differences between the Complaint and the Amended Complaint.

law when it destroyed Plaintiffs' right to receive Payment Amounts
otherwise due under the contract by: (i) failing to continue, and
discouraging, timely publication of Actual Real GDP measured in
1993, (ii) destroying data and records necessary to calculate Real
GDP measured in constant 1993 prices, (iii) adopting an extra-
contractual constant adjustment fraction, (iv) failing to perform
the contractually obligated calculations, and, (v) publishing and
relying on the Manufactured Information. (Id. ¶¶ 149-51.) Fourth,
Plaintiffs allege that the Republic's listed actions ((i)-(v)),
had the effect of destroying, injuring, or impeding Plaintiffs'
right to receive Payment Amounts otherwise due under the contract.
(Id. ¶¶ 152-55.) Consequently, Plaintiffs seek Payment Amounts
due for Reference Years after 2013 (including 2015, 2017, 2018,
2021 and 2022). (Id. ¶ 7.) Plaintiffs allege that the Payment
Amounts due for those Reference Years exceeds $1 billion as the
total due for those years amounts to $5-6 billion, excluding pre-
and post-judgment interest. (Id.)

On December 23, 2024, the Republic timely filed its motion to
dismiss the Amended Complaint. (See Def. Mot.; Def. Mem.) The
Republic moves to dismiss arguing that: (1) Plaintiffs fail
sufficiently to allege that the Republic was required to make a
payment for any Reference Year, (id. at 10-14); (2) Plaintiffs do
not plausibly allege the Republic's bad faith or prevention, (id.

at 14-18); and, (3) Plaintiffs have not complied with the threshold requirements to bring a claim, (id. at 18-20).

## II.  **Applicable Law**

### a. **Motion to Dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6)**

Under FRCP 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To satisfy the plausibility requirement for a FRCP 12(b)(6) motion to dismiss, a complaint must plead facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

### b. **Breach of Contract**

To state a claim for breach of contract sufficiently a complainant "need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3)

breach of contract by the defendant, and (4) damages." <u>Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.</u>, 375 F.3d 168, 177 (2d Cir. 2004).

In evaluating a breach of contract claim on a motion to dismiss, a court should "strive to resolve any contractual ambiguities in [the non-moving party's] favor." <u>Gerdau Ameristeel US Inc. v. Ameron Int'l. Corp.</u>, 2014 WL 3639176, at *3 (S.D.N.Y. July 22, 2014) (quoting <u>Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995)). However, a court is "not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement." <u>Int'l Audiotext Network</u>, 62 F.3d at 72. Instead, the Court's primary charge is determining for itself whether "a contract's language is clear and unambiguous," which alone allows for the dismissal of a breach of contract claim on a Rule 12(b)(6) motion. <u>Oppenheimer & Co., Inc. v. Trans Energy, Inc.</u>, 946 F. Supp.2d 343, 349 (S.D.N.Y. 2013); <u>see also</u> <u>Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.</u>, 566 F. Supp.2d 246, 250 (S.D.N.Y. 2008) ("If a contract is unambiguous on its face, its proper construction is a question of law."). "[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." <u>Eternity Global Master Fund Ltd.</u>, 375 F.3d at 178. Contract language is considered ambiguous if it is "capable of more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993).

### c. The Implied Covenant of Good Faith and Fair Dealing and the Prevention Doctrine

"There is a presumption that all parties act in good faith." Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 98 (2d Cir. 2007). The implied covenant of good faith and fair dealing requires Plaintiffs to show a wrongful act committed with an improper motive. See Thompson v. Advanced Armament Corp., LLC, 614 F. App'x 523, 525 (2d Cir. 2015) (requiring "purposeful sabotage. . . ."); Wagner v. JP Morgan Chase Bank, 2011 WL 856262 at *4 (S.D.N.Y. Mar. 9, 2011) (requiring an "act[] with some improper motive"); see also Aurelius II, 2021 WL 1177465, at *11 ("The implied covenant 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" (citation omitted)).

The prevention doctrine is "similar to-and perhaps rooted in-the implied covenant of good faith and fair dealing." Consol. Edison, Inc. v. Ne. Utils., 426 F.3d 524, 529 (2d Cir. 2005). Under the prevention doctrine, a party to a contract may not

"prevent[] any other person from performing" under the contract. OKL Holdings, Inc. v. Abercrombie & Fitch Stores Inc., 203 N.Y.S.3d 52, 54 (N.Y. App. Div. 2024).  The prevention doctrine typically applies where one party (1) "prevented [its counter]party's performance," or (2) "prevented the occurrence of a condition precedent to formation of a binding contract." Aurelius II, 2021 WL 1177465, at *10; see id. ("The [prevention] doctrine applies when 'a party wrongfully prevents [a] condition from occurring.'"); see also MCI LLC v. Rutgers Cas. Ins. Co., 2007 WL 4258190, at *10 (S.D.N.Y. Dec. 4, 2007) (The "cornerstone" of the prevention doctrine is that "a party must prevent the occurrence of the condition in bad faith or wrongfully").

### III. **Discussion**

As noted, the Republic moves to dismiss Plaintiffs' Amended Complaint arguing that: (1) Plaintiffs fail sufficiently to allege that the Republic was required to make a payment for any Reference Year, (Def. Mem. at 10-14); (2) Plaintiffs do not plausibly allege the Republic's bad faith or prevention, (id. at 14-18); and, (3) Plaintiffs have not complied with the threshold requirements to bring a claim, (id. at 18-20).  The Court addresses each argument in turn, starting with the threshold requirements.

### a. Threshold Requirements

#### i. No-Action Clauses

Under New York law, no-action clauses are to be "strictly construed." See Syracuse Mountains Corp. v. Petroleos de Venezuela S.A., 2021 WL 4776167, at *1 (S.D.N.Y. Oct. 12, 2021).

No-action clauses are included in indentures to prevent "unpopular duplicative suits" or "'lone ranger' lawsuit[s]"—"individuals asserting claims that foster the interests of minority securityholders at the potential expense of the majority's interest." Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 565 (N.Y. 2014). Accordingly, these provisions are included "to limit suits arising from those agreements." See McMahan & Co. v. Wherehouse Ent., Inc., 65 F.3d 1044, 1050 (2d Cir. 1995).

Section 4.8 of the Indenture clearly limits the rights of holders to bring lawsuits related to their GDP Securities. It states:

> Except as provided in this Section 4.8 and Section 4.9 of this Indenture, no Holder of any Debt Securities of any Series shall have any right by virtue of or by availing itself of any provision of this Indenture or of the Debt Securities of such Series to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or of the Debt Securities, or for any other remedy hereunder or under the Debt Securities, unless:
>
> (a) such Holder previously shall have given to the Trustee written notice of default and of the continuance thereof with respect to the Debt Securities;

> (b)   the Holders of not less than 25% in aggregate
> principal amount of the Outstanding Debt Securities
> shall have made written request to the Trustee to
> institute such action, suit or proceeding in its
> own name as Trustee under this Indenture;
>
> (c)   such Holder or Holders shall have provided to the
> Trustee such reasonable indemnity and/or security
> as it may require against the costs, expenses and
> liabilities to be incurred therein or thereby;
>
> (d)   the Trustee for 60 days after its receipt of such
> notice, request and provision of indemnity and/or
> security shall have failed to institute any such
> action, suit or proceeding; and
>
> (e)   no direction inconsistent with such written request
> shall have been given to the Trustee pursuant to
> Section 4.11 of this Indenture. . .

(Am. Compl. Ex. A at ECF 31-32 (emphasis added).)  Additionally,

the Global Securities carry a no-action clause that is nearly

identical to Section 4.8 of the Indenture.  (Am. Compl. Ex. B at

ECF 19; Am. Compl. Ex. D at ECF 15.[11])

Section 4.9, "Unconditional Right of Holders to Receive

Principal and Interest," which is referenced in Section 4.8,

states:

> Notwithstanding Section 4.8, each Holder of Debt Securities
> shall have the right, which is absolute and unconditional, to
> receive payment of the principal of and interest on its Debt
> Security on the stated maturity date for such payment
> expressed in such Debt Security (as such Debt Security may be
> amended or modified pursuant to Article Seven) and to
> institute suit for the enforcement of any such payment, and
> such right shall not be impaired without the consent of such
> Holder.

---

[11] The relevant Sections are Section 11 of the 2005 Global Security
and Section 9 of the 2010 Global Security.

(Am. Compl. Ex. A at ECF 32.)

### 1. Plaintiffs Individual Holders are Barred from Bringing Claims Under the No-Action Clauses

Plaintiffs argue that the Court's holding in Aurelius III, that the no-action clause applies and thus bars Plaintiffs' actions, was "erroneous." (Pl. Opp'n at 20.) Plaintiffs also argue that even if Section 4.9 is limited to suits for principal and interest, as the Court found in Aurelius III, the Payment Amounts qualify as such. (Id.)

Given that Section 4.8 of the Indenture states that "no Holder of any Debt Security of any Series shall have any right . . . to institute any suit, action or proceeding" unless, inter alia, the Trustee "ha[s] failed to institute any such action," (Am. Compl. Ex. A at ECF 31-32), and here, Plaintiff Trustee is a party to the case, Plaintiffs Individual Holders are not permitted to bring suit. As the Court held in Aurelius III, and the Court of Appeals affirmed in Aurelius IV, (1) Plaintiffs Individual Holders' action to enforce "Contingent Payments" "clearly [falls] within the ambit" of the no-action clauses and, (2) Section 4.9 does not apply to Plaintiffs Individual Holders' claims here because "suits for payments under the GDP-linked securities are not suits to recover principal or interest." See Aurelius III, 728 F. Supp. 3d at 287; Aurelius IV, 2025 WL 1949968, at *3. Accordingly, construing the plain meaning of the Indenture and Global Securities' no-action

clauses, the Court finds Plaintiffs Individual Holders' claims to be subject to the restrictions barring this action. Thus, Defendant's motion to dismiss Plaintiffs Individual Holders is GRANTED.[12]

### 2. Plaintiff Trustee's Claims are Allowed Under the No-Action Clauses

The difference between Aurelius III and the present action is that the Trustee was not a party to the previous litigation, but here Plaintiff Trustee has instituted an action on behalf of all GDP Securities holders.

Section 4.4(d) of the Indenture provides:

"[a]ll rights of action and of asserting claims under this Indenture or the Debt Securities of any Series may be enforced by the Trustee without the possession of any Debt Securities or the production thereof on any trial or other proceedings relative thereto, and any such action or proceedings instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Trustee, each predecessor trustee and their respective Appointees, agents and attorneys, shall be for the ratable benefit of the Holders of the Debt Securities of that Series in respect of which such judgment has been recovered.

(Am. Compl. Ex. A at ECF 30 (emphasis added).)

Additionally, in any action brought by the Trustee and on behalf of the Holders, "it shall not be necessary to make any such Holders parties to any such proceedings." (Id.) While the no-

---

[12] In light of this finding, the Court need not consider the parties' arguments regarding Plaintiffs Individual Holders' litigation rights under the governing documents.

action clauses bar the Individual Holders from suing in their individual capacity, there is no reason for the Court to dispose of the Trustee's claims simply because the Individual Holders seek to join the action in their individual capacity.  In fact, the governing documents expressly delegate authority to the Trustee to bring actions for payments on behalf of the Individual Holders.  Accordingly, Plaintiff Trustee's claims survive the no-action clause threshold issue.

### ii. Timeliness of Plaintiff Trustee's[13] Claims

The Republic argues that Plaintiffs' claims related to 2014 to 2016 are time-barred under New York's six-year statute of limitations and/or Section 14 of the Global Securities, which specify a five-year prescription period.  (Def. Mem. at 20.)

Section 14 of the Global Securities, entitled "Prescription," states: "All claims against the Republic for any amounts due hereunder . . . shall be prescribed unless made within five years from the date on which such payment first became due, or a shorter period if provided by law."  (Am. Compl. Ex. B at ECF 20.)  The clause "prescribes the Republic's obligation to pay where the security holder fails to assert a right to payment within the five-

---

[13] Given the Court's finding that Plaintiffs Individual Holders failed to comply with the no-action clauses, (see supra Section III.a.i.1), the Court need not consider Plaintiffs Individual Holders' timeliness.

year period."  Ape Grp. SPA v. Republic of Argentina, 2022 WL
463309, at *3 (S.D.N.Y. Feb. 15, 2022).

The "Payment Dates" for Reference Years 2014, 2015, and 2016
were December 15, 2015, December 15, 2016, and December 15, 2017,
respectively.  (Def. Mem. at 20.)  For Reference Year 2016, the
most recent year of the three years at issue, the five-year
prescription period expired on December 15, 2022, which is nearly
a year before Plaintiffs filed this action.  Plaintiffs argue that
the Amended Complaint relates back to the prior United States
litigations, (see supra Section I.d.), because Plaintiffs allege
"the same conduct."  (Pl. Opp'n at 19.)  However, the prior
litigations are separate actions.  Brewer v. Hashim, 738 F. App'x
34, 35 (2d Cir. 2018) ("The Federal Rules of Civil Procedure
contemplate the relation back of pleadings only in the context of
a single proceeding," not across "separate action[s]."); Manhattan
Rev. LLC v. Yun, 2016 WL 6330474, at *8 (S.D.N.Y. Aug. 15, 2016)
(Under New York law, relation-back across separate actions is
available only where the new action can be "consolidat[ed] with a
pending action."); U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap., Inc.,
33 N.Y.3d 84, 91 (N.Y. 2019) ("there is no valid pre-existing
action to which a claim in a subsequent amended pleading may relate
back."); Moran v. JRM Contr., Inc., 43 N.Y.S.3d 828, 829 (N.Y.
App. Div. 2016) (rejecting relation-back where "prior action was
dismissed").  And, the prior litigations concerned Reference Year

2013 only and thereby not any of the Reference Years at issue here. Espinosa v. Delgado Travel Agency, Inc., 2006 WL 2792689, at *3 (S.D.N.Y. Sept. 27, 2006) (no relation back where new allegations "focus[ed] on events [and] dates . . . never mentioned in the original complaint").

Accordingly, Plaintiff Trustee's 2014 to 2016 claims are barred.  Defendant's motion to dismiss Plaintiff Trustee's claims for Reference Years 2014 to 2016 is GRANTED.[14]

### b. Plaintiff Trustee's Claim:  The Republic's Payment Obligation

The Republic argues that Plaintiffs do not plausibly allege that the Republic was required to make a payment for any Reference Year after 2013.  The Republic argues that even under Plaintiffs' incorrect interpretation of the adjustment provision, their claims fail because INDEC published the required data in connection with the English Court's order and confirmed that the Payment Conditions were not met for any Reference Years.  (Def. Mem. at 10.)  While it is true that the contractual terms "clearly and plainly indicate that the calculations material to [Plaintiffs'] breach of contract claim must rely on enumerated economic metrics produced by the Argentinian government," Aurelius I, 2020 WL 70348, at *1, it is not true that Plaintiffs must, as a matter of law, rely on those

---

[14] In light of this finding, the Court need not evaluate the parties' arguments regarding New York's statute of limitations period.

calculations years after they were called for in the contract. Instead, figuring out which parties' data is "reasonable" or "as close as possible" to what the contract called for, is a factual question that is not appropriately resolved on a motion to dismiss.

Accordingly, as in Aurelius II, 2021 WL 1177465, Plaintiffs have sufficiently pled that the Republic was required to make a payment for the Reference Years at issue. Defendant's motion to dismiss Plaintiff Trustee's claim as to the Republic's payment obligation for the Reference Years at issue is DENIED.

### c. Plaintiff Trustee's Claim: Bad Faith and Prevention[15]

The Republic argues that the Amended Complaint fails to state a claim for breach of the implied covenant of good faith and fair

---

[15] The Republic asserts that Plaintiffs must meet the heightened pleading standard of FRCP 9(b) because Plaintiffs' claims involve "classic fraud allegations, that is, allegations of misrepresentations and omissions made with intent to defraud[.]" (Def. Mem. at 15.) FRCP 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Because Rule 9(b) applies to "all averments of fraud," it is cast "in terms of the conduct alleged." (Def. Mem. at 15.) Further, it "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).

In Aurelius II, the Court explained that Plaintiffs' claim is not that the Republic misrepresented or omitted the terms of the GDP Warrants to induce holders to enter into the exchange offer. 2021 WL 1177465 at *5-*7. Rather, Plaintiffs claim, as they do in the present case, that years after the holders accepted the exchange offer, the Republic obstructed the availability of data in bad faith to avoid making a payment as required by the Global (cont'd)

dealing or under the "prevention" doctrine.  Most of Plaintiffs'
allegations concern the Republic's efforts to prevent payment <u>for
2013</u>, not any of the Reference Years at issue here.  (Am. Compl.
¶¶ 11-13.)  Unlike in <u>Aurelius II</u>, where this Court found the
plaintiffs had plausibly alleged that the Republic "was aware that
it would owe a payment to [Securities] holders" for Reference Year
2013 based on "the EMAE Index for 2013, and Actual Real GDP in
1993 prices for the first three quarters of 2013," 2021 WL 1177465,
at *11, the Amended Complaint contains no similar allegations for
any relevant Reference Year.  In fact, there is no allegation that
the Republic knew the outcome of the calculations for the post-
2013 Reference Years and acted to avoid payment.  In addition,
Plaintiffs allege wrongful intent from the Republic's calculations
that were done in response to the English Court's order to use "a
methodology as close as possible."  (Am. Compl. ¶¶ 115-16.)
However, that argument is without merit because the Court cannot
infer bad faith from the Republic's efforts to comply with the
English Court's order.  Additionally, Plaintiffs' allegations of
bad faith and prevention are Plaintiffs' repackaged breach of
contract claims and therefore cannot survive.  <u>JN Contemp. Art LLC</u>

---

(cont'd) Securities' terms.  (<u>Id.</u> at *7.)  Because Plaintiffs'
allegations did not sound in fraud, the Court held that they were
not subject to FRCP 9(b)'s heightened pleading requirements.  The
same is true here.  Accordingly, the Court will evaluate
Plaintiffs' Amended Complaint under FRCP 8.

v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) ("A claim for violation of the covenant [of good faith and fair dealing] survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract.").

Accordingly, Plaintiff Trustee's bad faith and prevention doctrine claims are barred. Defendant's motion to dismiss Plaintiff Trustee's bad faith and prevention doctrine claims is GRANTED.

### IV.  **Conclusion**

For the reasons set out above, as to Plaintiffs Individual Holders' claims, Defendant's Motion is GRANTED.

As to the Trustee's claim, Defendant's Motion is GRANTED in part and DENIED in part. As to Plaintiff Trustee's claims for Reference Years 2014 to 2016, Defendant's Motion is GRANTED. As to Plaintiff Trustee's claim regarding the Republic's payment obligation, Defendant's Motion is DENIED. As to Plaintiff Trustee's bad faith and prevention doctrine claims, Defendant's Motion is GRANTED.

Satisfied that oral argument is not needed in addition to the papers submitted by the parties, the parties' requests for oral argument, (dkt. nos. 40, 43), is DENIED. Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 448 (2d Cir. 1995); see also

SecurityNational Mortg. Co. v. Lehman Bros. Holdings Inc., No. 20 MC 00027 (LAK) (DF), 2020 WL 9815257, at *1 (S.D.N.Y. July 10, 2020).

The Clerk of the Court shall close dkt. nos. 37, 40, and 43.

**SO ORDERED.**

Dated:    September 29, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

28