# EXHIBIT 1

FRIEDMAN KAPLAN

**DANIEL B. RAPPORT**
drapport@fklaw.com
212.833.1122

August 11, 2026

**BY EMAIL**
Thomas C. White
Sullivan & Cromwell LLP
1700 New York Avenue, N.W, Suite 700
Washington, D.C. 20006-5215
whitet@sullcrom.com

Re: *Aurelius Capital Master, Ltd. et al. v. The Republic of Argentina*, No. 23 Civ. 10838 (S.D.N.Y.) (LAP)

Dear Tom:

We represent Plaintiff The Bank of New York Mellon, solely in its capacity as trustee (the "Trustee"), in the above-referenced action. We write concerning the deficiencies in (i) the Republic's June 4, 2026 Responses and Objections to Plaintiff's First Set of Interrogatories (the "Interrogatory Responses"); and (ii) the Republic's June 4, 2026 Responses and Objections to Plaintiff's First Set of Requests for the Production of Documents and Things (the "RFP Responses").[1]

The Trustee requests that, by August 21, the Republic provide amended responses curing the deficiencies identified herein. The Trustee is available to meet and confer in the interim, provided that the Republic's counsel is authorized to take binding positions at such meetings on behalf of its client.

## I. Deficiencies Common to the Republic's Interrogatory and RFP Responses

There are numerous deficiencies in the Republic's Interrogatory Responses and its RFP Responses, but we focus first on two objections that pervade both.

### A. The Republic Cannot Limit Discovery to Reference Years 2017 through 2022.

The Republic generally and specifically objects to the Interrogatories and RFPs to the extent that they seek documents or information "concerning any Reference Year other than Reference Years 2017 through 2022," contending that "such information is neither

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Trustee's First Set of Interrogatories to Defendant The Republic of Argentina, dated May 5, 2026 (the "Interrogatories") and in the Trustee's First Set of Requests for the Production of Documents and Things to Defendant The Republic of Argentina, dated May 5, 2026 (the "RFPs").

relevant to the claims or defenses of any party nor proportional to the needs of the Action."[2] That contention wholly lacks merit.

As to Reference Years *after* 2022, the Republic has not articulated a valid basis for declining to produce discovery. While the Payment Dates for such Reference Years had not yet passed when the Amended Complaint was filed, the Amended Complaint makes clear that the Trustee's claims encompass Reference Years after 2022:

- "[T]he Trustee seeks any and all Payment Amounts due for such Reference Years after 2013. The Payment Amounts due for each of Reference Years 2015, 2017, 2018, 2021 and 2022 exceeds $1 billion, and the total due for those years is roughly $5-6 billion, not including pre- and post-judgment interest. *Additional Payment Amounts may be due for Reference Years not yet completed.*" (Am. Compl. ¶ 7 (emphasis added).)

- "*The claims for payment asserted herein extend to Reference Years after 2022*." (*Id.* ¶ 120 n.7 (emphasis added).)

- "[T]he Trustee requests the entry of a judgment . . . [a]warding the Trustee a sum equal to the Payment Amounts for *any* Reference Years after 2013 for which the payment conditions would have been met but for the Republic's breaches[.]" (*Id.*, Prayer for Relief (emphasis added).)

As to Reference Years *before* 2017, the Court's dismissal of claims for Reference Years 2014-16 as time-barred (*see* Dkt. No. 49, at 27) provides no basis for refusing discovery concerning those or earlier Reference Years. "As to a timely claim, [a statute of limitations] does not operate to bar the use of a document that predates the commencement of the limitations period but that is relevant to events during the period." *Sir Speedy, Inc. v. L & P Graphics, Inc*., 957 F.2d 1033, 1038 (2d Cir. 1992). Documents related to Reference Years before 2017 are discoverable because they are relevant to the Trustee's surviving claims in multiple respects.

To begin with, the Republic has proffered the Manufactured Information as a substitute for the contractually-required data, Actual Real GDP measured in constant 1993 prices, which the Republic failed to publish. (Am. Compl. ¶ 116.) The Republic relies upon the Manufactured Information in its answer (Dkt. No. 52 ¶¶ 19, 116-17, 148) and has moved to dismiss this action—*twice*—on the basis of the Manufactured Information, including by arguing that the Manufactured Information, and the Republic's calculations based upon it, are "binding" on the Trustee and entitled to "deference." (Dkt. No. 24 at 9-10 n.7; Dkt. No. 39 at 11-12 n.7.) The Trustee disputes the *bona fides* of the Manufactured Information, including, without limitation, because of the discrepancies between the Manufactured Information and Actual Real GDP measured in constant 1993 prices *for Reference Years prior to 2017*, and the acknowledged deviations between the base year 2004 methodology used to create the Manufactured Information and the methodology historically used by INDEC to determine

[2] *See* Interrogatory Responses at General Objection No. 3 and Interrogatory Nos. 1-3 and 6 and RFP Responses at General Objection No. 4 and Request Nos. 5-21, 23-24, 34-35, and 45-48.

Actual Real GDP measured in constant 1993 prices. (Am. Compl. ¶¶ 117-20, 122; Dkt. No. 38-5 at PDF page 19.) Information and data for Reference Years prior to 2017 is plainly relevant to the Trustee's challenge to the Manufactured Information both because the Manufactured Information, as a series, includes figures for years as early as 2013 and because the Manufactured Information was developed using data and methodologies relating to Reference Years as far back as 2004, if not earlier. The Trustee is entitled to discovery as to all the building blocks of the Manufactured Information and there is no basis to cut off that inquiry arbitrarily at 2017.

Separately, Interrogatory No. 2 and Request Nos. 9-23 appropriately seek discovery into specified aspects of the Republic's national accounts statistics, including for Reference Years prior to 2017, because the requested documents and information are highly relevant to the Trustee's claims with respect to subsequent years. The Trustee, through its experts, will reconstruct what Actual Real GDP measured in constant 1993 prices would have been if the Republic had published it. GDP data for Reference Years prior to 2017 are relevant to that exercise because GDP data for any given year builds off of GDP data for prior years. Standard national accounts statistical practices involve examining and utilizing data for earlier years in a given series when determining GDP for a given year. Indeed, when the Republic rebased in 2014, it did not only release GDP data in the 2004 base year for 2013 but also published data for all years back to 2004. In reconstructing what Actual Real GDP measured in constant 1993 prices would have been, the Trustee and its experts should not have to consider data for only a few years in isolation. Instead, the Trustee is entitled to examine documents and information concerning the Republic's national accounts statistics and macroeconomic performance from earlier periods to, among other things, understand the methodologies employed and examine the relationships between various relevant indicators and the Republic's GDP figures.

Pre-2017 discovery is also relevant to numerous other issues in this action including, without limitation: (i) the absence of Actual Real GDP measured in constant 1993 prices for all Reference Years after 2013 (Am. Compl. ¶ 100); and (ii) the Republic's admission that it failed to retain the model, data, and manuals needed to calculate Actual Real GDP measured in constant 1993 prices (*see* Lavagna Statement ¶ 19).

Further, the Trustee alleges that the Republic did not actually calculate a constant adjustment fraction, or use it in determining whether payments under the Securities were due, until Reference Year 2021 but, instead, determined whether the Growth Condition was satisfied by comparing Actual Real GDP Growth measured in constant 2004 prices to unadjusted Base Case GDP Growth measured in 1993 prices, an approach the Court rejected as "atextual." *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 2020 WL 70348, at *6 n.6 (S.D.N.Y. Jan. 7, 2020). (Am. Compl. ¶ 90.) Interrogatory No. 1 and Request Nos. 7 and 8 seek information and documents about the Republic's determinations of whether payments were due under the Securities and related communications. Responsive information and documents concerning Reference Years 2014-2016 are relevant to showing whether the Republic had, in fact, used the constant adjustment fraction or instead used its other "atextual" interpretation of the Securities in the years following the 2014 rebasing. That issue directly bears on the Republic's deviation from the contractually-required

calculations and the *bona fides* of the contractual interpretation advanced by the Republic in this action.

B. <u>The Republic's General Invocation of Unspecified Argentine Laws Is Improper.</u>

In both its Interrogatory and RFP Responses—including in response to 27 specific document requests[3]—the Republic objects "to the extent" that the Request "calls for information or documents subject to legal protections under Argentine law." But except for a general reference to Argentina's Personal Data Protection Act, its Constitution, and unnamed "statistical secrecy laws" (*see* RFP General Objection No. 6), the Republic does not identify a single applicable Argentine law or regulation. Nor does the Republic explain what data is covered by those laws, whether data may be produced in compliance with the laws by anonymizing it, or whether it intends to withhold any responsive data on the basis of Argentine "legal protections." This does not suffice to specify the ground of the objection, and the Republic fails to indicate whether responsive materials are being withheld on the basis of this objection as required by Rule 34(b)(2)(B) & (C).[4]

The Republic "bears the burden of demonstrating that such law actually bars the production or testimony at issue." *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013) (cleaned up). To meet that burden, the Republic "must describe, among other things, the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Id.* (cleaned up). The Republic has not done so.[5]

Accordingly, the Republic must revise its Interrogatory and RFP Responses to specify which Argentine "legal protections" it is invoking, why they are applicable, and to what extent the Republic is withholding responsive materials on their account.

---

[3] *See* Interrogatory Responses at General Objection No. 1 and RFP Responses at General Objection No. 5-6 and Request Nos. 6, 7, 9, 10, 12, 15-20, 23-35, and 37-39.

[4] *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 40 (E.D.N.Y. 2007) (notice of foreign law was sufficiently given where defendant "noted that [an English Court of Appeal case] and its progeny prevent banks from disclosing customer information, and that U.K. anti-money laundering laws, including Section 333 of the Proceeds of Crime Act 2002 and Section 39 of the Terrorism Act 2000, as well as the U.K. Data Protection Act 1998, could subject the bank to civil liability.").

[5] Even if the Republic were to meet that initial burden, "it is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n. 29 (1987). Rather, making that initial showing would only be the beginning of a multi-factor comity analysis, *see Wultz*, 942 F. Supp. 2d at 459-60, which the Trustee believes would not sustain the Republic's objection.

## II. Other Deficiencies in the Republic's Interrogatory Reponses

### A. General Deficiencies

Before turning to the deficiencies in the Republic's responses to specific Interrogatories, the Trustee requests clarification and/or amended responses from the Republic on three general issues.

First, in General Objection No. 4, "[t]he Republic objects to the Interrogatories to the extent that they purport to require the Republic to collect or review documents outside the scope of the Republic's normal operations." It is entirely unclear what the Republic means by "normal operations." Responding to discovery demands in U.S. litigation is, presumably, "outside the scope of the Republic's normal operations," but that is not a cognizable ground for declining to provide discovery. Please provide amended Interrogatory Responses withdrawing General Objection No. 4.

Second, General Objection No. 5, which "objects to the Interrogatories to the extent they purport to require the Republic to draw subjective or legal conclusions," is inconsistent with the applicable rules. Rule 33 provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to . . . the application of law to fact." Please provide amended Interrogatory Responses withdrawing General Objection No. 5.

Third, the Republic objects to each of the Interrogatories as "potentially capturing numerous individuals with only tangential, cumulative, or immaterial knowledge," leaving the Trustee to guess where the Republic is drawing the line between people with relevant knowledge it is willing to disclose and those with relevant knowledge that it is refusing to disclose. *See United States v. Veeraswamy*, 347 F.R.D. 591, 601 (E.D.N.Y. 2024) ("[B]oilerplate objections lacking any specific explanations . . . cannot serve as a basis for Defendant to resist discovery."). Please explain how the Republic is determining whether a person's knowledge is "only tangential, cumulative, or immaterial."

### B. Interrogatory No. 1

Interrogatory No. 1 asks for the identity of persons with knowledge of the Republic's determinations of whether a Payment Amount was due under the Securities for Reference Years after 2013. The Republic's response is patently incomplete, as it provides only eight names, and only as to Reference Years 2017 through 2022.

As discussed above, there is no valid basis for the Republic to restrict its response to Interrogatory No. 1 to Reference Years 2017 through 2022. *See supra* at 1-4.

Nor is there a valid basis for limiting the response to current and former officials of MECON. Certainly, more than eight people at one agency of the Argentine government had knowledge of, or involvement in, the determination of whether the Republic had to make billions of dollars in payments under the Securities over multiple years. As the Trustee alleges, the Argentine President and Argentina's central bank, the *Banco Central de*

*la República Argentina* ("BCRA"), closely monitored payments due under the Securities because of their impact on the Republic's foreign currency reserves, and other high-level executive officials, including the Chief of Cabinet, were involved in discussions, and gave statements to the Argentine Congress, concerning the interpretation of the Securities. (Am. Compl. ¶¶ 78, 84-85.) Indeed, in the Prior Actions, the Court directed the Republic to provide discovery from the office of the President of the Republic of Argentina and the office of Chief of Cabinet of Ministers of the Argentine Nation with respect to the decision that INDEC would not publish Actual Real GDP measured in constant 1993 prices. (*See* 19-cv-351, Dkt. No. 69.) The Court also ordered the Republic to search the records of the BCRA with respect to payments under the Securities. (*See* 19-cv-351, Dkt. No. 73 at 2-3; Dkt. No. 83 (2/15/2022 Tr.) at 27-28.) Any information responsive to Interrogatory No. 1 held by those or other offices and agencies is relevant and discoverable, just as it was in the Prior Actions.[6]

As for MECON and INDEC, the Republic must identify *all* officials and personnel of those agencies (including, but not limited to, personnel of MECON's National Office of Public Credit, INDEC's National Directorate of National Accounts, or any successor offices) who were involved in determining whether a Payment Amount was due for any Reference Year after 2013 without the arbitrary limitations the Republic seeks to impose.

C. Interrogatory No. 2

Interrogatory No. 2 seeks the identity of persons with knowledge of the methodology used to calculate or estimate the Republic's national accounts statistics measured in constant 1993 or 2004 prices (including Actual Real GDP and the EMAE Index) and components thereof from 2004 to the present. In response, the Republic identifies only seven people (including three identified by reference to the Republic's interrogatory responses in the Prior Actions), and declines to identify (i) persons with responsive

[6] The Trustee rejects the Republic's objection that Interrogatory No. 1 "contains multiple discrete subparts" for purposes of FED. R. CIV. P. 33(a)(1). The interrogatory merely asks the Republic to identify persons with knowledge concerning a single subject matter over a number of years. Even when an interrogatory contains subparts (which Interrogatory No. 1 does not), they are only counted separately if they are "logically or factually independent of the question posed by the basic interrogatory." *Bartnick v. CSX Transp., Inc.*, 2012 WL 1565057, at *2 (N.D.N.Y. Apr. 27, 2012) (collecting cases). That is not the case here. Instead, an interrogatory "containing subparts directed at eliciting details concerning a common theme should be considered a single question." *Murrell v. Pro Custom Solar LLC*, 2021 WL 12151177, at *2 (E.D.N.Y. Dec. 6, 2021); *see* FED. R. CIV. P. 33(a)(1) advisory committee note ("[A] question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."). *Compare Theobles v. Indus. Maint. Co.*, 247 F.R.D. 483, 485-86 (D.V.I. 2006) (magistrate erred in construing interrogatory concerning plaintiff's supervision and covering different time periods and supervisors as multiple interrogatories), *with Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, 2024 WL 1285390, at *9 (N.D.N.Y. Mar. 26, 2024) (interrogatory "seeking persons knowledgeable about" nine "distinct and 'factually independent' subject matters" constituted multiple interrogatories). Under these standards, Interrogatory No. 1 counts as only one interrogatory for purposes of Rule 33(a)(1).

knowledge other than for Reference Years 2017 through 2022 or (ii) persons "solely on the basis of knowledge concerning the EMAE Index." These limitations are untenable.

In addition to the improper restriction to Reference Years 2017 through 2022, *see supra* at 1-4, there is no valid basis for the Republic to exclude persons with knowledge about the EMAE Index from its response. The EMAE Index is a reliable proxy for Actual Real GDP and was relied on by the court in English Action to determine 2013 Actual Real GDP measured in constant 1993 prices. And notwithstanding the Court's ruling concerning the EMAE Index in *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 2020 WL 70348, at *7 (S.D.N.Y. Jan. 7, 2020), the Court here recognized the index's relevance and, overruling the Republic's objections, ordered the Republic to produce documents concerning the methodology for calculating the EMAE Index in the Prior Actions. (*See* 19-cv-351, Dkt. No. 69 ¶¶ 3-4.) There is no basis for excluding such discovery in this Action either.

Even within the unduly limited scope of its response, the Republic's answer is incomplete. The Republic identifies only a few high-level INDEC officials (INDEC's Director, Technical Director, and National Director of National Accounts), and it does not identify any other employee of INDEC's National Directorate of National Accounts, who would undoubtedly have knowledge of the methodology used to calculate the statistics.

D. Interrogatory No. 3

Interrogatory No. 3 seeks the identity of persons with knowledge concerning the preparation or contents of the Manufactured Information. The Republic's attempt to limit its response to Reference Years 2017 through 2022 is inappropriate because, in addition to the reasons discussed above in connection with Interrogatory Responses Nos. 1 and 2, the Manufactured Information expressly covers Reference Years beginning with 2013 and was developed using data and methodologies relating to earlier Reference Years. Information concerning the Manufactured Information for those Reference Years goes to how well it approximates, and whether it may serve as a substitute for, the missing contractual input. Additionally, the Republic's response to Interrogatory No. 3 is selective and incomplete, as it does not identify a single person at INDEC (or any other Argentine agency) who was involved in preparing the Manufactured Information other than Directors, Technical Directors, or National Directors of National Accounts. There is no basis for the arbitrary exclusion of other Argentine officials involved in, or with knowledge of, the Manufactured Information's preparation or contents, such as, for example, lower-level INDEC employees who actually performed the calculations, from the scope of the Republic's response.

Each individual involved in preparing the Manufactured Information, or with knowledge of its contents, possesses unique knowledge relevant to the Trustee's allegations. For example, the Republic admits in the Lavagna Statement that the Republic destroyed archival data and methodological for various surveys used in estimating Actual Real GDP measured in constant 1993 prices. (Dkt. No. 38-8 ¶¶ 18-34.) INDEC officials beyond the Directors, Technical Directors, or National Directors of National Accounts undoubtedly have knowledge of how INDEC addressed the absence of those surveys in preparing the Manufactured Information (which would be responsive to Interrogatory No. 3), as well as

knowledge concerning those surveys prior to their destruction (which would be responsive to Interrogatory No. 2), and the circumstances of the surveys' destruction (which would be responsive to Interrogatory No. 6). The Republic's attempt to shield such officials and their knowledge from discovery is baseless.

E. Interrogatory No. 6

Interrogatory No. 6 seeks the identity of persons with knowledge of the Republic's preservation or destruction of relevant documents, including documents concerning payments due under the Securities, national accounts statistics, and the Manufactured Information. The Republic's partial response is that it is "not aware of any loss or destruction of documents or communications concerning Reference Years 2017 through 2022." The Republic otherwise objects that Interrogatory No. 6 seeks "discovery-on-discovery" that is "not warranted absent an adequate factual basis for collateral discovery or a material discovery deficiency."

The discovery sought by Interrogatory No. 6 is not collateral "discovery-on-discovery" but is, instead, directly relevant to the substantive allegations in this Action. The Republic has asserted that it is "impossible" to "reconstruct" Actual Real GDP measured in constant 1993 prices "in the same form as when" it was published by INDEC historically, because the information needed to "reconstruct" the surveys was "discarded" and "is no longer available" and the "model" for calculating Actual Real GDP measured in constant 1993 prices "no longer exists." (Lavagna Statement ¶¶ 10-20; s*ee also* Am. Compl. ¶ 148 (the Republic "claims to have discarded the price data, model and related records necessary to generate Actual Real GDP measured in constant 1993 prices.")). Likewise, the Manufactured Information's "Methodological Note" states that "the exact reconstruction of the 1993 price series is not feasible according to rigorous methodological criteria, due to," among other things, "the lack of accurate historical price data." These assertions go to merits issues, *e.g.*, whether and how Actual Real GDP measured in constant 1993 prices can be reconstructed and whether the Manufactured Information represents a good faith attempt to faithfully approximate Actual Real GDP measured in constant 1993 prices historically published by INDEC. The Trustee is entitled to test through discovery the Republic's assertions that the relevant data in fact no longer exists. The starting point for such discovery is the identification of any witnesses to the supposed "discard[ing]" of the relevant information, which the Republic has unjustifiably declined to provide.

Moreover, even if Interrogatory No. 6 could be characterized as "discovery-on-discovery," it is justified under the authority cited by the Republic. *Winfield v. City of New York* makes clear that "discovery-on-discovery" is appropriate where there is "an 'adequate factual basis' to justify the discovery." 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018). Here, the Republic's own statements provide such factual basis. The Republic asserted in the English Action that it had "destroyed all the necessary data now to perform the process of estimation which it would have performed for FY 2013 in early 2014" (English Judgment ¶ 250); acknowledged that it failed to issue document preservation notices until many months after the first Prior Action commenced (19-cv-351, Dkt. No. 144-212, ¶ 12); and otherwise acknowledged numerous issues with its document retention, including

the lack of a "uniform policy of document retention" or "systematic back-ups at various relevant entities" (19-cv-351, Dkt. No. 51-4, at 2). Against this background, the Republic's response states only that it is unaware of any destruction of documents for Reference Years 2017-22 and says nothing about the document destruction or loss for other Reference Years. The Trustee, through its experts, will need to reconstruct what Actual Real GDP measured in constant 1993 prices would have been if the Republic had published it, and then calculate the payments due, including for Reference Years 2014-16. Information about what data was retained and what was lost is unquestionably relevant to that exercise and thus provides an "adequate factual basis" for Interrogatory No. 6. *See Winfield*, 2018 WL 840085, at *6 ("adequate factual basis" for collateral discovery existed where information was relevant to expert's analysis).[7]

## III. <u>Other Deficiencies in the Republic's RFP Reponses</u>

Before turning to the deficiencies in the Republic's responses to particular RFPs, we address four general issues.

First, as to the six RFPs (Nos. 5, 12, 24, 42, and 47-48) for which the Republic stated it was willing to meet and confer, the Trustee is available to do so promptly.

Second, General Objection No. 10 ("The Republic objects to the Requests to the extent they purport to require the Republic to collect or review documents outside the scope of the Republic's normal business") is invalid for the reasons explained for the analogous General Objection in the Interrogatory Responses and should be withdrawn.

Third, the Republic must state whether it intends to withhold responsive documents based on each of its General Objection Nos. 1, 2, 7, 8, 9, and 10, its "Objections to Definitions," "Objections to Instructions," and the specific objections to each specific request. *See* FED. R. CIV. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

Fourth, in both General Objection No. 3 and the responses to numerous specific requests,[8] the Republic objects that "the Republic has already searched for and produced in the Prior Actions" and states that it "will not repeat any searches or undertake new searches for documents that were the subject of searches in connection with the Prior Actions." The Republic's production obligations in this Action, however, are not coterminous with its production in the Prior Actions, and it may not decline to conduct searches in response to the RFPs in this Action simply because there may be some overlap with the subjects of its production in the Prior Actions.

Request No. 3 illustrates why the Republic cannot rely on its Prior Action productions alone to satisfy its production obligations here. Request No. 3 seeks documents

---

[7] The Republic's objection that Interrogatory No. 6 "contains multiple discrete subparts" is unfounded for the same reasons discussed in connection with Interrogatory No. 1. *See supra* note 6.

[8] *See* Request Nos. 1-4, 6, 8, 11-22, 33, 44, 46, and 47.

concerning the Constant Fraction Alternative, including the associated "overlap year." The Constant Fraction Alternative was a subject of discovery in the Prior Actions, but that discovery focused on Reference Year 2013. The Republic collected documents principally from 2014 and earlier and determined whether those documents were responsive based on their relationship to the claims for Reference Year 2013. There is no reason to believe the Republic collected and reviewed documents about the Constant Fraction Alternative from, for example, 2022 in the Prior Actions (when fact discovery in those actions had already ended). But documents from 2022 on the Constant Fraction Alternative are relevant to the Trustee's claim in this Action that the Republic did not a use a constant adjustment fraction until performing the calculations for Reference Year 2021. (Am. Compl. ¶ 90.)

Where necessary, the Republic must conduct searches for time periods that were not captured in its searches in the Prior Actions. The Republic must also determine whether documents that it collected but deemed non-responsive in the Prior Actions because they did not relate to Reference Year 2013, are responsive to the RFPs in this Action. The Trustee is available to meet and confer on these issues.

A. <u>Requests Concerning the Terms of the Securities (RFP Nos. 1-4 and 6)</u>

Request Nos. 1-4 seek documents concerning terms of the Securities and their interpretation, including the Adjustment Provision, "Actual Real GDP for such Reference Year measured in constant 1993 prices" as used in the Adjustment Provision, the Republic's Constant Fraction Alternative interpretation, and the Binding Effects Clause. Separately, Request No. 6 seeks documents from after 2013 concerning whether to calculate or publish Actual Real GDP measured in constant 1993 prices. In response to each of these requests, the Republic refers to the productions in the Prior Actions and declines to perform any further searches for responsive documents.

For the reasons discussed immediately above, the Republic's searches from the Prior Actions may not have captured documents responsive to these requests, particularly documents created after 2014. The Trustee requests that the Republic identify the parameters (*i.e.*, date ranges, custodians, search terms) used to collect documents in the Prior Actions on the subjects covered by Request Nos. 1-4 and 6 so that the Trustee can assess whether further search and collection is required for these requests.

B. <u>Requests Concerning Whether a Payment Amount Was Due (RFP Nos. 7-8)</u>

Remarkably, the Republic agreed to "conduct a reasonable search to identify and produce relevant, non-privileged documents" in response to *only two of the fifty requests* propounded by the Trustee: Request No. 7, which seeks the documents the Republic relied on in determining whether a payment was due for Reference Years after 2013, and Request No. 8, which seeks the Republic's communications with the Trustee, Holders, or beneficial owners concerning whether a Payment Amount was due for those Reference Years. Even as to those two requests, the Republic's responses are deficient.

In addition to unduly limiting the scope of its response to Reference Years 2017 through 2022, *see supra* at 1-4, the Republic declines to produce documents that are

"publicly availably or otherwise accessible to" the Trustee in response to Request Nos. 7 and 8. Those are not appropriate limitations.[9] The Republic also improperly restricts its response to Request No. 8 to communications with beneficial owners "other than the named beneficial owners who originally brought this Action"—*i.e.*, the "Requesting Beneficial Owners." That restriction leaves out the Republic's communications with the Trustee and the Holder, all of which are relevant and discoverable. Additionally, the Requesting Beneficial Owners' documents are not in the Trustee's possession, custody, or control. The Republic's communications with the Requesting Beneficial Owners must be produced by the Republic.

C. Requests Concerning the Republic's National Accounts Methodology and Data (RFP Nos. 9-23 and 40-41)

Request Nos. 9-23 seek documents concerning the Republic's national accounts statistics, including Actual Real GDP and the EMAE Index, measured in constant 1993 or 2004 prices. The Republic indicates it will meet and confer with respect to Request No. 12, which seeks the data, working files, and manuals used to calculate the Republic's national accounts statistics. But the Republic otherwise declines to produce in response to any of these RFPs, objecting on various grounds including burden, privilege, public availability, unidentified "legal protections" under Argentine law, and the Prior Actions' production. The Republic's national accounts statistics are plainly relevant, and none of the Republic's boilerplate objections justifies withholding the requested discovery.

Request Nos. 9-11 seek forecasts, reports, and communications with the IMF concerning the Republic's macroeconomic performance for the Reference Years at issue—years which were not at issue in the Prior Actions.[10] Those documents will provide information relevant to the Trustee's expert(s)' analyses for estimating Actual Real GDP measured in constant 1993 prices in the absence of data published by the Republic, and to assess the accuracy and *bona fides* of the Manufactured Information.

Request Nos. 15-23 and 40-41 concern specific methodological and analytical matters pertaining to the Republic's national account statistics. The documents sought will assist the Trustee's expert(s) in reconstructing what Actual Real GDP measured in constant 1993 prices would have been if the Republic had published it, as well as in understanding the methodological divergences between the Manufactured Information and Actual Real GDP

[9] *See City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 3281110, *1 (S.D.N.Y. July 15, 2019) (that "some documents were publicly available on the internet" does not "excuse [defendant's] failure to produce documents"); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 380 (S.D.N.Y. 2011) (defendant's possession of responsive documents "does not relieve [plaintiff] of his obligation to provide responsive documents also in his possession, custody, or control").

[10] To the extent the Republic may not produce certain documents without the IMF's consent, the Republic has not identified the applicable restrictions or stated whether it will seek the IMF's consent. Any documents that the IMF directs or requests the Republic to withhold should be logged.

measured in constant 1993 prices. The Court compelled the Republic to produce similar documents in the Prior Actions, and it must do so here as well.[11]

D. Requests Concerning the Manufactured Information (RFP Nos. 24-36)

The RFPs contain multiple requests concerning the Manufactured Information, including the deflators and indexation methodology used. As with the RFPs concerning its national accounts, the Republic agreed to meet and confer as to one Request (No. 24), but categorically declined to produce in response to any of the others.

The Manufactured Information is unquestionably a relevant discovery topic. *The Republic* has proffered the Manufactured Information as a substitute for Actual Real GDP measured in constant 1993 prices; it moved to dismiss based on the Manufactured Information; and the Court recognized the importance of the "factual question" of "which parties' data is 'reasonable' or 'as close as possible' to what the contract called for[.]" (Dkt. No. 49 at 25.) The Trustee is therefore entitled to test the Manufactured Information's "reasonableness," and that requires information about the methodology used to create it.

None of the Republic's objections justifies the Republic's wholesale refusal to produce documents in response to these RFPs. Analyses concerning national accounts methodologies, such as which deflators to use, are not privileged legal advice. Nor is the requested information publicly available. The "Methodological Note" and other information released with the Manufactured Information lacks basic information that the Republic historically provided when it released GDP data, including "quarterly estimates of GDP levels and growth rates, expenditure-side and production-side GDP, fixed domestic gross investment, global supply and demand and the implicit price index." (Am. Compl. ¶ 131.)

Nor is there any merit to the Republic's responses to Request Nos. 34-36. The Republic declines to produce communications with the English Claimants concerning the Manufactured Information in response to Request No. 35 even though those communications are plainly relevant and not privileged. Similarly, Request No. 34 seeks documents "sufficient to show" the personnel who participated in the preparation of the Manufactured Information. The request is not burdensome, does not seek privileged information, and is otherwise not objectionable. The Republic's refusal to respond to Request No. 34 effectively conceals from the Trustee the identity of the witnesses who know how the Manufactured Information was prepared. And while some documents responsive to Request No. 35—which seeks communications with the personnel who prepared the Manufactured Information

[11] For example, Request Nos. 15 and 17 seek "analyses performed by the Republic of the relationship, if any, between (a) the 1993 Series, and (b) the Original or the Revised 2004 Series" and analyses of "differences in the methodology . . . involved in preparing, calculating, or estimating (a) the 1993 Series, and (b) the Original or the Revised 2004 Series." In the Prior Actions, the Court compelled the Republic to produce documents "concerning the relationship between Actual Real GDP in 1993 prices and the EMAE Index in 1993 prices" and concerning the methodologies used to calculate "Actual Real GDP in 2004 prices" and the "EMAE Index in 1993 prices." (19-cv-351, Dkt. No. 69.) Those documents were relevant to estimating missing GDP statistics in the Prior Actions, just as the requested documents are in this Action.

about compliance with the English Court Order—may contain privileged information, the appropriate response is to redact and log any privileged portions of documents, not to object to the RFP in its entirety.

E. Requests Concerning the Lavagna Statement and the English Court Order (RFP Nos. 37-39)

The Lavagna Statement is centrally relevant to this Action. It is repeatedly referenced in the Amended Complaint, including to demonstrate that the Manufactured Information is unreliable because (as Lavagna acknowledged) the Republic "discarded the necessary price data, model and related records" needed to estimate Actual Real GDP measured in constant 1993 prices, and using the "the 2004 methodology is not an acceptable way to estimate" the missing contractual input. (Am. Compl. ¶¶ 133, 135.) The Republic, nonetheless, broadly refuses to produce any documents or communications concerning the Lavagna Statement, apparently on privilege grounds. (Request No. 37.) Privileged portions of documents may be redacted and logged, but relevant, *non-privileged* information must be produced. Subparts (d)-(e) of Request No. 37, in particular, seek information about underlying statistical issues discussed in the Lavagna Statement, which do not implicate privilege.

Similarly, the Republic refuses to produce documents about its response to the English Court Order—specifically, its efforts, if any, "to identify or analyze 'a methodology as close as possible to that used by INDEC for Reference Years 2006 to 2012'" and "to identify or analyze 'a level of detail approximating the detail made available by INDEC for its quarterly GDP publications prior to 2014' in estimating Actual Real GDP measured in constant 1993 prices." (Request Nos. 38-39.) Again, the Republic apparently objects on privilege, but that does not excuse it from producing all responsive, non-privileged documents or portions of documents.

F. Request Concerning the Republic's Affirmative Defenses (RFP No. 43)

Request No. 43 seeks documents concerning the allegations made by the Republic in support of six of its Affirmative Defenses. The Republic's response merely refers to its Initial Disclosures and forthcoming expert reports. The Republic's Initial Disclosures, however, do not identify a single document related to the Republic's Affirmative Defenses. The Republic must either produce any documents supporting those defenses or confirm that no such documents exist.

G. Requests Concerning the Republic's Destruction of Relevant Documents (RFP Nos. 45-46)

Request Nos. 45-46 seek documents concerning the Republic's preservation, loss, and/or destruction of documents related to payments due for Reference Years after 2013 and related claims, national accounts statistics, and the Manufactured Information. The Republic's objection that both requests "improperly seek[] discovery on discovery" is unfounded for the same reasons discussed in the context of Interrogatory No. 6, *supra* at 8-9.

* * * *

We await the Republic's amended Interrogatory Responses and RFP Responses curing the foregoing deficiencies, and are available to meet and confer.

Very truly yours,

*s/ Daniel B. Rapport*
Daniel B. Rapport

cc: All counsel (by email)