# EXHIBIT 2

SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, New York 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 11, 2026

Via Email

Daniel B. Rapport,
Friedman Kaplan Seiler Adelman & Robbins LLP
7 Times Square,
New York, NY 10036-6516

Re: *Aurelius Capital Master, Ltd., et al.* v. *The Republic of Argentina*, No. 1:23-cv-10838 (LAP)

Dear Dan:

I write on behalf of the Republic of Argentina (the "Republic") in response to your August 11, 2026 letter ("Plaintiff's Letter"). Plaintiff's Letter concerns the Republic's June 4, 2026 Responses and Objections to Plaintiff's First Set of Interrogatories (the "Interrogatories") and First Set of Requests for the Production of Documents and Things (the "Document Requests").

Your exceedingly broad discovery requests seek extensive information about a twenty-two-year period, including "all" documents and communications concerning broadly defined subjects, persons with "any" knowledge of those subjects, "all analyst reports" concerning the Republic or any autonomous Province's macroeconomic performance, "all revisions" and "all commentary, manuals, or guidelines" concerning years of national-accounts publications, and "all documents and communications concerning" the Republic's affirmative defenses.

The Republic has provided relevant information and has committed to providing discovery of relevant documents proportional to the needs of the case. For example, in response to the Interrogatories, the Republic has identified the MECON and INDEC officials with material involvement in the relevant payment determinations, national-accounts methodology, and preparation of the Newly-published 1993 Series. It has also agreed to produce the documents most relevant to the at-issue Reference Years by using agreed-upon search parameters. Your letter overlooks that.

The scope of proportionate discovery here must also be understood in light of the extensive discovery already undertaken in the Prior Actions.[1] In March, Plaintiff reassured the Republic that discovery here would be streamlined in light of the parties' ability to rely on discovery from the Prior Actions, and specifically, that "Plaintiffs are not intending for the Republic to repeat prior searches." (Ex. A (Mar. 31, 2026 Email from Michael S. Palmieri to E. Rose, et al.) at 1.) The parties' discovery schedule and the Stipulated Protective Order expressly permit discovery from the Prior Actions to be used in this Action. (*See* Dkt. No. 54 at 2; Dkt. No. 56 ¶ 18.) Plaintiff therefore already has access to a substantial body of discovery that covers many of the same topics that Plaintiff has again asked for in its Requests, including the terms of the Securities, national-accounts series, and national-accounts methodologies. That discovery includes hundreds of thousands of pages produced by the Republic in the Prior Actions.

## I. Plaintiff's Claims Encompass Only Reference Years 2017 Through 2022

Plaintiff's Letter demands discovery pertaining to Reference Years before 2017 and after 2022. (Aug. 11 Ltr. at 1–4.) Discovery from those periods does not satisfy the relevance or proportionality requirements of Rule 26.

The Court dismissed Plaintiff's claims for Reference Years 2014 through 2016 as time-barred. (Dkt. No. 49 at 24, 27; Aug. 11 Ltr. at 2.) Discovery concerning those dismissed claims falls outside Rule 26(b)(1), which limits discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case." Plaintiff's reliance on *Sir Speedy, Inc.* v. *L & P Graphics, Inc.*, 957 F.2d 1033 (2d Cir. 1992), is misplaced. (Aug. 11 Ltr. at 2.) The case addressed the admissibility of evidence over an objection that it was "too old" in the context of a particular damages theory. *Sir Speedy, Inc.*, 957 F.2d at 1038. Here, if Plaintiff contends that pre-2017 discovery bears on its claims about later years, it must make that showing request-by-request.

Plaintiff's demand for discovery concerning Reference Years after 2022 fares no better. When the Amended Complaint was filed, Reference Year 2022 was the last Reference Year for which the Republic had made a Payment Determination. The Amended Complaint could not plausibly plead claims based on future events. A plaintiff's standing is assessed at the time of its complaint. *Doe* v. *McDonald*, 128 F.4th 379, 384 (2d Cir. 2025) ("Standing is determined as of the filing of the complaint."). And it is settled that claims for such future events are not ripe because they "rest[] 'upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas* v. *United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas* v. *Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Indeed, the Amended Complaint merely asserts that "[a]dditional Payment Amounts *may* be due for Reference Years not yet completed." (Am. Compl. ¶ 7 (emphasis added).)

---

[1] Terms not otherwise defined herein have the meaning set forth in the Republic's Responses and Objections to Plaintiff's First Set of Interrogatories, and the Republic's Responses and Objections to Plaintiff's First Request for Production of Documents and Things. For the purposes of this letter, "Prior Actions" refers to the actions identified in Definition 38 of Plaintiff's First Set of Requests for Production of Documents and Things.

Further, Plaintiff does not identify anything in the Court's September 29, 2025 decision suggesting that its claims include Reference Years after 2022. (Dkt. No. 49.) Similarly, Plaintiff offers no explanation of why discovery related to Reference Years after 2022 would be relevant to any of its surviving claims.

## II. The Republic Properly Preserved Applicable Privileges and Legal Protections

Plaintiff's Letter challenges the Republic's objections concerning Argentine law, privilege, IMF restrictions, and confidentiality associated with the English Action. (Aug. 11 Ltr. at 4, 11 n.10, 12–13.) Those objections do not create categorical exclusions from discovery. They preserve protections that may apply to particular documents or categories once the parties define a relevant and proportional search. As discussed below, Plaintiff conflates the notice required to preserve those issues with the more detailed showing that may be required if a specific withholding later becomes the subject of a motion to compel.

### A. Argentine-Law Protections

Rule 34 requires parties to state objections with reasonable particularity, and Rule 44.1 requires reasonable written notice that an issue of foreign law will be raised. The Republic's Responses provided that notice. They identify Argentina's Personal Data Protection Act (Law No. 25,326), statistical-secrecy protections, and constitutional protections, and state that the Republic will make reasonable efforts to produce responsive documents in a manner consistent with applicable law, including using redactions where appropriate. *See* Interrog. Resp. Gen. Obj. No. 1; Doc. Req. Resp. Gen. Obj. Nos. 5–6. The Argentine-law protections potentially implicated may include, without limitation: (i) Law No. 17,622, § 10, governing statistical secrecy; (ii) Decree No. 3110/1970, § 14, restricting disclosure of individualized statistical information; (iii) INDEC Disposition No. 176/1999, Annex I, § 3, governing disclosure of statistical data identifying respondents; (iv) Law No. 27,275, art. 8(a), protecting information whose disclosure would present a real and identifiable risk of significant harm to the Republic's foreign-policy interests; and (v) Law No. 25,326, §§ 2 and 11, governing disclosure of personal data. (*See* Ex. B (Apr. 22, 2022 Ltr. from J. Ossip to D. Rapport) at 1–2.) The applicability of these or any other protections will depend on the particular documents or categories of documents identified through discovery.

The cases cited by Plaintiff support the Republic's approach. *Weiss* v. *National Westminster Bank, PLC* explains that Rule 44.1 requires "'reasonable notice that an argument *will be* raised'" and distinguishes that notice from the showing required "[o]nce a discovery motion is made." 242 F.R.D. 33, 40 (E.D.N.Y. 2007) (quoting *Rationis Enters. Inc. of Panama* v. *Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 585–86 (2d Cir. 2005)). Likewise, *Wultz* v. *Bank of China Ltd.* addresses the burden on a party asking a court to sustain a foreign-law objection to production of identified material. 942 F. Supp. 2d 452, 460 (S.D.N.Y. 2013).[2] And *Owen* v. *Elastos Foundation*

---

2 The Supreme Court's guidance in *Société Nationale Industrielle Aérospatiale* v. *United States District Court* reinforces the point: American courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position," prevent discovery abuses when searching for evidence abroad, and must give a foreign sovereign's objections "the most careful consideration." 482 U.S.

confirms that foreign law may be presented and applied through amended responses, correspondence, the meet-and-confer process, and, if necessary, motion-stage submissions. 343 F.R.D. 268, 283 (S.D.N.Y. 2023). The Republic has not invoked an unnamed foreign-law objection as a license to withhold an undefined body of material; it has identified the categories of protection that may apply and will address their operation when responsive documents are located.

If Plaintiff has concerns about the application of these Argentine laws to particular documents, the Republic, of course, is willing to meet and confer. The Republic will use appropriate redactions or other measures where appropriate. If the Republic concludes that a specific responsive document or category cannot be produced, it will identify the applicable protection with reasonable specificity and state the effect of the objection consistently with Rule 34(b)(2)(C) and Rule 26(b)(5)(A).

B. <u>Privilege, IMF Restrictions, and English-Action Materials</u>

The same document-specific approach applies to attorney-client privilege and work product. The Republic does not contend, as Plaintiff suggests (*see* Aug. 11 Ltr. at 12–13), that otherwise non-privileged underlying facts, data, calculations, and independent technical materials become privileged merely because they were reviewed by counsel or used in litigation. But communications requesting or conveying legal advice, counsel's edits and mental impressions, drafts prepared in anticipation of litigation, interview memoranda, and litigation strategy remain subject to the attorney-client privilege and work-product doctrine. The Republic will make those determinations within any search scope ultimately agreed upon and will redact or log protected material as the Rules require.

Plaintiff's demand concerning IMF materials similarly cannot be resolved in the abstract. In connection with the Prior Actions, the Republic made a formal request to the IMF for relevant materials and certain IMF records could not be disclosed until the IMF completed its declassification process. (*See* 19-cv-351, Dkt. No. 51-4 at 5–6; Ex. C (Jan. 21, 2022 Ltr. from J. Ossip to D. Rapport) at 5; Ex. D (Feb. 1, 2022 Ltr. from J. Ossip to D. Rapport) at 2.) A blanket commitment to seek IMF consent or declassification for every document swept into Document Request No. 11 would be premature before the parties identify a relevant category falling within a search scope ultimately agreed upon. If responsive material located within that scope cannot be produced absent IMF authorization, the Republic will identify the restriction and the resulting withholding with reasonable specificity.

Finally, materials connected to the English Action must likewise be assessed by document or category. Public submissions are already available. Non-public materials may be protected from disclosure by privilege, confidentiality undertakings, collateral-use restrictions, or other court-imposed limits. The Republic will evaluate any material located through any search

---

522, 546 (1987). A rule that would treat a foreign sovereign's domestic-law objection as forfeited unless every applicable statute is catalogued in each Rule 34 objection is flatly inconsistent with that direction.

ultimately agreed upon to determine the applicability of those protections and restrictions and will identify any restriction that affects production.

## III. The Republic's Interrogatory Responses Comply with Its Discovery Obligations

Plaintiff's Letter takes issue with the Republic's objection to Interrogatories "potentially capturing numerous individuals with only tangential, cumulative, or immaterial knowledge" (Interrog. Resp. 1–6) and asks the Republic how it "dr[ew] the line." (Aug. 11 Ltr. at 5.)

The Republic's objection is simple. Plaintiff's Interrogatories ask the Republic to identify "all Persons" with "knowledge" concerning broadly defined subjects over periods spanning more than twenty-two years. (Interrog. 1–6.) The Interrogatories thus potentially encompass people with no meaningful involvement in the subject matter of the requests.

The Republic identified individuals having knowledge concerning the subject matter of the Interrogatories. The Republic need not—nor could it realistically—identify every person with knowledge.[3] For example, in *In re Priceline.com Inc. Securities Litigation*, the plaintiffs served an interrogatory asking the defendants to "[i]dentify all persons with knowledge concerning [a] decision," and the defendants limited their response to those persons "primarily familiar with" and "primarily involved in" the decision. 233 F.R.D. 83, 87 (D. Conn. 2005). The plaintiffs sought to compel a "complete, unedited response." *Id.* The court refused, holding that the defendants had "fairly responded to [] an exceedingly broad request," and explaining that "[b]y its terms, plaintiffs' request requires defendants to canvass each employee— including persons with no involvement in the decision-making process . . . in an effort to determine whether each person knew about the decisions in question. The slim chance that plaintiffs would discover relevant information outside the core group of persons listed by defendants does not justify the effort necessary to provide this information." *Id.*[4]

---

[3] Courts in this District have repeatedly criticized such overbroad interrogatories. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.* v. *Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) ("Defendants' requests, insofar as they seek every fact, every piece of evidence, every witness, and every application of law to fact—rather than, for example, certain principal or material facts, pieces of evidence, witnesses and legal applications—supporting the identified allegations, are overly broad and unduly burdensome.") (citation omitted).

[4] *United States* v. *Veeraswamy* is not to the contrary. The court there faulted a defendant's use of an unadorned recital of "General Objections and Reservation of Rights" placed "at the beginning" of each document request and applied identically to "each request," without "specific explanations," without "supporting affidavits or evidence," and without any request-specific application, as impermissible boilerplate. 347 F.R.D. 591, 600–01 (E.D.N.Y. 2024). That has no application here. The Republic's objection is tied to the specific text of each Interrogatory, and it is paired with a substantive response identifying persons with material, non-duplicative knowledge on the topic in question.

A. Interrogatories Nos. 1, 2, and 3

Plaintiff's Letter criticizes the Republic's Responses to Interrogatories Nos. 1–3 on the same grounds discussed above: that the Republic "only identified" a limited number of individuals, limited its Responses to Reference Years 2017 through 2022, and restricted its identifications to particular offices. (Aug. 11 Ltr. at 5–8.) None of these criticisms warrants supplementation.

*First*, and as explained above, the Republic's Responses are not deficient by virtue of the number of persons identified. The Republic identified individuals having knowledge concerning the subject matter of the Interrogatories.

*Second*, for the reasons set forth in Section I above, the Republic properly limited its Responses to Reference Years 2017 through 2022.

*Third*, the offices Plaintiff wants the Republic to canvass—the office of the President, the office of the Chief of Cabinet, and unspecified other offices—as well as the independent *Banco Central de la República Argentina* ("BCRA") (Aug. 11 Ltr. at 5–6), are not relevant to the surviving claims in this Action. A single body made the payment-amount determinations under the Global Security: MECON. INDEC, in turn, produced and published the underlying Actual Real GDP data on which those determinations rested. (*See* 19-cv-351, Dkt. No. 76-19 at 2–3 (explaining that responsibility for national accounts was transferred from BCRA to MECON in 1992, and from MECON to INDEC in 2000, such that "INDEC would have all relevant documents" concerning national accounts).)

Any incidental awareness that personnel at the office of the President, the office of the Chief of Cabinet, or other offices may have would be duplicative of the material knowledge held by MECON officials and is not relevant to any surviving claim in this Action. The same is true for BCRA, which is, in any event, "legally separate and distinct from Argentina," and cannot be compelled, through requests to the Republic, to produce documents. *EM Ltd.* v. *Banco Central de la República Argentina*, 800 F.3d 78, 90–91 (2d Cir. 2015); *see EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (affirming denial of discovery request regarding BCRA). Nothing supports Plaintiff's demand to canvass every executive office of a foreign sovereign on the theory that peripheral knowledge might exist somewhere, or to catalogue every lower-level INDEC employee whose ancillary work, if any, is subsumed within the knowledge of the identified senior officials. Such an effort would, in any event, impose burdens well out of proportion to any incremental evidentiary benefit. *See* Fed. R. Civ. P. 26(b)(2)(C); *Société Nationale Industrielle Aérospatiale* v. *U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) (courts must "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position").

As to Interrogatory No. 1, Plaintiff's reliance on the discovery orders entered in the Prior Actions is misplaced because those orders were entered in connection with claims of "bad faith" that have been dismissed from this Action. In the Prior Actions, plaintiffs alleged "bad faith" concerning "INDEC's failure to publish Actual Real GDP in 1993 prices for 2013." (19-cv-351, Dkt. No. 55 at 1–2). Judge Preska's December 1, 2021 Order was tied precisely to that

theory: it required the Republic to produce documents from the office of the President and the office of the Chief of Cabinet "concerning the decision that INDEC would not publish Actual Real GDP in constant 1993 prices for Reference Year 2013"—a targeted order limited to a discrete decision, not a general authorization for wide-ranging discovery. (19-cv-351, Dkt. No. 69 ¶ 1.) The searches the Republic actually conducted at those offices pursuant to the Order returned no responsive documents, consistent with the Republic's showing that those offices "were not involved" in that decision. (*Id.*, Dkt. No. 83 at 42–43.) In relation to the BCRA, the Court ordered a "very narrow inquiry" into "the decision to pay or not to pay for the year 2013" in connection with the plaintiffs' bad faith claims (*id.*, Dkt. No. 83 at 27–28), and the record confirmed that the BCRA had no role in the Republic's payment determinations. As such, the discovery orders in the Prior Actions have no bearing in the present action, where the Court has dismissed Plaintiff's bad faith claims. (Dkt. No. 49 at 27.)

In addition, Plaintiff also disputes the Republic's objection that Interrogatory No. 1 contains multiple discrete subparts under Rule 33(a)(1). (Aug. 11 Ltr. at 6 n.6.) The Republic stands on that objection. As the Advisory Committee Note makes clear, "[p]arties cannot evade [the] presumptive [Rule 33(a)(1)] limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects," Fed. R. Civ. P. 33 advisory committee's note to 1993 amendment, and courts likewise count subparts separately where they "amount essentially to discrete questions in and of themselves." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.* v. *Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010). That is the case here: Interrogatory No. 1 expressly requires the Republic, "by Reference Year for each Reference Year from 2014 to the present," to identify persons with knowledge concerning both its "determinations" and its "announcements" as to whether a Payment Amount was due. Those inquiries are independently answerable: the persons involved in reaching a year-specific determination need not be the same persons involved in announcing it, and neither inquiry supplies the answer for any other Reference Year. The Republic's response further confirms that the relevant officials varied from year to year. Because each year- and subject-specific component calls for its own factual determination and can be answered independently of the others, each constitutes a separate interrogatory under Rule 33(a)(1).

As to Interrogatory No. 2, the Republic properly declined to identify persons who have knowledge only of the *Estimador Mensual de Actividad Económica* ("EMAE") Index, a monthly index of economic activity published by INDEC. To start, as the Republic explained in the Prior Actions, "EMAE in the 1993 base year does not exist for any year after 2013, nor does any similar estimate." (*See* 19-cv-351, Dkt. No. 154 at 65.) Therefore, even if the EMAE Index were "a reliable proxy for Actual Real GDP" (Aug. 11 Ltr. at 7), no EMAE series in 1993 prices exists for any Reference Year at issue here. Accordingly, persons whose knowledge is limited to the discontinued EMAE series have no material knowledge relevant to the surviving claims for Reference Years 2017 through 2022. The EMAE Index is also not relevant to Plaintiff's remaining claims because the EMAE Index is neither a measure of the Republic's GDP nor among the other national-accounts statistics that affect GDP. And, as discussed above, while the Court ordered the Republic to produce certain documents related to the EMAE Index in the Prior Actions, that was directly tied to the plaintiffs' bad-faith and prevention-doctrine theories. (*See* 19-cv-351, Dkt. No. 35 at 4, 6 n.3, 7–8; *id.*, Dkt. No. 39 at 34–37.) Specifically, in the Prior Actions, after the Court

rejected the EMAE Index as a contractual substitute for Actual Real GDP (19-cv-351, Dkt. No. 39 at 8–9), the plaintiffs relied on 2013 EMAE data to claim that the Republic knew the missing 2013 Actual Real GDP figure in 1993 prices would have shown that a payment was due—and thus caused INDEC not to publish that figure. (*Id.* at 21 n.9, 34–35.) Accordingly, plaintiffs sought discovery concerning the EMAE Index in 1993 prices in an effort to estimate the missing 2013 Actual Real GDP figure. (*See* 19-cv-351, Dkt. No. 55 at 3; Dkt. No. 60 at 2.) That has no relevance here because, again, no EMAE series in 1993 prices exists for Reference Years after 2013, and the Court dismissed Plaintiff's bad-faith and prevention-doctrine claims in this Action in their entirety. (Dkt. No. 49 at 27.)

As to Interrogatory No. 3, Plaintiff's basis for demanding identification of lower-level INDEC employees—that the Lavagna Statement supposedly "admits" that "the Republic destroyed archival data and methodological [surveys]" used in estimating Actual Real GDP measured in constant 1993 prices (Aug. 11 Ltr. at 7)—mischaracterizes the Lavagna Statement. As the Republic previously explained, INDEC's non-retention of the historical working files for the Discontinued 1993 Series is not evidence of loss or destruction; those files were rendered obsolete by INDEC's 2014 rebasing to the 2004 base year and were discontinued in the ordinary course years before this litigation and the related cases commenced. (*See* Lavagna Statement ¶¶ 14, 19; Section III.B, *infra*.)

B. Interrogatory No. 6

Plaintiff's Letter takes issue with the Republic's Response to Interrogatory No. 6 on three grounds: that the Republic limited its Response to Reference Years 2017 through 2022; that the Republic objected that Interrogatory No. 6 seeks impermissible "discovery on discovery"; and that the Republic asserted that Interrogatory No. 6 contains multiple discrete subparts for purposes of Rule 33(a)(1). (Aug. 11 Ltr. at 8–9 n.7.) The Republic further preserved General Objection No. 5, which Plaintiff separately contends is inconsistent with Rule 33(a)(2). (Aug. 11 Ltr. at 5.) None of these criticisms warrants supplementation.

*First*, for the reasons set forth in Section I above, the Republic properly limited its Response to Reference Years 2017 through 2022.

*Second*, General Objection No. 5 does not conflict with Rule 33(a)(2). The Republic invoked that objection because Interrogatory No. 6 is framed in terms of "Action taken (or failed to be taken)" in connection with the alleged "loss" or "destruction" of documents—language that assumes disputed facts and may call for legal or subjective characterizations. The Republic does not rely on General Objection No. 5 to withhold the identities of persons with factual knowledge. Its substantive objection is that Interrogatory No. 6 seeks collateral discovery-on-discovery without the required factual basis, as explained below.

*Third*, Interrogatory No. 6 is the paradigmatic example of "discovery on discovery"—it seeks the identity of "all Persons with knowledge of any Action taken (or failed to be taken) by the Republic (at any time) in connection with the Republic's preservation, loss, or destruction of documents" concerning three categories of substantive discovery over a period of more than two decades. "Discovery on discovery" is not permitted absent an "adequate factual

basis" to "justify the discovery" and is "closely scrutinized" because of "the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Winfield* v. *City of New York*, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (citation omitted); *see also Freedman* v. *Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (holding that "[s]peculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end") (citation omitted). The standard is not met here. Plaintiff has not supplied an adequate factual basis that documents were destroyed after any preservation obligation or reasonably anticipated litigation arose.

*Fourth*, and contrary to Plaintiff's assertions (Aug. 11 Ltr. at 9 n.7), Interrogatory No. 6 comprises multiple discrete Interrogatories under Rule 33(a)(1) for the reasons explained above. Interrogatory No. 6 sweeps together three different categories of documents held by different government bodies—(a) payment determinations, (b) national-accounts statistics measured in constant 1993 or 2004 prices, and (c) the Newly-published 1993 Series and INDEC Press Releases—across every Reference Year from 2004 (or 2014) to the present. As each subpart requires a separate factual inquiry and is logically and factually independent of the others, each subpart counts as a separate Interrogatory.

## IV. The Republic's Responses to the Document Requests Comply with Its Discovery Obligations

### A. The Responses Properly Agree to Define Reasonable, Non-Duplicative Searches

Plaintiff's criticism of the Republic's Document Request Responses rests on the mistaken premise that Rule 34 requires a separate custodial collection and review for every Request, even where multiple Requests seek the same working files, data, methodology materials, calculations, or communications using different formulations. (*See* Aug. 11 Ltr. at 9–13.) It does not. The Republic has agreed to conduct reasonable searches of relevant government offices and custodians to identify documents responsive to the Requests regarding the payment determinations and correspondence between the Republic and beneficial owners, which it offered to discuss with Plaintiff. The Republic has also offered to meet and confer regarding the scope of national-accounts and Newly-published 1993 Series Requests and corresponding reasonable searches. To avoid duplicative collections across overlapping Requests, the Republic will identify potentially relevant documents using search terms, review the resulting materials for responsiveness to each applicable Request, and produce responsive, non-privileged material once.

Plaintiff also asks the Republic to withdraw Document Request General Objection No. 10, which objects to collection or review outside the Republic's "normal business operations." (Aug. 11 Ltr. at 9.) Read together with General Objections Nos. 9 and 13, No. 10 preserves ordinary possession, custody, control, source, and accessibility limitations (including as to text messages, electronic chats, personal files, personal email, and data on personal devices) and does not disclaim the Republic's obligation to search accessible sources within its possession, custody,

or control. *See* Doc. Req. Resp. Gen. Obj. Nos. 9–10, 13; Fed. R. Civ. P. 26(b)(2)(B), 34(a)(1); *Zubulake* v. *UBS Warburg LLC*, 217 F.R.D. 309, 318–20 (S.D.N.Y. 2003).[5]

Plaintiff also demands that the Republic state whether responsive material is being withheld under every objection. (Aug. 11 Ltr. at 9.) Contrary to Plaintiff's contention, Rule 34(b)(2)(C) does not require "a detailed description or log of all documents withheld," and the Advisory Committee expressly explains that "[a]n objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment. The Republic did not indiscriminately incorporate every General Objection into every Response. *Cf. Fischer* v. *Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (criticizing responses that incorporated seventeen general objections wholesale into "each response," thereby obscuring which objections applied to which requests and whether responsive materials were being withheld). It applied particular general and request-specific objections where relevant and, in several Responses, either stated that no additional search would be conducted or defined the temporal or subject-matter limits of the search it agreed to undertake.

Plaintiff argues that even for duplicative requests, the Republic must conduct new searches wherever the prior discovery was not "coterminous" with the present Requests. (Aug. 11 Ltr. at 9.) This is incorrect. Rule 26 requires courts to limit discovery that is unreasonably cumulative or duplicative, and the parties expressly agreed that discovery from the Prior Actions may be used here. Fed. R. Civ. P. 26(b)(2)(C)(i); Dkt. No. 54 at 2; Dkt. No. 56 ¶ 18. The coordinated, reasonable searches discussed below are designed to capture later-created or action-specific material responsive to the non-objectionable portions of the related Requests without re-running the historical collections wholesale.[6]

---

[5] Plaintiff asks the Republic to withdraw Interrogatory General Objection No. 4, which similarly objects to Interrogatories to the extent they "purport to require the Republic to collect or review documents outside the scope of the Republic's normal operations." *See* Interrog. Gen. Obj. 4; Aug. 11 Ltr. at 5. That objection is proper for the same reasons Document Request General Objection No. 10 is proper.

[6] Plaintiff lists Document Request Nos. 1–4, 6, 8, 11–22, 33, 44, 46, and 47 as examples of Requests implicating prior-action discovery. (Aug. 11 Ltr. at 9 n.8.) Each is addressed as described below in Sections IV.C, IV.D, and IV.E. Specifically, Document Request Nos. 1–4, 6, and 8 are addressed together with Document Request No. 7 and the prior-action discovery; Document Request Nos. 11–22 are addressed through Document Request No. 12; Document Request No. 33 is addressed through Document Request No. 24; Document Request No. 44 is addressed by the prior-action discovery; Document Request No. 46 is preservation-related discovery addressed in Section III.B above; and Document Request No. 47 is one of the Requests on which the Republic has agreed to meet and confer. Although Plaintiff includes Document Request No. 44 in that list, Plaintiff's Letter identifies no deficiency in the Republic's response to No. 44. (*Id.*)

Plaintiff separately contends that the Republic's public-availability objections are "not appropriate limitations." (Aug. 11 Ltr. at 11 & n.9.) There is no basis to require the Republic to search publicly available information that is equally available to Plaintiffs. In fact, Plaintiff asserted the same objection in responding to the Republic's discovery requests, objecting to requests to the extent they seek documents "equally or more available to the Republic than to the Trustee" or that are "publicly-available or otherwise obtainable from other sources that are more convenient, less burdensome, or less expensive." (*See* Pl.'s Objs. & Resps. to Republic's First RFPs, Gen. Obj. No. 5; Pl.'s Objs. & Answers to Republic's First Interrogs., Gen. Obj. No. 6.)

Plaintiff cites *City of Almaty, Kazakhstan* v. *Ablyazov*, 2019 WL 3281110 (S.D.N.Y. July 15, 2019), but that decision arose on reconsideration of sanctions after noncompliance with discovery obligations and court orders; the court also observed that the supposedly public website had not been shown to be equally available and that the responding party had not demonstrated disproportionate burden. *Id.* at *1–2.

B. Document Requests on Which the Republic Agreed to Meet and Confer (Nos. 5, 12, 24, 42, and 47–48)

The Republic remains willing to meet and confer promptly on Document Request Nos. 5, 12, 24, 42, and 47–48, and explains its position with respect to these Document Requests below:

- As explained in Sections IV.D and IV.E, the Republic is prepared to meet and confer with respect to Document Request Nos. 12 and 24. Our expectation is that a reasonable search under those two Document Requests will subsume the material sought by the numerous overlapping Document Requests relating to national-accounts methodology and the Newly-published 1993 Series (Nos. 13–14, 17–23, 25–33, 35–41). Separate, duplicative searches under each overlapping formulation are unnecessary.

- For Document Request No. 5, Plaintiff should identify the non-public information, if any, it seeks concerning outstanding notional amounts and explain why the proposed twelve-year period is necessary and relevant to Plaintiff's claims in this action.

- For Document Request No. 42, Plaintiff should identify which internal Republic documents concerning Plaintiff's own compensation and indemnification demands it believes exist beyond the documents already in its possession, and why any such documents are relevant.

- For Document Request Nos. 47 and 48, the focus should be organizational charts or similar documents sufficient to identify the INDEC and MECON personnel materially responsible for the relevant national-accounts and payment-determination functions during Reference Years 2017 through 2022, not every employee of every office over twelve years. For Document Request

No. 47, Plaintiff should also identify any gap in the INDEC organizational information that the Republic produced in the Prior Actions.

C. Document Requests Concerning the Terms of the Securities and Payment Determinations (Nos. 1–4 and 6–8)

Document Request Nos. 1, 2, and 4 seek documents interpreting contractual terms. The Prior Actions already covered the non-privileged documents on those interpretive issues. Later documents reflecting counsel's legal analysis of the Securities remain subject to privilege and work-product objections. Non-privileged documents showing how the Republic applied those provisions in the payment determinations for the relevant Reference Years fall within the reasonable search the Republic agreed to conduct under Document Request No. 7. A separate search under Nos. 1, 2, and 4 would therefore be cumulative.

Plaintiff's example concerning Document Request No. 3—that "documents from 2022 on the Constant Fraction Alternative" would not have been captured by the Prior Actions' searches (Aug. 11 Ltr. at 10)—does not justify a wholesale redo of discovery into parol evidence concerning the meaning of the Global Security's terms. Plaintiff has not identified a category that is both absent from the prior productions and tied to a surviving claim and relevant Reference Year. Any non-privileged document concerning the application of the Adjustment Provision that was actually used to determine whether a payment was due for the relevant Reference Years would be captured by Document Request No. 7. A separate search for every document "concerning" Plaintiff's defined "Constant Fraction Alternative" is unnecessary.[7]

Document Request No. 6 seeks documents concerning whether to calculate or publish Actual Real GDP measured in constant 1993 prices after 2013. The Prior Actions already addressed the decision to discontinue the historical 1993 series. The later work to prepare and publish the Newly-published 1993 Series under the English Court Order can be addressed through the meet-and-confer concerning Document Request No. 24. *See* Section IV.E. Request No. 6 does not require a third collection spanning the same subjects.

The Republic has agreed to conduct a reasonable search for relevant, non-privileged documents concerning the payment determinations for the relevant Reference Years, as described

---

[7] Plaintiff asks the Republic to identify the "date ranges, custodians, and search terms" used for documents collected in the Prior Actions so that it can assess whether further collection is necessary. (Aug. 11 Ltr. at 10.) But that information is available on the docket of the Prior Actions and through the parties' meet-and-confer communications. For example, the Republic's Revised Section 2 from the English Action identified the repositories, administrative-file systems, available electronic sources, proposed custodians, date ranges, and search mechanics used in the prior disclosure exercise. (19-cv-351, Dkt. No. 51-4 at 6–35.) The Republic's October 23, 2021 letter then explained how those parameters were applied to the specific categories of the document requests in the Prior Actions, including the 1993 and 2004 series, payment-related materials, IMF communications, and rebasing. (*Id.*, Dkt. No. 76-19 at 2–9.)

in response to Document Request No. 7. The Republic intends for that search to cover responsive material within the non-objectionable portions of the related payment-determination Requests.

Document Request No. 8 presents a distinct duplication problem. Plaintiff already holds the communications between the Republic and Plaintiff or Holder. The same is true for the Republic's communications with the Requesting Beneficial Owners. Under Rule 34, control includes the practical ability to obtain documents, measured in part by the cooperation between the party and the nonparty and by the nonparty's financial interest in the litigation. *See Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *Petersen Energía Inversora, S.A.U.* v. *Argentine Republic*, 2025 WL 2463661, at *1 (S.D.N.Y. Aug. 27, 2025) (Preska, J.); *id.*, 15-cv-2739, Dkt. No. 252, at *3–4 (S.D.N.Y. Dec. 29, 2020). Plaintiff has that ability, as the Republic explains in more detail in its September 11, 2026 letter to Plaintiff. By Plaintiff's own account, the Requesting Beneficial Owners "asked [Plaintiff] to commence this action," "have years of experience relevant to this action that [Plaintiff] does not have," and have been "collaborating with [Plaintiff] on the prosecution of this action." *See* June 12, 2026 Plaintiff Ltr. at 1. Plaintiff also acknowledges that it is "reliant upon the Requesting Beneficial Owners to provide funds for the prosecution of this action." *Id.* A separate search by the Republic for communications already available to Plaintiff would therefore be duplicative.

Plaintiff's reliance on *Haber* v. *ASN 50th Street, LLC*, 272 F.R.D. 377 (S.D.N.Y. 2011), does not answer that point. *Haber* held that a responding party may sometimes need to produce its own versions of documents held by the requesting party, *id.* at 380, but only subject to Rule 26's limits on cumulativeness, duplication, burden, and proportionality, *id.* at 382. Rule 26 does not permit a separate search for communications Plaintiff holds or can readily obtain. The Republic therefore maintains the limitation in its response to Document Request No. 8, and remains prepared to conduct the reasonable search it agreed to undertake for relevant, non-privileged communications with other beneficial owners during the relevant period.

D. <u>Document Request No. 12 and the Related National-Accounts Requests (Nos. 9–23 and 40–41)</u>

Plaintiff asserts that the Republic's national-accounts statistics are "plainly relevant" and that no objection justifies withholding the requested discovery. (Aug. 11 Ltr. at 11.) But the Requests sweep far beyond material relevant to the surviving claims and substantially duplicate one another, seeking overlapping categories of data, working files, models, surveys, revisions, methodological communications, and analyses over more than two decades and across national and provincial entities. The possible relevance of some national-accounts material does not justify that breadth or duplication.

Document Request No. 12 illustrates the substantial overlap among these Requests because it broadly seeks the data, working files, methodologies, manuals, guidelines, and revisions addressed in many of the related Requests. The Republic offered to meet and confer to resolve the appropriate scope of the Request and discuss reasonable search parameters. The Republic remains available to confer about a coordinated national-accounts search that would address the non-objectionable portions of Request Nos. 12–22, and 40–41 and identify responsive, non-privileged materials for production.

To advance that discussion, the Republic proposes focusing any coordinated search on non-public, non-duplicative national-accounts materials that bear directly on the surviving claims for Reference Years 2017 through 2022, rather than every historical data set, working file, methodology, revision, or comparison swept into the related Requests. The Prior Actions' record reflects that the Republic already agreed to search for and produce relevant national-accounts materials. (*See* 19-cv-351, Dkt. No. 76-19 at 5–6.) The Republic will not repeat those historical searches absent a concrete, non-duplicative gap.

The accuracy of the Revised 2004 Series is not at issue in this Action. Indeed, the IMF confirmed the reliability of the 2004-base data; after reviewing the revised figures in 2016, it lifted its censure with respect to GDP. In addition, the data and methodology for the Revised 2004 Series are publicly available, including in the INDEC publications identified in Plaintiff's own Request No. 14. Plaintiff therefore is not entitled to wholesale discovery into every data file, working file, methodology document, or analysis concerning that Series. In the meet-and-confer regarding Document Request No. 24, which concerns, among other things, the data and working files related to the Newly-published 1993 Series, the Republic is open to discussing whether particular Revised 2004 Series materials are relevant to the preparation of that Series.

Any search ultimately agreed upon would be designed to identify responsive, non-privileged material within the non-objectionable portions of Document Request Nos. 12–14, 17–23, and 40–41 without separate searches for each formulation. The Republic will review collected material for responsiveness to each applicable Request and will not withhold an otherwise responsive document merely because it corresponds to one of the related Requests rather than Request No. 12.

Plaintiff's reliance on the December 1, 2021 Order in the Prior Actions is misplaced. (Aug. 11 Ltr. at 11–12 & n.11 (citing 19-cv-351, Dkt. No. 69).) The EMAE-related discovery ordered there arose from an issue specific to Reference Year 2013. INDEC had not published full-year 2013 Actual Real GDP in 1993 prices, so the plaintiffs sought methodology and relationship documents concerning EMAE in 1993 prices to estimate that missing figure and support their bad-faith and prevention-doctrine theories. (*See* 19-cv-351, Dkt. No. 55 at 1–3; Dkt. No. 60 at 2; *see also id.*, Dkt. No. 39 at 21 n.9, 34–35.) That rationale does not carry over to the later Reference Years at issue here, for the reasons explained in connection with Interrogatory No. 2. *See* Section III.A. EMAE in 1993 prices does not exist after 2013. And the Court dismissed Plaintiff's bad-faith and prevention-doctrine claims, observing that the Amended Complaint contains "no similar allegations for any relevant Reference Year" and no allegation that the Republic knew the outcome of the post-2013 calculations and acted to avoid payment. (*See* Dkt. No. 49 at 26–27.) The December 1, 2021 Order therefore does not establish the relevance of comparable EMAE discovery for later Reference Years. In any event, the documents produced under that Order are available for use here.

Document Request Nos. 9 and 10 are further removed from the official calculations. Macroeconomic forecasts and third-party analyst reports are not inputs to INDEC's national-accounts methodology merely because they discuss the Argentine economy. Any forecast or analyst report actually relied upon in a payment determination would fall within the search the Republic agreed to conduct in response to Document Request No. 7; material actually used in the

relevant national-accounts work could be addressed through any search agreed upon through the meet-and-confer concerning No. 12. Plaintiff has not identified a basis to require a separate government-wide search for every forecast or the wholesale collection of third-party reports prepared by investment banks and research firms.

Document Request No. 11 implicates the IMF disclosure issues discussed in Section II.B. The prior record confirms that the Republic obtained IMF materials through a formal request and that certain IMF records required declassification before disclosure. (*See* 19-cv-351, Dkt. No. 51-4 at 5–6; Ex. C at 5; Ex. D at 2.) A blanket commitment to seek IMF consent for every document swept into No. 11 is premature before the parties define a relevant and proportional category. If specific IMF material falls within the Request No. 7 search or any search agreed through the meet-and-confer on Request No. 12, the Republic will identify the applicable restriction and its effect on production, consistent with Section II.B.

Document Request No. 23 is different in kind. It demands national-accounts data and methodology for "any Province" over more than twenty years. The Provinces are separate, autonomous public entities, and their records are not within the Republic's possession, custody, or control. (*See* 19-cv-351, Dkt. No. 55-3 at 6 & n.4.) Provincial economic-activity statistics are also not the national Actual Real GDP figures used in the payment determinations at issue. Nor has Plaintiff explained why a nationwide collection from provincial governments is relevant or proportional.

Finally, Document Request Nos. 40 and 41, which seek materials concerning methodological changes between the Original and Revised 2004 Series, do not warrant separate searches. As explained above, the accuracy of the Revised 2004 Series is not at issue in this Action, and the data and published methodology for that Series are publicly available. To the extent non-public materials concerning those methodological changes were actually used in calculating or estimating national-accounts statistics for the relevant Reference Years, they may be addressed through any search ultimately agreed upon for Document Request No. 12. To the extent Plaintiff instead contends that particular materials concerning the Revised 2004 Series are relevant to the preparation of the Newly-published 1993 Series, the Republic is prepared to discuss that issue in the meet-and-confer concerning Document Request No. 24. The Republic otherwise stands on its objections to Document Request Nos. 40 and 41.

### E. <u>Document Request No. 24 and the Related Newly-published 1993 Requests (Nos. 25–39)</u>

At the outset, the Republic reiterates its objection to Plaintiff's use of the terms "Manufactured Information" and "Manufactured Information Press Releases" as argumentative and pejorative. The Republic will not adopt those labels and instead refers to the "Newly-published 1993 Series" and the "INDEC Press Releases."

Plaintiff says the Republic agreed to meet and confer only on Document Request No. 24 but "categorically declined" to produce documents in response to the other Requests concerning the Newly-published 1993 Series, characterizing the Responses as a "wholesale refusal." (Aug. 11 Ltr. at 12.) Not so. Document Request No. 24 substantially overlaps with

Requests 25–33 and 35–39: together they seek documents concerning the production of the Newly-published 1993 Series, the selection of data and published detail, INDEC's working files and calculations, the data and surveys used, the models and manuals applied, the methodology disclosed, and the materials supporting Annex I to INDEC's July 1, 2024 publication. The Republic offered to meet and confer to resolve the appropriate scope of the Request and discuss reasonable search parameters for obtaining responsive documents. The Republic remains available to confer about a coordinated search regarding the Newly-published 1993 Series that would address the non-objectionable portions of Requests 24–39 and identify responsive, non-privileged materials for production.

To advance that discussion, the Republic proposes conducting a search focused on the preparation and publication of the Newly-published 1993 Series between June 9, 2023, when the English Court Order's publication obligations took effect, and July 1, 2024, when INDEC published the Series for Reference Years 2014 through 2022. The Republic would review all material collected through any search ultimately agreed upon and produce responsive, non-privileged documents within the scope ultimately agreed upon. It would not withhold an otherwise responsive document merely because it corresponds to one of the related Requests, but it need not run separate searches for overlapping descriptions of the same technical work.

Document Request Nos. 25–33 seek particular facets of that same technical work: deflators; the relationship between the Revised 2004 and Newly-published 1993 Series; differences in reference baskets and sector classifications; product-level taxes and subsidies; allocations of direct taxes and financial-intermediation services; accrued-versus-cash taxes; and specified direct-tax series. To the extent those subjects bear on the preparation of the Newly-published 1993 Series, they fall within the working files, data, calculations, methodology, models, manuals, guidelines, and Annex I support encompassed by any search ultimately agreed upon. As explained above, that does not entitle Plaintiff to wholesale discovery concerning the Revised 2004 Series.

Document Request No. 34 does not require a separate search. The Republic identified Marco Juan Lavagna, Marisa Wierny, Pedro Ignacio Lines, and Jorge Alberto Todesca (deceased) as current or former INDEC officials with knowledge concerning the relevant national-accounts methodology in response to Interrogatory No. 2, and referred Plaintiff to those identifications and its Initial Disclosures in response to Interrogatory No. 3. Document Request No. 34's demand for documents identifying everyone who participated "in any capacity" would sweep in ministerial, administrative, logistical, and tangential participants. If otherwise responsive documents are collected and produced through a Newly-published 1993 Series search ultimately agreed upon, the Republic would not redact or withhold names merely because an individual's role was tangential. Such documents identifying any additional personnel involved in calculating, compiling, reviewing, or approving the Series would be produced, together with responsive organizational materials addressed under Document Request No. 47. The Republic will not conduct a standalone search to identify every person who participated "in any capacity."

Document Request No. 35 seeks all communications with INDEC personnel concerning compliance with the English Court Order. Plaintiff concedes that some such documents "may contain privileged information" but says the answer is simply to "redact and log."

(Aug. 11 Ltr. at 12–13.) Redaction and logging address privilege only after a relevant and proportional search scope has been defined; they do not cure the Request's undefined time period, "all communications" formulation, or substantial overlap with the subjects to be addressed through a reasonable search for materials within the non-objectionable portions of Document Request No. 24. Non-privileged communications concerning the calculation and publication of the Newly-published 1993 Series could be addressed through any search ultimately agreed upon, while communications reflecting legal advice, drafting choices, or litigation strategy remain subject to the protections discussed in Section II.B.

Plaintiff's reference to the Republic's position concerning "communications with the English Claimants" appears to concern Document Request No. 36, not No. 35. (Aug. 11 Ltr. at 12.) To the extent Plaintiff seeks public filings or submissions from the English Action, those materials are already available and a separate collection by the Republic would be duplicative. To the extent Plaintiff seeks non-public communications with the English Claimants, Plaintiff does not explain why those communications themselves are relevant to any surviving claim here, as distinct from the underlying INDEC data, analyses, or technical materials that may have been exchanged. Those underlying materials could be addressed through any national-accounts or Newly-published 1993 Series searches ultimately agreed upon through the meet-and-confer process. Requiring a separate search for communications with adverse parties in different litigation would therefore duplicate discovery already sought elsewhere without identifying any distinct, non-duplicative information relevant to this Action.

Document Request No. 37 seeks all documents and communications concerning the creation, preparation, drafting, or review of the Lavagna Statement, together with documents "relating to or forming the basis of" particular statements and technical categories already demanded by Document Request Nos. 24, 25, 38, and 39. To the extent the Request seeks counsel communications, drafts, interview materials, or other materials created in connection with the English Action, those materials are subject to applicable English legal professional privilege and related protections. To the extent non-privileged materials concerning asserted data gaps, efforts to "mimic" the historical model, or conversion from basic to producer prices fall within the scope of any national-accounts or Newly-published 1993 Series searches ultimately agreed upon, they would be addressed through that process rather than through a duplicative standalone search under No. 37. Subparts seeking preservation, disposition, or recovery information overlap the preservation issues addressed in Section III.B above and Document Request Nos. 45–46.

The same division applies to Document Request Nos. 38 and 39. Non-privileged work undertaken to identify a methodology "as close as possible" to the historical approach (Aug. 11 Ltr. at 13), or to determine the level of detail to publish, would be addressed through any Newly-published 1993 Series search ultimately agreed upon. Communications reflecting counsel's advice concerning the English Court Order, litigation strategy, drafting, or compliance positions remain protected. The Republic proposes that any coordinated search be designed to identify responsive, non-privileged materials within the non-objectionable portions of Document Request Nos. 38 and 39 while protecting litigation materials as the Rules require.

Accordingly, the Republic remains willing to meet and confer regarding the proposed Newly-published 1993 Series search, which is designed to cover the non-objectionable

portions of Document Request Nos. 24–39 and identify responsive, non-privileged documents for production. The Republic will review the collected material for responsiveness to each applicable Request without conducting separate, duplicative collections for each overlapping formulation, subject to the distinct relevance and privilege limitations described above.

F. <u>Document Request No. 43</u>

Document Request No. 43 seeks all documents and communications "concerning" six affirmative defenses and would require the Republic to sort documents by contested legal doctrines. Plaintiff takes issue with the Republic's reference to its Initial Disclosures because the Initial Disclosures "do not identify" documents related to the Republic's affirmative defenses, and says the Republic must "either produce any documents supporting those defenses or confirm that no such documents exist." (Aug. 11 Ltr. at 13.) The Republic has already agreed to produce responsive, non-privileged documents concerning its affirmative defenses, but need not map particular documents to particular affirmative defenses (either through its Initial Disclosures or in its productions). Nor will the Republic disclose counsel's legal analysis and mental impressions concerning how particular facts or documents bear on those defenses in response to Request No. 43. Further, the Republic will supplement its Initial Disclosures as Rule 26(e) requires, and its expert reports will identify the facts, data, and materials considered by its retained experts as required by the Rules. The Republic therefore stands on its objections and response to No. 43.

G. <u>Document Request Nos. 45 and 46</u>

The Republic's position concerning the collateral discovery sought by Document Request Nos. 45 and 46 is set out in the discussion of Interrogatory No. 6 in Section III.B above and is not repeated in full here. These Requests rest on the same unsupported premise of loss or destruction, seek collateral discovery into preservation practices across multiple government bodies and decades, and sweep in litigation-hold notices and related counsel communications that may be privileged or protected. Document Request No. 46 is also duplicative of extensive source-specific preservation discovery in the Prior Actions. (*See* 19-cv-351, Dkt. No. 51-4 at 2–3, 11–24; Dkt. No. 76-19 at 11–13.) The Republic therefore stands on its objections to Nos. 45 and 46.

* * *

We remain available to meet and confer.

Very truly yours,

*<u>/s/ Arturo Carlos Schultz</u>*
Arturo Carlos Schultz

Enclosures
cc: All counsel (by email)