# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURELIUS CAPITAL MASTER, LTD.; ACP MASTER, LTD.; AURELIUS OPPORTUNITIES FUND, LLC; 683 CAPITAL PARTNERS, LP; ADONA LLC; EGOZ I LLC; EGOZ II LLC; MASTERGEN, LLC; ERYTHRINA, LLC; AP 2016 1, LLC; AP 2014 3A, LLC; AP 2014 2, LLC; WASO HOLDING CORPORATION; TWO SEAS GLOBAL (MASTER) FUND LP; VIRTUAL EMERALD INTERNATIONAL LTD. and THE BANK OF NEW YORK MELLON, SOLELY IN ITS CAPACITY AS TRUSTEE,<br><br>Plaintiffs,<br><br>- against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | No. 1:23-CV-10838 (LAP)<br>Hon. Loretta A. Preska |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT THE REPUBLIC OF ARGENTINA**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiff The Bank of New York Mellon, solely in its capacity as Trustee (the "Trustee"), by and through its attorneys Friedman Kaplan Seiler Adelman & Robbins LLP, hereby addresses its First Set of Requests for the Production of Documents and Things (the "Requests") to Defendant The Republic of Argentina, and requests that Defendant produce for inspection and copying the documents and other tangible things set forth below that are in its possession, custody, or control, at the offices of the Trustee's undersigned attorneys within thirty (30) days of service hereof.

**DEFINITIONS**

1. The definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules") are hereby incorporated into these Requests.

2. "Argentina," the "Republic," "You," and "Your" mean Defendant The Republic of Argentina, as well as its ministries, political subdivisions, agencies (whether deconcentrated, decentralized, autarkic, or otherwise characterized), instrumentalities, representatives, attorneys, employees, and assigns, and all other Persons acting or purporting to act on its behalf, whether or not authorized to do so. For the avoidance of doubt, "Argentina" includes INDEC.

3. "Trustee" means Plaintiff The Bank of New York Mellon, solely in its capacity as Trustee under the Trust Indenture, dated as of June 2, 2005 by and between Trustee and the Republic.

4. "Province" means the government of any province of Argentina, as well as each of its respective ministries, political subdivisions, agencies (whether deconcentrated, decentralized, autarkic, or otherwise characterized), instrumentalities, representatives, attorneys, employees, and assigns, and all other Persons acting or purporting to act on its behalf, whether or not authorized to do so. For the avoidance of doubt, "Province" includes each province's statistical agency.

5. The "1993 Series" means Actual Real GDP measured in constant 1993 prices, as published by INDEC through the third quarter of 2013.

6. The "Original 2004 Series" means Actual Real GDP measured in constant 2004 prices, as published by INDEC from 2014 until in or around June 2016.

7. The "Revised 2004 Series" means Actual Real GDP measured in constant 2004 prices, as published by INDEC beginning in or around June 2016.

8. "2005 Securities" means the Republic's 2005-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: US040114GM64).

9. "2010 Securities" means the Republic's 2010-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: XS0501197262).

10. "Securities" means the 2005 Securities and the 2010 Securities, collectively.

11. "2005 Global Security" means the 2005 Form of Registered Global Security applicable to the 2005 Securities only, a copy of which attached as Exhibit B to the Amended Complaint (Dkt. No. 34-2).

12. "2010 Global Security" means the 2010 Form of Registered Global Security applicable to the 2010 Securities only, a copy of which attached as Exhibit D to the Amended Complaint (Dkt. No. 34-4).

13. The "2016 Revision" means INDEC's revision of Actual Real GDP measured in constant 2004 prices, from the Original 2004 Series to the Revised 2004 Series, in or around June 2016.

14. "Global Security" means the 2005 Global Security and the 2010 Global Security, collectively.

15. The "Action" means the above-captioned action.

16. "Actual Real GDP" has the meaning ascribed to it in the Global Security and, for purposes of these Requests, shall include annual and quarterly figures.

17. "Adjustment Provision" refers to the portion of the definition of "Base Case GDP" in the Global Security that applies "if the Year of Base Prices employed by INDEC for determining Actual Real GDP shall at any time be a calendar year other than the year 1993."

18. "Amended Complaint" means the Trustee's Amended Complaint (Dkt. No. 34.)

19. "Answer" means the Republic's Answer and Affirmative and Other Defenses to Plaintiff's Amended Complaint (Dkt. No. 52).

20. "Base Case GDP Growth" has the meaning ascribed to it in the Global Security.

21. The "Binding Effects Clause" means (a) the following language appearing in the Global Security's definition of "Excess GDP": "All calculations necessary to determine Excess GDP based on the information published by INDEC will be performed by the Ministry of Economy, and such calculations shall be binding on the Trustee, the Registrar, the trustee paying agent and each other trustee paying agent and all Holders of this Security, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy and Production of the Republic[;]" and (b) the following language appearing in the Global Security's definition of "Payment Amount": "All calculations made by the Ministry of Economy hereunder shall be binding on the Trustee, the Registrar, the trustee paying agent and each other trustee paying agent and all Holders of this Security, absent bad faith, willful misconduct or manifest error on the part of the Ministry of Economy."

22. The "Constant Fraction Alternative" refers to the interpretation of the Adjustment Provision proffered by the Republic in the Prior Actions and in the English Action, rejected in the English Action, and described in paragraph 86 of the Amended Complaint.

23. "Defenses" means the fifteen affirmative and other defenses asserted by the Republic in its Answer.

24. "EMAE Index" means the *Estimador mensual de actividad económica* index calculated and/or published by INDEC and, for purposes of these Requests, shall include annual and monthly figures.

25. The "English Action" means the litigation captioned *Palladian Partners L.P. and ors v The Republic of Argentina and Anor*, No: FL-2019-000010, in the High Court of Justice of England and Wales, Commercial Court.

26. The "English Claimants" means the claimants in the English Action.

27. The "English Court Order" means the Order, dated June 9, 2023, entered in the English Action, and attached as Exhibit 6 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-6).

28. "GDP" means gross domestic product.

29. "Holder" has the meaning ascribed to it in the Global Security.

30. "IMF" means the International Monetary Fund.

31. "INDEC" means the *Instituto Nacional de Estadística y Censos* of The Republic of Argentina, including its agents, representatives, attorneys, employees, and all other persons employed or retained by it, acting on its behalf or otherwise subject to its control.

32. The "Indenture" means the Trust Indenture, dated as of June 2, 2005 by and between Trustee and the Republic, a copy of which attached as Exhibit A to the Amended Complaint (Dkt. No. 34-1).

33. The "Lavagna Statement" means the First Witness Statement of Marco Juan Lavagna in the English Action, dated May 15, 2023, and attached as Exhibit 8 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-8).

34. "Manufactured Information" means any data calculated or estimated in response to the English Court Order, including all components thereof (sectoral or otherwise), regardless of whether published, including but not limited to the data contained in the following press releases and/or documents: (i) the INDEC press release and Methodological Note published on or around July 1, 2024 and attached as Exhibit 5 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-5); (ii) the INDEC press release and Methodological Note published on or around December 17, 2024 and attached as Exhibit 7 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-7); and (iii) the INDEC documents dated July 1, 2024, November 1, 2024, and October 29, 2025, referenced in paragraph 131 of the Republic's Answer (to the extent not captured by sub-parts (i)-(ii) of this definition).

35. "Manufactured Information Press Releases" means any press release or document related to the Manufactured Information, including but not limited to the following press releases and/or documents: (i) the INDEC press release and Methodological Note, including but not limited to the Annexes thereto and the data contained therein, published on or around July 1, 2024 and attached as Exhibit 5 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-5); (ii) the INDEC press release and Methodological Note, including but not limited to the Annex thereto and the data contained therein, published on or around December 17, 2024 and attached as Exhibit 7 to the December 23, 2024 Declaration of Robert J. Giuffra, Jr. (Dkt. No. 38-7); and (iii) the INDEC documents dated July 1, 2024, November 1, 2024, and October 29, 2025, referenced in paragraph 131 of the Republic's Answer (to the extent not captured by sub-parts (i)-(ii) of this definition).

36. "MECON" means the Ministry of Economy of the Republic of Argentina (*Ministerio de Economía*) of The Republic of Argentina, its predecessor entities, including the

Ministry of Economy and Production, the Ministry of Economy and Public Finances, the Ministry of the Treasury and Public Finances, and the Ministry of the Treasury, and including its agents, representatives, attorneys, employees, and all other persons employed or retained by it, acting on its behalf or otherwise subject to its control.

37. "Payment Amount" has the meaning ascribed to it in the Global Security.

38. The "Prior Actions" means, collectively, (i) *Aurelius Capital Master, Ltd. v. The Republic of Argentina*, No. 19 Civ. 351 (LAP) (S.D.N.Y.); (ii) *Novoriver S.A. v. Argentine Republic*, No. 19 Civ. 9786 (LAP) (S.D.N.Y.); (iii) *ACP Master, Ltd. v. The Republic of Argentina*, No. 19 Civ. 10109 (LAP) (S.D.N.Y.); (iv) *683 Capital Partners, LP v. The Republic of Argentina*, No. 19 Civ. 10131 (LAP) (S.D.N.Y.); (v) *Adona LLC, Egoz I LLC, Egoz II LLC, Mastergen, LLC, Erythrina, LLC, AP 2016 1, LLC, AP 2014 3A, LLC, AP 2014 2, LLC, and WASO Holding Corp. v. The Republic of Argentina*, No. 19 Civ. 11338 (LAP) (S.D.N.Y.); and (vi) *Ape Group SPA, Romano Consulting SPA, Icaro SRL, and Elazar Romano v. The Republic of Argentina*, No. 20 Civ. 10409 (LAP) (S.D.N.Y.).

39. "Provincial Actual Real GDP" means, for any Reference Year, the gross domestic product of any Province, as the case may be, for such Reference Year measured in constant prices.

40. "Reference Year" has the meaning ascribed to it in the Global Security.

41. To bring within the scope of these Requests all materials that might otherwise be construed to be outside of their scope, the following rules of construction apply: (i) reference to any Person that is not a natural person and is not otherwise defined herein refers to and includes any parent, subsidiary, affiliate, division, branch, agency, representative office, predecessor, successor, principal, member, director, officer, shareholder, manager, employee, attorney-in-fact,

attorney, nominee, agent or representative of such Person, whether current or former; (ii) "including" shall mean including without limitation; (iii) neither the inclusion or exclusion of capital letters nor the use of punctuation shall be construed to limit the scope of these Requests; (iv) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all materials that might otherwise be construed to be outside of their scope and shall have the broadest meaning permissible under Local Rule 26.3; (v) the use of the singular form of any word includes the plural and *vice versa*; and (vi) verbs in the past tense shall be interpreted to include the present tense and *vice versa*.

## INSTRUCTIONS

1. Each Request herein should be construed independently and not with reference to any other Request for the purposes of limitation.

2. In addition to original and final versions of documents, all draft, alterations, modifications, changes and amendments of documents should be produced, as well as all copies non-identical to the original in any respect, including any copy bearing non-identical markings or notations of any kind.

3. All documents are to be produced in the form they are maintained in the usual course of business.

4. If, in responding to the Requests, the Republic encounters any ambiguities when construing a Request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

5. Where an objection is made to any Request or subpart thereof, the objection shall state with specificity all grounds therefor, as required by FRCP 34(b)(2)(B). The objection shall

also state whether any responsive information is being withheld on the basis of the objection, as required by FRCP 34(b)(2)(C).

6. If You object to any portion of a Request, You shall produce documents responsive to the remainder of the Request.

7. In accordance with FRCP 34(b)(2)(B), the production must be completed either by 30 days of the date of service of the Requests (plus additional time for service by mail) or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages, the response should specify the beginning and end dates of the production.

8. In accordance with FRCP 26(b)(5) and Local Civil Rule 26.2, where a claim of privilege is asserted in objecting to any Request or part thereof, and information is not provided on the basis of such assertion:

(a) in asserting the privilege, the Republic shall, in the objection to the Request, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed; and

(b) the following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

(i) for documents:

1. the type of document;

2. the general subject matter of the document;

3. the date of the document; and

4. the author of the document, the addressees of the document and any other recipients, and where not apparent, the relationship of the author, addressees, and any other recipients to each other.

9. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, please clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document. It is intended that the Requests will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this Action was commenced. If any Request is susceptible to a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to FRCP 26(b)(5) will be required as to such material.

10. If any document that would be responsive to the Requests has been destroyed or is no longer in Your possession, custody, or control, provide the following information:

(a) the date of the document;

(b) the names and job titles of the preparer(s), sender(s), and recipient(s) of the documents;

(c) the date of and the identity of the person responsible for its destruction, loss, transfer, or other act or omission by which the document left the Republic's possession, custody, or control; and

(d) the circumstances surrounding the loss of the document or the reason for its destruction.

11. The Requests constitute a continuing demand for the production of documents and things described herein. If at some point after the service of the Requests upon the Republic, a document is located or is created which is responsive to one of the Requests herein, the Request is to be interpreted as requesting production of that document.

12. All e-mails responsive to these Requests should be produced with .msg or .pst file extensions. All hard copies of e-mails shall be produced with a full header. All other electronically stored information should be produced in native electronic format, with all available metadata, which could include any of the following formats: .doc, .docx, .txt, .rtf, .dot, .htm, .pptx, .pps, .xlxs, .xls, .csv, .xml, .txt, .mht, .prn, .dif and/or .slk, unless the parties agree to produce in another format, such as .tif.

**REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS**

1. All documents and communications concerning the interpretation, construction, or meaning of the Adjustment Provision.

2. All documents and communications concerning the interpretation, construction, or meaning of "Actual Real GDP for such Reference Year measured in constant 1993 prices" as used in the Adjustment Provision.

3. All documents and communications concerning the Constant Fraction Alternative, including but not limited to the "overlap year" the Republic contends should be used in connection with the Constant Fraction Alternative.

4. All documents and communications concerning the interpretation, construction, or meaning of the Binding Effects Clause.

5. Documents sufficient to identify the total notional amounts of each of the 2005 Securities and 2010 Securities outstanding from time to time from January 1, 2014 to the present,

including the total notional amounts of each of the 2005 Securities and 2010 Securities owned or controlled, directly or indirectly, by the Republic or any "Public Sector Instrumentality," as that term is defined in the Indenture.

6. All documents and communications relating to, discussing, or otherwise concerning whether to calculate or publish Actual Real GDP measured in constant 1993 prices from January 1, 2014 to the present.

7. All documents and communications concerning, or upon which the Republic relied in making, the Republic's determinations or announcements as to whether a Payment Amount was due for each Reference Year from 2014 to the present, including but not limited to all work papers, memoranda, calculations, spreadsheets, data, or other documents, created, used, or consulted in connection with such determinations or announcements.

8. All documents and communications with the Trustee, or any Holder or beneficial owner of the Securities or any of the Republic's other GDP-linked Securities concerning whether a Payment Amount was due under the Securities or any of the Republic's other GDP-linked Securities.

9. All documents and communications concerning any forecast of the Republic's macroeconomic performance from January 1, 2014 to the present created or prepared by or relied upon by the Republic or any agencies or instrumentalities of the Republic, including but not limited to office of the President of the Argentine Nation, the office of the Chief of Cabinet of Ministers of the Argentine Nation, or MECON; and including but not limited to:

(a) all data used, relied upon, referred to, or taken into account in connection with the creation or preparation of such forecasts; and

(b) documents sufficient to explain or show the methodology used to create or prepare such forecasts.

10. All analyst reports prepared by any investment banking or macroeconomic research firm concerning or reflecting the Republic's or any Province's macroeconomic performance for any Reference Year from 2014 to the present, or any part thereof, in the Republic's possession, custody, or control.

11. All documents sent to or from the IMF and all communications with the IMF, including but not limited to IMF staff reports, IMF working papers, technical assistance documents, and memoranda and documents memorializing IMF Article IV consultations, concerning the Manufactured Information or Argentina's national account statistics for any Reference Year from 2014 to the present, or any part thereof, including but not limited to its balance of payments statistics and government finance statistics.

12. For each Reference Year from 2004 to the present or any part thereof, all data and all documents and communications concerning the methodology (including but not limited to the data, surveys, models, sectoral weightings, processes, and/or procedures) used to calculate or estimate national accounts statistics for the Republic measured in constant 1993 or 2004 prices (including but not limited to the 1993 Series, the Original 2004 Series, the Revised 2004 Series, the EMAE Index, or any component thereof (sectoral or otherwise)) for such Reference Year or any part thereof, including but not limited to:

(a) all data used to calculate or estimate such statistics, including but not limited to the statistics described or referenced in the September 2016 publication titled, "*Cuentas Nacionales: Metodología de estimación*", including the data underlying those indices;

(b) all working files used by INDEC to calculate, compile, or test the 1993 Series, the Original 2004 Series GDP figures, and the revised 2004 Series GDP figures, whether or not such files or materials were published or otherwise publicly-disclosed, including but not limited to (i) the preliminary and final calculations underlying the statistics published by INDEC, including any test or trial calculations; (ii) the data files used, whether in Excel or some other format; and (iii) documentation describing the steps used to calculate or compile the statistic;

(c) all manuals, guidelines, or other documents or communications concerning the methodology, including but not limited to the data sources, surveys, models, sectoral weightings, processes, and/or procedures used to calculate or estimate such statistics;

(d) all documents or communications concerning the "SNA 1993," as that term is defined in the Lavagna Statement;

(e) all documents or communications concerning the "SNA 2008," as that term is defined in the Lavagna Statement; and

(f) all manuals, guidelines, or other documents or communications concerning any changes or revisions to the methodology, including but not limited to the data sources, surveys, models, sectoral weightings, processes, and/or procedures, used to calculate or estimate such statistics.

13. All releases of INDEC's *Informe de Avance del Nivel de Actividad* from 2000 to the present, including all revisions and corrections.

14. The following publications: (i) the June 1999 publication titled, "*Sistema de Cuentas Nacionales. Argentina. Año base 1993. Fuentes de Información y Metodología de*

*Estimación*"; (ii) the October 2002 publication titled, "*Sistema de Cuentas Nacionales Argentinas, Año Base 1993 – Estimador Mensual de Actividad Económica: Fuentes de información y métodos de estimación*"; (iii) the June 2016 publication titled, "*Cuentas Nacionales. Año base 2004: nota metodológica*"; (iv) the August 2016 publication titled, "*Metodología del Estimador Mensual de Actividad Económica (EMAE)*"; (v) the September 2016 publication titled, "*Cuentas Nacionales: Metodología de estimación*"; (vi) the July 2017 publication titled, "*Cuenta de generación del ingreso e insumo de mano de obra*"; (vii) the November 2020 publication titled, "*Preguntas frecuentes sobre el Sistema de Cuentas Nacionales*"; and (viii) the publication titled "*Cuentas Nacionales de la República Argentina. Año base 2004. Serie Documentos de trabajo N° 23*"; including all revisions to those publications and all commentary, manuals, or guidelines concerning those publications prepared or used by MECON or INDEC.

15. All analyses performed by the Republic of the relationship, if any, between (a) the 1993 Series, and (b) the Original or the Revised 2004 Series.

16. All documents, data, or analyses reconciling or attempting to reconcile the 1993 Series, the Original 2004 Series, and/or the Revised 2004 Series.

17. All analyses performed by the Republic of the differences in the methodology (including but not limited to the data sources, surveys, models, sectoral weightings, processes, and/or procedures) involved in preparing, calculating, or estimating (a) the 1993 Series, and (b) the Original or the Revised 2004 Series.

18. Documents sufficient to identify the prices and expenditures in fiscal year 1993 of all goods and services in the reference basket for the 1993 Series.

19. Documents sufficient to identify the prices and expenditures in fiscal year 2004 of all goods and services in the reference basket for the Original 2004 Series.

20. Documents sufficient to identify the prices and expenditures in fiscal year 2004 of all goods and services in the reference basket for the Revised 2004 Series.

21. Documents sufficient to identify the five-digit industry classifications used in the 1993 Series, the Original 2004 Series, and/or the Revised 2004 Series.

22. Documents sufficient to show the deflators used in (a) the 1993 Series, (b) the Original 2004 Series, and (c) the Revised 2004 Series, and any differences between and among such deflators, including but not limited to differences in the index, indexation methodology (*e.g.*, Paasche, Laspeyres), and base year used to calculate such deflators.

23. For each Reference Year from 2004 to the present or any part thereof, all documents and communications concerning economic activity statistics for any Province measured in constant 1993 or 2004 prices (including but not limited to Provincial Actual Real GDP or any component thereof (sectoral or otherwise)), including but not limited to:

(a) all data used to calculate or estimate such statistics;

(b) all manuals, guidelines, or other documents or communications concerning the methodology, including but not limited to the data sources, surveys, models, sectoral weightings, processes, and/or procedures used to calculate or estimate such statistics; and

(c) all manuals, guidelines, or other documents or communications concerning any changes or revisions to the methodology, including but not limited to the data sources, surveys, models, sectoral weightings, processes, and/or procedures used to calculate or estimate such statistics.

24. All documents and communications concerning the Manufactured Information and the Manufactured Information Press Releases, including but not limited to:

(a) all documents and communications concerning the Republic's decision to create, prepare, calculate, or estimate the Manufactured Information;

(b) all documents and communications concerning the determination or selection of the data and information published in the Manufactured Information Press Releases or otherwise in connection with the Manufactured Information, including but not limited to the Republic's decision not to include quarterly estimates of GDP levels and growth rates, fixed domestic gross investment, global supply and demand, or the implicit price index in the Manufactured Information;

(c) all working files used by INDEC to calculate, compile, or test the Manufactured Information, whether or not such files or materials were published or otherwise publicly-disclosed, including but not limited to (i) the preliminary and final calculations underlying the Manufactured Information published by INDEC, including any test or trial calculations; (ii) the data files used, whether in Excel or some other format; and (iii) documentation describing the steps used to calculate or compile the Manufactured Information;

(d) all calculations, estimates, or other data related to or concerning quarterly estimates of GDP levels and growth rates, fixed domestic gross investment, global supply and demand, or the implicit price index created, considered, or analyzed in connection with the Republic's preparation of the Manufactured Information;

(e) all documents and communications concerning the Republic's disclosure of the "description of the methodology applied" in the Manufactured Information Press

Releases or otherwise in connection with its preparation of the Manufactured Information;

(f) all data used, relied upon, referred to, or taken into account by INDEC to calculate or estimate the Manufactured Information, including its components (sectoral or otherwise), whether on an annual or a quarterly basis;

(g) all documents and communications concerning the surveys and other data sources used, relied upon, referred to, or taken into account by INDEC to calculate or estimate the Manufactured Information, including its components (sectoral or otherwise), whether on an annual or a quarterly basis;

(h) all model(s), manuals, guidelines, or work papers used by INDEC in calculating or estimating the Manufactured Information, including its components (sectoral or otherwise), whether on an annual or a quarterly basis;

(i) all documents and communications concerning the model(s), manuals, guidelines, or other documents concerning the methodology used by INDEC to calculate or estimate the Manufactured Information, including its components (sectoral or otherwise), whether on an annual or a quarterly basis; and

(j) all documents, data, or other information cited, referred to, used, relied upon, or taken into account in the creation, preparation, or drafting of "Annex I – Main Changes Between the 2004 Base and 1993 Base at Constant Prices" included in the Manufactured Information Press Releases.

25. All documents, communications, or analyses concerning the deflators used in the preparation of the Manufactured Information, including but not limited to documents sufficient

to identify the index, indexation methodology (*e.g.*, Paasche, Laspeyres), and base year used to calculate such deflators, as well as the underlying data and calculations.

26. All documents, data, or analyses reconciling or attempting to reconcile the Revised 2004 Series with the Manufactured Information, including all communications concerning such reconciliations.

27. All documents, communications, or analyses concerning the differences in the reference basket of goods and services between the Revised 2004 Series and the Manufactured Information, including government expenditures and taxes.

28. All documents, communications, or analyses concerning any reclassification, or differences in the classification of activities, between sectors between the Revised 2004 Series and the Manufactured Information.

29. All documents, communications, or analyses concerning all product-level taxes and subsidies used to value production at producer prices in the Manufactured Information.

30. All documents, communications, or analyses concerning the allocation of direct taxes as set forth in the Revised 2004 Series to sectoral gross value added as set forth in the Manufactured Information.

31. All documents, communications, or analyses concerning the allocation of indirectly-measured financial intermediation services as set forth in the Revised 2004 Series to aggregate indirectly-measured financial intermediation as set forth in the Manufactured Information.

32. All documents, communications, or analyses concerning the reconciliation of accrued taxes as set forth in the Revised 2004 Series to cash taxes as set forth in the Manufactured Information, including but not limited to VAT.

33. All documents and communications concerning the direct tax series for the following sectors: C (Mining and Quarrying), D (Manufacturing Industry), E (Electricity, Gas and Water Supply), and J (Financial Intermediation), in the 1993 Series and the Manufactured Information.

34. Documents sufficient to identify all persons—whether INDEC staff, outside contractors or consultants, or others—who calculated, prepared, contributed to, analyzed, or otherwise participated in the preparation of the Manufactured Information, in any capacity.

35. All communications, including but not limited to emails, memoranda, or other documents, with INDEC personnel or any person identified in response to Request No. 34 concerning compliance with the English Court Order.

36. All communications with (and documents requested by or produced to) the English Claimants or submissions in the English Action concerning the Manufactured Information or the Manufactured Information Press Releases.

37. All documents and communications concerning the Lavagna Statement, including but not limited to:

(a) communications among Republic personnel in connection with the creation, preparation, drafting, or review of the Lavagna Statement;

(b) all documents, data, or other information cited, referred to, used, relied upon, or taken into account in the creation, preparation, drafting, or review of the Lavagna Statement;

(c) all documents and communications relating to or forming the basis of the statements in paragraph 19 of the Lavagna Statement;

(d) all documents and communications relating to or concerning the "gaps in the available data and methodological inputs" referenced in paragraph 25 of the Lavagna Statement;

(e) all documents and communications relating to or concerning any attempt by the Republic to "mimic" the model(s) used to calculate or estimate Actual Real GDP measured in 1993 prices, as described in paragraph 28 of the Lavagna Statement;

(f) all documents and communications concerning any data, models, documents or other information concerning, relating to, or used in connection with the calculation or estimation of Actual Real GDP that was destroyed, as described in paragraph 31 of the Lavagna Statement, including but not limited documents sufficient to show what documents were destroyed, the date(s) of their destruction, the rationale for the destruction, and the identity of each person that made the decision to, or authorized, such destruction;

(g) all documents and communications concerning any attempt to identify, recover or preserve "obsolete data and calculations" that "may still remain," as described in paragraph 32 of the Lavagna Statement; and

(h) all documents and communications concerning any attempt to "convert basic prices to producer prices" for any Reference Year (or quarter thereof) as described in paragraph 36 of the Lavagna Statement.

38. All documents and communications concerning any and all attempts by the Republic to identify or analyze "a methodology as close as possible to that used by INDEC for Reference Years 2006 to 2012" in estimating Actual Real GDP measured in constant 1993 prices in response to the English Court Order.

39. All documents and communications concerning any and all attempts by the Republic to identify or analyze "a level of detail approximating the detail made available by INDEC for its quarterly GDP publications prior to 2014" in estimating Actual Real GDP measured in constant 1993 prices in response to the English Court Order.

40. Memoranda or other work papers sufficient to show the methodological changes between the Original 2004 Series and the Revised 2004 Series made in connection with the 2016 Revision, and the data and calculations referenced in those memoranda or work papers.

41. Documents sufficient to identify any changes or revisions between the Original 2004 Series and the Revised 2004 Series with respect to the methodologies for (a) replacing sectoral level price indices, (b) determining nominal GDP, and (c) applying deflators.

42. All documents and communications concerning the Trustee's demands for compensation, indemnification, and/or reimbursement of its costs and expenses, including in connection with its investigation and prosecution of this Action, pursuant to the Indenture from January 1, 2023 to the present.

43. All documents and communications concerning the Defenses asserted by the Republic in its Answer, including but not limited to:

(a) all documents and communications concerning the Republic's allegation, in the Second Defense asserted in its Answer, that the Trustee's "claims of nonperformance by the Republic are barred, in whole or in part, by the doctrine of impossibility, impracticability, and frustration of purpose;"

(b) all documents and communications concerning the Republic's allegations, in the Third and Fourth Defenses asserted in its Answer, that the Trustee's claims are

"barred, in whole or in part, by the doctrine[s] of mutual mistake" and/or "unilateral mistake;"

(c) all documents and communications concerning the Republic's allegation, in the Eighth Defense asserted in its Answer, that the Trustee's "claims are barred by the doctrine of unclean hands, having committed wrongdoing and harm to the detriment of the Republic;"

(d) all documents and communications concerning any supposed "superseding" or "intervening" "causes" or "events" alleged in the Republic's Tenth Defense in its Answer; and

(e) all documents and communications concerning the Republic's allegation, in the Twelfth Defense asserted in its Answer, that the Trustee's "claims are barred, in whole or in part, by [the Trustee's] failure to mitigate, prevent, or avoid [the Trustee's] alleged damages."

44. All documents produced by any party or non-party in the Prior Actions, including transcripts and errata of all testimony given by any witness in the Prior Actions.

45. All documents and communications, including but not limited to litigation holds, concerning the preservation of documents related to claims against the Republic for the Payment Amounts due for 2014 or any subsequent Reference Years.

46. All documents and communications regarding the preservation, loss, or destruction of documents or communications concerning: (a) the Republic's determinations and/or announcements as to whether a Payment Amount was due for each Reference Year from 2014 to the present; (b) national accounts statistics for the Republic measured in constant 1993 or 2004 prices (including but not limited to the 1993 Series, the Original 2004 Series, the

Revised 2004 Series, the EMAE Index, or any component thereof (sectoral or otherwise)) for each Reference Year (or any part thereof) from 2004 to the present; and (c) the Manufactured Information and the Manufactured Information Press Releases, including but not limited to documents sufficient to show:

(a) what documents were preserved; and

(b) what documents were lost, or destroyed, (i) the date(s) of their loss or destruction, (ii) the rationale for their destruction, (iii) the Person(s) responsible for or otherwise involved in their destruction, and (iv) any attempts to locate, retrieve, or otherwise recover lost or destroyed documents.

47. Documents sufficient to show the organizational structure and all employees of all directorates, departments, divisions, or other offices, however denominated, of INDEC, at all times from January 1, 2014 to the present:

(a) responsible for the calculation, determination, or estimation of national accounts statistics for the Republic, regardless of whether published, including but not limited to the 1993 Series, the Original 2004 Series, the Revised 2004 Series, the EMAE Index, or any component thereof (sectoral or otherwise), measured in constant 1993 or 2004 prices, including but not limited to the National Office (or Directorate) of National Accounts and its sub-divisions;

(b) responsible for the collection, creation, processing, or maintenance of data or surveys used to calculate, determine, or estimate national accounts statistics for the Republic, regardless of whether published, including but not limited to the 1993 Series, the Original 2004 Series, the Revised 2004 Series, the EMAE Index, or any sectoral component thereof (sectoral or otherwise), measured in constant

1993 or 2004 prices, including but not limited to the National Office (or Directorate) of National Accounts and its sub-divisions; and

(c) responsible for the preservation, maintenance, or storage of all information, including data, surveys, calculations, models, procedures manuals, or other methodological documents or information, used to calculate, determine, or estimate national accounts statistics for the Republic, regardless of whether published, including but not limited to the 1993 Series, the Original 2004 Series, the Revised 2004 Series, the EMAE Index, or any component thereof (sectoral or otherwise), measured in constant 1993 or 2004 prices.

48. Documents sufficient to show the organizational structure and all employees of all directorates, departments, divisions, or other offices, however denominated, of MECON, at all times from January 1, 2014 to the present:

(a) responsible for the determination of whether the conditions for payment under the Securities were satisfied for a Reference Year, and/or, if so, the calculation of the Payment Amount, including but not limited to the National Office of Public Credit; and

(b) responsible for the preservation, maintenance, or storage of all information, including data, calculations, memoranda, or other documents used in or reflecting the determination of whether the conditions for payment under the Securities were satisfied for a Reference Year, and/or, if so, the calculation of the Payment Amount.

49. All documents the Republic intends to rely upon or introduce as exhibits at depositions or trial.

50. All documents You relied upon or considered in responding to Plaintiff's First Set of Interrogatories.

Dated: New York, New York
May 5, 2026

*s/ Edward A. Friedman*
Edward A. Friedman
Daniel B. Rapport
Jeffrey C. Fourmaux
Michael S. Palmieri
Harry Liberman

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 833-1100
Facsimile: (212) 833-1250

*Attorneys for Plaintiff The Bank of New York Mellon, solely in its capacity as Trustee*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May 2026, a copy of the foregoing Plaintiff's First Set of Requests for the Production of Documents and Things to Defendant The Republic of Argentina was served by email upon counsel for Defendant:

Robert J. Giuffra, Jr. (giuffrar@sullcrom.com)
Sergio J. Galvis (galviss@sullcrom.com)
Amanda Flug Davidoff (davidoffa@sullcrom.com)
Thomas C. White (whitet@sullcrom.com)
Elizabeth A. Rose (rosee@sullcrom.com)
Arturo C. Schultz (schultzart@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Defendant The Republic of Argentina*

*s/ Michael S. Palmieri*
Michael S. Palmieri