SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, New York 10004-2498

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

October 9, 2026

Via ECF

The Honorable Loretta A. Preska,
United States District Court for the Southern District of New York,
500 Pearl Street,
New York, NY 10007.

Re: *Aurelius Capital Master, Ltd. et al.* v. *The Republic of Argentina*, No. 23-cv-10838 (LAP)

Dear Judge Preska:

On behalf of the Republic of Argentina, I respond to Plaintiff's October 6, 2026 letter (ECF57) seeking an extraordinary volume of granular national-accounts data spanning the entire Argentine economy over a 22-year period, including years for which Plaintiff has no surviving claims. Plaintiff's application should be denied.

## I. Background

The underlying dispute concerns competing interpretations of the Adjustment Provision in GDP-linked Securities that applies after the Republic updates, or rebases, its GDP figures. Plaintiff reads that provision to require a new adjustment fraction for each year using obsolete GDP measured in constant 1993 prices through 2034; the Republic reads it to apply a single adjustment fraction using GDP as currently measured in constant 2004 prices. (ECF34 ¶¶ 10, 65–70; ECF39 at 1.)

This case arose after INDEC rebased the Republic's GDP from 1993 to 2004 constant prices in early 2014. Then in 2016, in consultation with the IMF, INDEC replaced that Original 2004 Series with a Revised 2004 Series that the IMF found is "in line with international standards." (Ex. A.) Consistent with

international standards and its own practices, the Republic did not retain data for the obsolete 1993 Series. (ECF38-8 ¶¶ 9, 30–31.)

Individual holders first advanced their interpretation of the Adjustment Provision in 2019, in lawsuits seeking payment for 2013. This Court dismissed those cases for failure to comply with the Securities' No-Action Clause, and the Second Circuit affirmed. (ECF49 at 9–11.) Separately, a group of Euro-denominated GDP-linked securities holders prevailed in their interpretation of the securities under English law. The Republic disagrees with that interpretation and will show that the result is different under New York law. But meanwhile, the English court ordered the Republic to publish GDP data in constant 1993 prices for 2014–2034 using a methodology "as close as possible" to the methodology INDEC had used for 2006–2012. (ECF39 at 7–8.) To comply, INDEC used the data it has, which is also the best available data—the Revised 2004 Series—to create the Newly-published 1993 Series. (ECF38-5 at 19–23.)

At the motion to dismiss stage, the Republic argued that no payments are due for any of the years at issue—even accepting Plaintiff's interpretation of the Adjustment Provision—using the Newly-published 1993 Series. (ECF39 at 10–13; ECF48 at 3–6.) In its September 29, 2025 Order, the Court dismissed Plaintiff's claims for 2014–2016 but held that whether the Republic's or Plaintiff's figures for 2017, 2018, 2021, and 2022 are "reasonable" or "as close as possible" to the discontinued 1993 Series is a question of fact. (ECF49 at 25.) The Republic has agreed to produce the discovery needed to answer that question, but Plaintiff wants more: a comprehensive audit of Argentina's historical national accounts.

## II. The Republic Has Agreed to Produce Relevant Discovery.

The Republic will produce materials actually used by INDEC in preparing the Newly-published 1993 Series through Reference Year 2022. (ECF57-4 at 2.) That production will allow Plaintiff to test the "bona fides" of the Series (ECF57 at 2) and whether it is "reasonable" or "as close as possible" to the discontinued 1993 Series. (ECF49 at 25.) Plaintiff's additional demand for all data, calculations, surveys, models, sectoral weightings, and methodologies for three GDP series over more than two decades (ECF57-5 at 13–14, 17–18) is extraordinarily burdensome and extends far beyond what Rule 26 allows.

*First*, the Original 2004 Series is irrelevant. INDEC used sector-level estimates from the *Revised* 2004 Series to prepare the Newly-published 1993 Series. (ECF38-5 at 19–23; ECF57-4 at 3–4.) Plaintiff's intent to develop its "own

estimates" (ECF57 at 3) does not justify gathering information about a series that was replaced by a revised one endorsed by the IMF.

*Second,* the Original 2004 Series (which never existed for the years at issue here) is not a "surviving source" for the 1993 Series. (ECF57 at 2.) To the extent Plaintiff relies on the statement of INDEC's then-director Marco Lavagna, he explained that the *Revised 2004 Series* had some similar data sources to the 1993 Series, but that "many fundamental data sources" are simply unavailable. (ECF38-8 ¶¶ 13, 35.)

*Third*, the Trustee suggests (at 2) that the Republic "change[d] course" with respect to whether the Revised 2004 Series can be used to reconstruct the discontinued 1993 Series. Not so. The Republic argued that *no* later series can perfectly reconstruct the discontinued 1993 Series (ECF38-8 ¶ 22). But the Revised 2004 Series is the best available source of data to create a series that is *as close as possible* to the 1993 version.

## III. Plaintiff Is Not Entitled to Discovery Concerning Unpled Claims.

Plaintiff filed the Amended Complaint on October 22, 2024. (ECF34.) As of that date, the Republic had made no payment determination for Reference Year 2023 or later. (ECF57-2 at 2–3.) Under the Securities, those determinations occur around December 15 of the following year. (ECF34-2 at R-4.) Plaintiff chose not to amend its pleading to include Reference Years 2023 and 2024 before the May 29, 2026 deadline for amendments, presumably because even its made-for-litigation methodology did not support such claims. (ECF54 at 2.) Plaintiff is wrong that its Complaint somehow asserted those unpled claims.

*First*, when filing the Amended Complaint, Plaintiff had no standing to assert claims based on nonpayment determinations that had not been made, nor were such claims ripe. *Davis* v. *F.E.C.*, 554 U.S. 724, 732 (2008) (standing is measured "at the commencement of the litigation"); *Texas* v. *United States*, 523 U.S. 296, 300 (1998) (claim based on "contingent future events" is unripe).

*Second*, Plaintiff cannot fall back on a theory of "ongoing" or "continuing" breaches. (ECF57 at 3–4.) Plaintiff's authority (*United States* v. *IBM*, 66 F.R.D. 180 (S.D.N.Y. 1974)) was a claim for ongoing monopolization. Here, regardless of how Plaintiff frames its claims, Plaintiff is seeking contingent payments for specific reference years, determined on a year-by-year basis, which is not a continuing breach.

In the alternative, Plaintiff contends (at 4) that it can "explore" whether Argentina changed GDP-calculation methodologies after 2022 in ways relevant to the current claims. Not so. The Newly-published 1993 and Revised 2004 Series and methodologies are public. (ECF57-4 at 4.) Post-2022 data is irrelevant here.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

cc: Counsel of Record (via ECF)