November 4, 2026

**BY ECF**
The Honorable Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2220
New York, New York 10007-1312

Re: *Aurelius Capital Master, Ltd. et al. v. The Republic of Argentina*, No. 23 Civ. 10838 (S.D.N.Y.) (LAP)

Dear Judge Preska:

Plaintiff The Bank of New York Mellon, solely in its capacity as Trustee (the "Trustee" or "Plaintiff"), and Defendant The Republic of Argentina (the "Republic") jointly submit this letter pursuant to the Court's Order of October 22, 2026 (ECF 60). As directed by the Court, the parties met and conferred about the issues that were the subject of their earlier letters to the Court (ECF 57-59), but were unable to resolve those issues. Set forth below are the parties' respective positions on those issues which remain in dispute.[1]

**The Trustee's Position**

*Work Papers for the 2004 Series*

The Securities require Actual Real GDP measured in constant 1993 prices (the "1993 Series") to determine whether payments are due and their amounts. But Argentina has not published this required contractual input since 2013, and has said it discarded the files and data used to calculate the 1993 Series. With respect to the Trustee's claims for payments for years after 2013, Argentina asserts that no payments are due based on data it began publishing in 2024 (the "Manufactured Information"), which it contends should be accepted as the missing 1993 Series data, even though it differs materially from the 1993 Series data previously published by Argentina—*e.g.*, the Manufactured Information's 2013 figure is 13% lower than the 1993 Series figure for 2013 found by the English

[1] Apart from the disputes addressed herein, the parties are attempting to resolve other discovery disputes, and will submit appropriate letters to the Court at a later date if they are unable to resolve those disputes.

Court based on Argentina's historically published data, is 8% lower than the 1993 Series figure for *2012* published by INDEC, and, if credited, would wipe out the over 15% growth in the 1993 Series reported by INDEC from 2010 through the third quarter of 2013. (ECF 34 ¶¶ 117-18.)

In denying Argentina's motion to dismiss, this Court held that "figuring out which parties' data is 'reasonable' or 'as close as possible' to what the contract called for, is a factual question" that warrants discovery. (ECF 49 at 25.) To that end, the Trustee seeks discovery to, among other things:

(1) assist the Trustee in developing its own estimates of the missing 1993 Series data; and

(2) demonstrate that the Manufactured Information should not be accepted as a substitute for the 1993 Series.

The parties' present discovery dispute relates to each of these purposes. Specifically, the Trustee has sought INDEC's work papers for the 2004 Series, *i.e.*, the actual complete working file for INDEC's calculation of Actual Real GDP measured in constant 2004 prices. The 2004 Series work papers are plainly relevant to each of the above purposes. The Republic's position that it will produce portions of the work papers, but not the entire file, would deprive the Trustee of relevant and necessary information.

In developing their own estimates of the 1993 Series, the Trustee's experts should be able to consider how Argentina actually calculated the 2004 Series in the years after 2013. The 2004 Series was the only GDP series that Argentina published for those years. The original version of the 2004 Series used "the same set of surveys" as the 1993 Series (Ex. 1 ¶ 49). And Argentina has described the revised version of the 2004 Series as "the starting point" for its own Manufactured Information. (Ex. 2 at 4.) It is reasonable and relevant for the Trustee and its experts to learn how the 2004 Series was generated given the dearth of undestroyed material regarding the 1993 Series. Doing so will enable the Trustee and its experts (i) to consider whether to include any elements of the 2004 Series in order to estimate the 1993 Series (just as Argentina was able to consider them when generating the Manufactured Information) and (ii) to explain to the Court why their estimates differ from the 2004 Series.

The 2004 Series work papers are also relevant to the Trustee's assessment of the *bona fides* of the Manufactured Information as a substitute for the 1993 Series. The Trustee's experts will assess whether, and to what extent,

Argentina appropriately used the models and methodologies underlying in the 2004 Series to estimate the Manufactured Information—particularly given the historical differences between the 1993 and the 2004 Series. The methodological underpinnings of the 2004 Series detailed in the work papers, including items INDEC chose not to use, may explain why the 2004 Series and the Manufactured Information diverge so markedly from the historical 1993 Series—which goes to whether the Manufactured Information is a "reasonable" proxy for the missing data.

Despite the relevance of the 2004 Series work papers, Argentina is only willing to produce (1) the data used to calculate the 2004 Series, and (2) 2004 Series materials to the extent used in the production of the Manufactured Information. For the Trustee and its experts, having the data Argentina is willing to produce is helpful, but not sufficient. Refusing to produce other materials in the 2004 Series work papers (*e.g.*, calculations, manuals, methodological notes) besides what INDEC used for the Manufactured Information is unreasonable and arbitrary. The Trustee's experts—in order to develop their best estimates for post-2013 1993 Series data—need the complete 2004 Series work papers, not just what INDEC chose to use in its production of the Manufactured Information.

Argentina summarily asserts that the withheld information is not "necessary." In making its own estimates, the Trustee's experts should be able to decide for themselves whether and to what extent it is appropriate to incorporate aspects of the 2004 Series methodologies. The Trustee's experts should be able to consider both those portions of the 2004 Series' methodologies that Argentina selected when creating the Manufactured Information and those that it did not select. Likewise, in analyzing the Manufactured Information's *bona fides*, the Trustee should be able to understand the extent to which it reflects the 2004 Series'—instead of the 1993 Series'—methodologies. Argentina should not be able to withhold relevant discovery based on its subjective view of what is "necessary" for the Trustee's analysis. (Ex. 3.)

Argentina had access to the entire content of the 2004 Series work papers when deciding which elements of that content to use, and how to use them, to derive Argentina's estimates of the 1993 Series. The Trustee and its experts should have no less right to make such judgments in reaching its own estimates.

Nor is burden a basis to deny the Trustee the discovery it seeks. While Argentina conclusorily describes the volume of work papers as "extraordinary" (ECF 58 at 1), it has already agreed to produce the work papers for the Manufactured Information and the data underlying the 2004 Series. Argentina

has posited no explanation for why producing the balance of the 2004 Series work papers would be unduly burdensome.

* * *

Numerous assertions in Argentina's position statement below misconstrue the issues and the Trustee's positions, while failing to substantiate Argentina's positions. Among other things:

- For months, in its objections and in meet-and-confer, Argentina refused to produce the material the Trustee seeks and insisted the Trustee content itself with the paucity of information Argentina selectively chose to make publicly available. It was only after the English court publicly ordered Argentina *just last week* that Argentina even came to the table in our last meet-and-confer. But the discovery it now offers continues to be inadequate.

- To begin with, the issue posed by this Court is not (as Argentina puts it) whether *the Manufactured Information* is as close as possible to the required 1993 Series. As stated by this Court, the issue is "*which parties'* data" is as close as possible to the missing 1993 Series data. This Court contemplated that both sides will be preparing estimates of the missing 1993 Series data. And to prepare its own estimates, the Trustee and its experts should have access to the same materials that Argentina had in preparing the Manufactured Information—including not just what Argentina *chose to use* from the available INDEC working files, but also what it *chose to exclude*. By hiding the ball on what it chose to exclude, Argentina obscures whether the excluded data and methodologies would result in estimates that are closer to the missing 1993 Series and would indicate that Payment Amounts are due for various Reference Years for which Argentina paid nothing.

- For the same reason, and contrary to Argentina's statement that the 2004 Series could be relevant "in only two ways," there is a *third* way: to determine the extent to which INDEC excluded available data and methodologies and the impact of those exclusions in creating Manufactured Information figures that differ materially from the historical 1993 Series where the two overlap.

- Contrary to Argentina's present statement that the original version of the 2004 Series preserves no data from the 1993 Series, Argentina has

in fact elsewhere admitted that the original version of the 2004 Series used "the same set of surveys" as the 1993 Series (Ex. 1 ¶ 49), and we expressly noted that fact in our previous letter to this Court (ECF 59 at 2). Understanding how those inputs differed from those now used in revised version of the 2004 Series and, in turn, now used in the Manufactured Information, goes directly to measuring the bona fides of the Manufactured Information as a replacement for the 1993 Series.

- Contrary to Argentina's present assertion, the fact that the original version of the 2004 Series is no longer published and differs from the revised version of the 2004 Series (and hence the Manufactured Information) makes it more, not less, relevant for that purpose: Were the original 2004 Series and its inputs in fact closer to the required 1993 Series than the revised 2004 Series? It matters not that the original version was only published for RY2014 and RY2015; the methodology used for those years may shed light on 1993 Series methodology which can be carried forward to future years.

- Argentina repeatedly suggests that the revised version of the 2004 Series is an appropriate "starting point" for estimating the missing 1993 Series because the IMF somehow blessed the revised 2004 Series. The IMF has done no such thing, but even more importantly, the IMF has never passed on the question at issue here—whether the 2004 Series is an appropriate basis for estimating the 1993 Series.

- The Republic asserts that the methodologies for the 1993 and 2004 Series have been publicly disclosed already. Not so. The methodologies are contained in the work papers which show, among other things, the calculations, model, sectoral weighting, manual and methodological notes. What the Republic has made public is only its own summary and characterization of the methodologies, none of which are sufficiently detailed for the expert analysis at hand. It is not proper for a party to withhold relevant discovery and insist that the other side rely upon its summary and characterization of what should have been produced.

- Argentina asserts in conclusory terms that production of the rest of the INDEC working files for the 2004 Series is "exceptionally intrusive," but offers nothing concrete to support those assertions. The English court's discovery order will require Argentina to locate INDEC's

working files for the 2004 Series. It will take more, not less work, for Argentina and its counsel to selectively exclude particular categories (such as the actual calculations or methodological manuals) from its production of those files once located.

- Similarly, Argentina's reference to "Argentine law protections" has no substance. The Argentine privacy laws it has identified to the Trustee are concerned with protecting personal identifying information and personal characteristics (including, for example, religion and "information concerning health or sexual life"); to the extent any exists in the economic data sources produced, such personal identifiers and information can be redacted; they are not a ground for withholding production.

- After two months of meet-and-confers, exchange of lengthy correspondence between the parties, and prior position letters submitted to this Court, at 7:25pm on the filing date of this letter Argentina inserted into its statement below a claim (for the first time) that INDEC's working file is "decentralized." But the Republic has admitted previously that these statistics are prepared by a dedicated team at INDEC. That team presumably has access to the working file to prepare the statistics each year. And the Republic is presumably accessing that file in order to produce the data the English Court has already ordered it to produce. Likewise, the balance of the working file that the Republic is refusing to produce, "decentralized" or not, is accessible to be produced here.

*Discovery Through Reference Year 2025*

Argentina has objected to providing discovery for years after 2022, contending that this action does not include such claims because they post-date the Trustee's pleading. (Ex. 4 at 2-3.) The Republic's position is belied by the express allegations of the Amended Complaint specifying that the Trustee's claims "extend to Reference Years after 2022" (ECF 34 ¶¶ 120 n.7, 141-48 & p.59)[2], and

[2] The Trustee is also entitled to discovery concerning the Republic's continuing breaches (*e.g.*, its failure *to this day* to seek and obtain the required consents for its modification of the contractually prescribed payment calculations) and the damages they have caused. *See United States v. IBM Corp.*, 66 F.R.D. 180, 185 (S.D.N.Y. 1974); Wright & Miller, FED. PRAC. & PROC. CIV. § 1508 (3d ed.).

Argentina's own initial disclosures, which list "the analysis and calculation of the GDP-linked Securities' payment conditions for *Reference Years 2017-2024*," and "INDEC's calculation and publication of GDP in the 2004 base year prices and the 1993 base year prices for *Reference Years 2017 through 2024*" as topics for discovery based on the Trustee's Amended Complaint. (Ex. 5 at 3-4.)

In all events, the parties' disagreement has been narrowed by the English Court's ruling that the Republic produce discovery through October 2025 for Reference Year 2024. (Ex. 6, Annex 1, nos. 1, 7-9.) The only issue that remains is whether Argentina will produce discovery for Reference Year 2025 through the December 15, 2026 Payment Date.

Just days ago, the Republic produced the Manufactured Information for Reference Year 2025, and it shows substantial growth in excess of the Growth Condition even under the Republic's atextual interpretation of the Adjustment Provision.[3] Producing discovery for Reference Year 2025 presents minimal additional burden. Just as it collects documents for Reference Years 2023 and 2024 to satisfy the English order, so too can Argentina collect the documents for Reference Year 2025. If anything, the working papers for the 2025 Manufactured Information should be particularly easy to gather as they are the most recent and, indeed, were prepared with full knowledge that the Trustee was seeking them.

That the English Court only ordered production through October 2025 is of no moment. It reflects the different procedural posture and schedule in that proceeding. The English Claimants' application did not include a claim for Reference Year 2025, and they did not seek production of materials concerning Reference Year 2025. The English Court's ruling also came before the recent publication of the Manufactured Information for Reference Year 2025. That said, the English Claimants may be expected to now expand their claim to include Reference Year 2025 and seek expanded discovery.

By contrast here, the Trustee's complaint asserted claims for all Reference Years after 2013, and the Trustee has always sought discovery for all Reference Years after 2013, including Reference Year 2025. For Reference Year 2025, the Manufactured Information has now been published, the Calculation Date has already occurred, and the Payment Date will occur next month. The document production deadline is still five months off, and expert discovery does not start

[3] https://www.indec.gob.ar/ftp/documentos/nota_metodologica_cumplimiento_orden_judicial_actualizacion_2025.pdf

until August 2027. The Republic has ample time to complete production for Reference Year 2025.

* * *

For the foregoing reasons, the Trustee respectfully requests that the Republic be ordered to produce the requested INDEC work papers and to adhere to the requested timeframe for discovery, *i.e.*, through December 15, 2026.

**<u>The Republic's Position:</u>**

The key dispute in this case concerns the proper interpretation of the Adjustment Provision in the USD-denominated GDP-linked securities (the "Securities"): Plaintiff contends that "[t]he Securities require Actual Real GDP measured in constant 1993 prices" (*supra* p. 1), which was discontinued more than a decade ago, while the Republic contends that they require Actual Real GDP in constant 2004 prices, as currently published by INDEC. If the Republic prevails, the discovery dispute now before the Court will be irrelevant. It pertains to a subsidiary matter: *if* the Court adopts Plaintiff's interpretation of the Securities as requiring "1993 prices" (it should not), and *if* the Court allows Plaintiff to question the Newly-published 1993 Series published by INDEC in response to an English court order (it should not), will the Court accept as reasonable the Newly-published 1993 Series or some other figure offered by either party? The Republic has offered to produce extensive information that is more than sufficient to litigate this dispute. Plaintiff contends that it needs, in essence, the Republic's entire national accounts system over two GDP series over a 13-year period. That level of detail goes beyond Rule 26 discovery. It is not relevant to the exercise and would be highly burdensome.

**Background**. Between 2007 and 2013, the IMF repeatedly questioned the accuracy of the GDP series measured in constant 1993 prices then in place (the "Discontinued 1993 Series"), which culminated in the IMF taking the unprecedented step in February 2013 of issuing a Declaration of Censure against the Republic. (ECF No. 59-2 ¶ 50.) In early 2014, at the IMF's urging, INDEC rebased the Republic's GDP from 1993 to 2004 constant prices and published the "Original 2004 Series." (ECF No. 58 at 1.) Then, just two years later, based on concerns about price data and methodology for that new series, INDEC, in consultation with the IMF, replaced the Original 2004 Series with the Revised 2004 Series, which the IMF found to be "in line with international standards." (*Id.*) The Revised 2004 Series has now been in place (and the Original 2004 Series out of use) for a decade.

Meanwhile, in 2023, an English Court ordered the Republic to publish GDP data in constant 1993 prices for 2014 through 2034, using a methodology "as close as possible" to the Discontinued 1993 Series. (ECF No. 39 at 7–8.) Because the Republic—consistent with international standards and its own practice—had not retained data for that Series upon rebasing to a new one, INDEC used data from the Revised 2004 Series, which were the best available data at the time, to comply with this order. On July 1, 2024, INDEC published the "Newly-published 1993 Series." (ECF No. 38-5 at 18–31.)

The Newly-published 1993 Series may be relevant to this case. As the Court explained in partially granting the Republic's motion to dismiss, if it accepts Plaintiff's interpretation of the Adjustment Provision, it may need to reach the question of whether the parties' respective GDP figures for the four Reference Years remaining at issue (*i.e.*, 2017, 2018, 2021, and 2022) are "reasonable" or "as close as possible" to the Discontinued 1993 Series. (ECF No. 49 at 25.)

**The Court Should Not Order Production of So-Called "Work Papers for the 2004 Series."** The methodologies for the Discontinued 1993 Series, the 2004 Series, and the Newly-published 1993 Series are all already publicly available. (ECF No. 58 at 4.) The Republic has also agreed to produce documents and data prepared by, relied on, or used by INDEC in connection with the preparation of the Newly-published 1993 Series. (ECF No. 57-4 at 2.) And the Republic has further agreed to produce the following additional categories of data and documents concerning the 2004 Series:

- ***Underlying data.*** The most granular available national accounts data underlying each series, including the prices and values of individual goods and services organized according to the applicable industry classifications. (*See* Ex. 6, Annex 1, nos. 7 and 8.) These inputs would enable Plaintiff to reconstruct its own estimates of the Discontinued 1993 Series.

- ***Industry classifications.*** Documents identifying the industry classifications used for each series. (*See id.* no. 11.) By showing how each series organizes the economy into sectors and subsectors, these documents would enable Plaintiff to align and compare data across series.

- ***Data sources.*** Documents describing which data sources remained the same, and which changed, between the different series. (*See id.* no. 9.)

These documents show which inputs the Discontinued 1993 Series and the 2004 Series share, and which inputs differ.

- ***Comparisons.*** Documents analyzing or comparing the series, including their methodologies and results. (*See id.* no. 1(D).)

In short, Plaintiff will receive granular data for the 2004 Series, the sources and organization of those data, and the comparison of them with the Discontinued 1993 Series.[4]

The Republic has not offered additional burdensome and unnecessary discovery: raw data and surveys underlying the industry/sectoral data that will be provided; models and calculations used to connect that raw data with the industry/sectoral aggregations; and sectoral weightings and methodologies used to build the Revised 2004 Series from the industry and sectoral data. Much of this material is stored in a decentralized fashion and not in an imagined "complete working file" requested by Plaintiff (*supra* p. 2). Plaintiff's request for these "work papers" (*id.*) far exceeds the limits of Rule 26(b)(1), for at least three reasons.

*First*, the additional information sought by Plaintiff is not relevant to Plaintiff's stated reasons for seeking discovery relating to the 2004 Series. Plaintiff claims that it needs that discovery to "assess[]" the Newly-published 1993 Series and to "develop[] its own estimates" of GDP measured in constant 1993 prices. (*Supra* p. 2–3.) But the publicly available methodologies and other materials that the Republic has already agreed to produce are all that is needed for those exercises, which have nothing to do with raw data, surveys, and related calculations for the separate Revised 2004 Series.

Regarding its analysis of the Newly-published 1993 Series, Plaintiff says that its "experts will assess whether, and to what extent, Argentina appropriately used the models and methodologies underlying in the 2004 Series to estimate" the

---

[4] Plaintiff criticizes this offer as mirroring what the Republic was ordered to produce at an October 9, 2026 hearing in ongoing, broader litigation in the English Court (the "English Disclosure Order"), which challenges whether the Newly-published 1993 Series complies with an English Court order requiring the Republic to publish, for 2014 through 2034, a series that is "as close as possible" to the Discontinued 1993 Series. The Republic continues to believe that the disclosure ordered by the English Court is overbroad, but it offered to produce that same material here as a way to narrow the parties' disputes.

Newly-published 1993 Series. (*Supra* p. 2–3.) The Republic's proposed production provides the materials relevant to that question. As a threshold matter, the methodologies for the Discontinued 1993 Series, the 2004 Series, and the Newly-published 1993 Series are all already publicly available. (ECF No. 58 at 4.) The Republic will produce the documents and data that INDEC used or relied on to prepare the Newly-published 1993 Series, including anything drawn from the Revised 2004 Series. It will also produce documents analyzing or comparing the Newly-published 1993 Series and the 2004 Series. Plaintiff therefore already has, or will receive, the materials relevant to assessing INDEC's use of the 2004 Series in producing the Newly-published 1993 Series. The fact that Plaintiff's experts may want to look at other materials does not mean those unnamed experts "should be able to decide for themselves" what is discoverable. (*Supra* p. 3.)

With respect to its own estimates, Plaintiff already used a methodology of some kind to develop its Amended Complaint, but now asserts that it wants to "learn how the 2004 Series was generated," pointing to a supposed overlap in survey data between the 2004 Series and the Discontinued 1993 Series, and to determine "whether and to what extent it is appropriate to incorporate aspects of the 2004 Series methodologies." (*Supra* p. 2–3.) But again, Plaintiff has the methodologies that INDEC published (ECF No. 58 at 4),[5] and the Republic has already agreed to produce documents comparing them, as well as the disaggregated data underlying the 2004 Series. The Republic has also agreed to produce documents describing which data sources remained the same, and which changed, between the different series. That is exactly the information that Plaintiff contends it needs to understand the 2004 Series and determine whether to use it in Plaintiff's own methodologies.

*Second*, the additional materials that Plaintiff demands—the full data, calculations, surveys, models, sectoral weightings, and methodologies underlying the Original and Revised 2004 Series—are wholly irrelevant to the disputed issue: whether the Newly-published 1993 Series is "reasonable" or "as close as possible" to the Discontinued 1993 Series for the at-issue Reference Years (ECF No. 49 at 25). Neither the Original nor Revised 2004 Series is challenged in this action (or in the

[5] Contrary to Plaintiff's assertion, these methodologies are not merely "summar[ies]." (*Supra* p. 5.) For instance, INDEC's methodology for the Revised 2004 Series alone spans over 120 pages (apart from subsequent updates that are also publicly available). *See* INDEC, "Cuentas Nacionales Metodología de Estimación: Base 2004 y serie a precios constantes y corrientes" (September 2016), *available at* https://www.indec.gob.ar/ftp/cuadros/economia/metodologia_21_cuentas_nacionales.pdf.

English action). Either series could be relevant in only two ways: (i) to the extent INDEC used it to calculate the Newly-published 1993 Series; or (ii) as a source of inputs that Plaintiff would need to calculate its own estimates of Actual Real GDP measured in constant 1993 prices.

The Original 2004 Series is not relevant on either theory. INDEC did not use it to prepare the Newly-published 1993 Series. And the Original 2004 Series is not a relevant source of information about the Discontinued 1993 Series. Nor could it help Plaintiff develop its own, new estimates of Actual Real GDP in constant 1993 prices for the Reference Years still at issue. INDEC published the Original 2004 Series only for 2014 and 2015; it never published figures under that series for 2017, 2018, 2021, or 2022. (ECF No. 58 at 3.) For those years, the Original 2004 Series was superseded by the Revised 2004 Series—the operative and more reliable series—which INDEC published in 2016 after the Republic had declared a national statistical emergency to address persistent concerns about price data and methodology for the Original 2004 Series, and which the IMF found to be "in line with international standards." (ECF No. 58 at 1.)

As for the Revised 2004 Series, the Republic has offered to produce data concerning that series to the extent they were used in connection with INDEC's production of the Newly-published 1993 Series, as well as the disaggregated data for that series required by the English Disclosure Order. Plaintiff, however, requests "the complete . . . work papers" for the Revised 2004 Series. (*Supra* p. 3.) Plaintiff is thus seeking INDEC's internal calculations showing how it "actually calculated the 2004 Series in the years after 2013" (*supra* p. 2). But the issue here is whether the *Newly-published 1993 Series* is "reasonable" or "as close as possible" to the Discontinued 1993 Series (ECF No. 49 at 25)—not how the Revised 2004 Series was compiled or whether that series is itself reasonable. The data and methodology that INDEC actually used to produce the Newly-published 1993 Series is being produced to Plaintiff, together with the disaggregated data covered by the English Disclosure Order. There is no basis for Plaintiff to conduct a wholesale audit of the Revised 2004 Series, particularly in light of the IMF's determination that the Revised 2004 Series is "broadly in line with international standards" (ECF No. 58-1 at 2).

Plaintiff also contends that it is entitled to additional material "to determine the extent to which INDEC excluded available data and methodologies and the impact of those exclusions" on the Newly-published 1993 Series. (*Supra* p. 4.) But, as already explained, Plaintiff already has, or will receive, the materials relevant to that exercise, including publicly available methodologies, the

disaggregated data underlying the 2004 Series, documents describing changes in data sources, documents analyzing or comparing the series, and all documents that INDEC used or relied on in preparing the Newly-published 1993 Series. The additional materials that Plaintiff seeks are simply not relevant to the issues in dispute in this action.

*Third*, Plaintiff argues that because the Republic has already agreed to produce certain documents and data relating to the 2004 Series, producing "the balance of the 2004 Series work papers" would impose little additional burden. (*Id.*). That assertion is baseless. The collection Plaintiff is demanding would require exceptionally intrusive discovery into every calculation, model, sectoral weighting, manual, and methodological note behind the Republic's entire body of national accounts underlying two GDP series, including the Republic's operative GDP series, for 13 years. There is no single set of "work papers." Furthermore, much of the requested material—including the data itself, how it was calculated, and its underlying sources and inputs—is sensitive and may be subject to privilege and Argentine-law protections, such as statistical secrecy over survey data.

Plaintiff dismisses the Argentine-law protections identified by the Republic as having "no substance." (*Supra* p. 6.) But those protections directly restrict disclosure of the survey and other raw data Plaintiff seeks, including individualized statistical information and respondent-identifying data. Potentially applicable provisions include, among other things, (i) Law No. 17,622, § 10 (statistical secrecy); (ii) Decree No. 3110/1970, § 14 (individualized statistical information); and (iii) INDEC Disposition No. 176/1999, Annex I, § 3 (respondent-identifying statistical data). (*See* ECF No. 57-2 at 3.) Each document responsive to Plaintiff's request would have to be reviewed for these protections before it could be produced, which adds to the burden of the discovery Plaintiff seeks. Production of the additional requested documents and data, therefore, would be unduly burdensome.

* * *

Because the Republic's proposed production already provides Plaintiff with what it says it needs, and anything more would impose a heavy burden for little or no benefit, the Court should deny Plaintiff's request for "the complete 2004 Series work papers" (*supra* p. 3).

**The Court Should Not Order Additional Discovery Concerning Post-2022 Reference Years.** The Republic has offered to produce to Plaintiff the documents and data concerning the Newly-published 1993 Series that it will disclose

to the English Claimants. That proposed production covers June 9, 2023 through October 2025, and therefore includes materials relating to Reference Years after 2022. The Republic makes this compromise solely to "narrow the disputes where possible." (ECF No. 60 at 5.) It does not concede that any materials concerning post-2022 Reference Years are relevant, admissible, or proportional to the needs of this case.

Beyond this compromise production, there is no basis for the Republic to produce documents and data concerning post-2022 Reference Years. Discovery must be relevant and proportional to the claims actually pleaded, and the Amended Complaint pleads no claim for any Reference Year after 2022. Plaintiff's request for broad discovery for documents concerning the Newly-published 1993 Series as well as the Securities' payment determinations and calculations "through the December 15, 2026 Payment Date" for Reference Year 2025 (*supra* p. 7) therefore fails for at least six reasons.

*First*, Plaintiff's assertion that it has "live claims" for "years after 2022" (ECF No. 59 at 2) contradicts its pleading. The Amended Complaint alleges that the Payment Conditions were satisfied for only five Reference Years—"2015, 2017, 2018, 2021, and 2022"—and identifies no later Reference Year for which payment allegedly became due. (ECF No. 34 ¶¶ 7, 111–12.) Nor could it. The Amended Complaint was filed on October 22, 2024; as of that date, the Republic had made no payment determination for Reference Year 2023 or later because those determinations occur around December 15 of the following year. (ECF No. 34-2 at R-4.)

*Second*, Plaintiff had until May 29, 2026 to amend its pleadings. (ECF No. 54 at 2.) By then, the Republic had made payment determinations for Reference Years 2023 and 2024, yet Plaintiff did not add claims for either Reference Year. It now asserts that it "did not need to further amend" before this date. (ECF No. 59 at 2.) But the Amended Complaint identifies only five Reference Years—2015, 2017, 2018, 2021, and 2022—for which it alleges that the Payment Conditions were satisfied and estimates the Payment Amount for each of those years at "approximately $1.0 to $1.6 billion." (ECF No. 34 ¶¶ 7, 108–09, 111–13.) By contrast, the Amended Complaint pleads no comparable facts for later Reference Years and only asserts that "[t]he claims for payment asserted herein extend to Reference Years after 2022." (*Id.* ¶ 120 n.7.) That generalized assertion, along with Plaintiff's demand for damages for "any Reference Years after 2013" for which a payment was due (ECF No. 57 at 3 (citing ECF No. 34 at 59)), could not preserve claims for then-future Reference Years. Those claims were unripe because they

depended on "contingent future events." (ECF No. 58 at 3 (citing *Texas* v. *United States*, 523 U.S. 296, 300 (1998); *Davis* v. *F.E.C.*, 554 U.S. 724, 732 (2008)).)

*Third*, contrary to Plaintiff's assertion (*supra* p. 7), the Republic's Initial Disclosures do not support Plaintiff's broad discovery request. The Initial Disclosures expressly state that "[t]he inclusion of a category of information on these lists is not a statement by the Republic that the category of information necessarily exists, is discoverable, or would be admissible at trial." (Rep.'s Initial Disclosures at 4 n.4.) The Initial Disclosures thus concede nothing about the relevance of post-2022 Reference Years and do not create a "live claim" that the Amended Complaint does not plead.

*Fourth*, Plaintiff cannot manufacture claims concerning post-2022 Reference Years by claiming "continuing breaches" based on the Republic's supposed "modification" of the Securities (which actually refers to the Republic's correct interpretation of the Adjustment Provision). (*Supra* p. 6 n.2; *see also* ECF No. 59 at 3.) Plaintiff's authority, *United States* v. *IBM Corp.*, 66 F.R.D. 180 (S.D.N.Y. 1974), is inapposite because it involved a claim for ongoing monopolization. *See id.* at 184. By contrast, under the Securities, payments must be determined separately for each Reference Year. (ECF No. 34-2 at R-4.) Any claim for damages thus arises not from an ongoing interpretation of the Adjustment Provision but rather from an allegedly wrongful non-payment with respect to a particular Reference Year. The Amended Complaint did not assert claims for Reference Years in which no payment obligation had arisen.

*Fifth*, "the English court's ruling that the Republic produce discovery through October 2025" (*supra* p. 7) by no means suggests that Plaintiff is entitled to discovery relating to post-2022 Reference Years in this action. The two proceedings differ in scope. The English action challenges whether INDEC's preparation and publication of the Newly-published 1993 Series, through the English Claimants' March 2026 application, complied with the English court's specific performance order. This action concerns only whether payments were due for the specific Reference Years still before this Court: 2017, 2018, 2021, and 2022. Because the English action raises different claims, the broader period covered by disclosure there provides no basis for discovery into later Reference Years here. In any event, the Republic has already offered, as a compromise, to produce to Plaintiff all materials that it will disclose under the English Disclosure Order.

*Lastly*, Plaintiff argues that discovery through Reference Year 2025 would impose "minimal additional burden" because the Republic can collect documents for that Reference Year, "[j]ust as it collects documents for Reference

Years 2023 and 2024" in England. (*Supra* p. 7.) As a threshold matter, any burden is disproportionate where, as here, Plaintiff has pleaded no claims relevant to the Reference Years in question. *See In re OpenAI, Inc., Copyright Infringement Litig.*, 800 F. Supp. 3d 602, 612 (S.D.N.Y. 2025) ("'The party seeking discovery has the initial burden of demonstrating relevance and proportionality[.]'").

In any event, Plaintiff's burden argument rests on a false premise: the disputed Reference Year 2023-2025 materials are *not* part of the English action production. In particular, Plaintiff seeks "discovery for Reference Year 2025 through the December 15, 2026 Payment Date." (*Supra* p. 7.) That includes not only working papers for the Newly-published 1993 Series, but also documents concerning the Securities' payment determinations and calculations. Those documents fall entirely outside the English action and would require a separate discovery exercise, including collection from a different government body. Producing them would therefore impose substantial additional burdens on the Republic.

* * *

The Republic therefore respectfully requests that the Court deny Plaintiff's requests concerning Reference Years after 2022 to the extent they seek documents beyond those that the Republic has offered to produce.

Respectfully,

*s/ Edward A. Friedman*
Edward A. Friedman
Daniel B. Rapport
Jeffrey C. Fourmaux
Michael S. Palmieri
Harry J. Liberman

FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 833-1100
efriedman@fklaw.com

*Counsel for Plaintiff The Bank of New York Mellon, solely in its capacity as Trustee*

*s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio J. Galvis
Amanda F. Davidoff
Thomas C. White
Arturo Carlos Schultz

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
giuffrar@sullcrom.com

*Counsel for Defendant The Republic of Argentina*